UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FEDERAL TRADE COMMISSION, and

STATE OF CONNECTICUT,

  Plaintiffs,

 v.

LEANSPA, LLC, a Connecticut
limited liability company,

NUTRASLIM, LLC, a Connecticut
limited liability company,

NUTRASLIM U.K. LTD, also d/b/a LEANSPA
U.K. LTD., an United Kingdom limited liability
company, and

BORIS MIZHEN, individually and as an officer
of LEANSPA, LLC, NUTRASLIM, LLC, and
NUTRASLIM U.K. LTD,

 Defendants.

**FILED UNDER SEAL**

**Case No.** _____

**November 7, 2011**

## COMPLAINT FOR PERMANENT INJUNCTION
## AND OTHER EQUITABLE RELIEF

 Plaintiffs, the Federal Trade Commission ("FTC") and the State of Connecticut, for their

Complaint allege:

 1. The FTC brings this action under Section 13(b) of the Federal Trade Commission

Act ("FTC Act"), 15 U.S.C. § 53(b), and Section 917(c) of the Electronic Fund Transfer Act

("EFTA"), 15 U.S.C. § 1693o(c), to obtain temporary, preliminary, and permanent injunctive

relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52; Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a); and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

2.      The State of Connecticut, by and through George Jepsen, the Attorney General of the State of Connecticut, acting at the request of William M. Rubenstein, Commissioner of the Connecticut Department of Consumer Protection, brings this action under the Connecticut Unfair Trade Practices Act ("CUTPA"), Chapter 735a of the Connecticut General Statutes, and more particularly Conn. Gen. Stat. § 42-110m, to obtain injunctive relief against the Defendants' alleged violations of Conn. Gen. Stat. § 42-110b(a), to obtain other relief as is necessary to redress injury to consumers resulting from the Defendants' violations of law, and civil penalties, pursuant to Conn. Gen. Stat. § 42-110o(b).

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), and 1693o(c).

4.      This Court has supplemental jurisdiction over Plaintiff State of Connecticut's claims under 28 U.S.C. § 1367.

5.      Venue is proper in this district under 28 U.S.C. § 1391 (b) and (c), and 15 U.S.C. § 53(b).

## PLAINTIFFS

6.      The FTC is an independent agency of the United States Government created by statute.  15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a),

2

which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces Section 12 of the FTC Act, 15 U.S.C. § 52, which prohibits false advertisements for food, drugs, devices, services, or cosmetics in or affecting commerce.  The FTC also enforces the EFTA, which regulates the rights, liabilities, and responsibilities of participants in electronic fund transfer systems, 15 U.S.C. §§ 1693, *et seq.*

7.     The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the EFTA and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.  15 U.S.C. §§ 53(b), 56(a)(2)(A), and 1693o(c).

8.     The State of Connecticut, through its Attorney General acting at the request of its Commissioner of Consumer Protection, is authorized to initiate proceedings to enjoin violations of CUTPA and to seek injunctive relief, restitution and civil penalties and other relief as this Court deems appropriate.  Conn. Gen. Stat. §§ 42-110m and 42-110o.

## DEFENDANTS

9.     Defendant Boris Mizhen ("Mizhen"), a resident of Guilford, Connecticut, owns, directs, or otherwise controls each of the corporate defendants.  Mizhen is the chief executive officer and owner of Defendants LeanSpa, LLC and NutraSlim, LLC, and an officer, director, or owner of Defendant NutraSlim U.K. Ltd.  Mizhen uses or has used each of the corporate defendants to operate an international enterprise marketing dietary supplements over the Internet.  By and through the corporate defendants, he has harmed U.S. consumers with his unfair and deceptive business practices.  At all times material to this Complaint, acting alone or

3

in concert with others, Mizhen has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Mizhen resides in this district and in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

10.     Defendant LeanSpa, LLC ("LeanSpa") is a Connecticut limited liability company with its principal place of business at 420 East Main Street, Bldg 2, Suite 8, Branford, Connecticut 06405.  LeanSpa transacts or has transacted business in this district and throughout the United States.  At all times material to this Complaint, acting alone or in concert with others, LeanSpa has advertised, marketed, promoted, offered to sell, and sold purported weight-loss and colon cleanse products under various brand names, including, but not limited to, LeanSpa™, LeanSpa™ with Acai, LeanSpa™ with HCA, and LeanSpa™ Cleanse to consumers throughout the United States.

11.     Defendant NutraSlim, LLC ("NutraSlim") is a Connecticut limited liability company with its principal place of business at 420 East Main Street, Bldg 2, Suite 8, Branford, Connecticut 06405.  NutraSlim transacts or has transacted business in this district and throughout the United States.  At all times material to this Complaint, acting alone or in concert with others, NutraSlim has advertised, marketed, promoted, offered to sell, and sold purported weight-loss and colon cleanse products under various brand names, including, but not limited to, NutraSlim™, NutraSlim™ with HCA, and QuickDetox™ to consumers throughout the United States.

12.     Defendant NutraSlim U.K. Ltd. ("NutraSlim U.K."), also doing business as LeanSpa U.K. Ltd., is an United Kingdom limited liability company with its principal place of

business at 420 East Main Street, Bldg 2, Suite 8, Branford, Connecticut 06405. NutraSlim U.K. transacts or has transacted business in this district and throughout the United States. At all times material to this Complaint, acting alone or in concert with others, NutraSlim U.K. has advertised, marketed, promoted, offered to sell, and sold purported weight-loss and colon cleanse products under various brand names, including, but not limited to, NutraSlim™, NutraSlim™ with HCA, QuickDetox™, and SlimFuel™ to consumers throughout the United States.

13.    Defendants LeanSpa, NutraSlim, and NutraSlim U.K. (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive, unfair, and unlawful acts and practices alleged below. The Corporate Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, officers, managers, business functions, employees, and office locations, and have commingled funds. Because the Corporate Defendants have operated a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below. Individual Defendant Mizhen has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.

## COMMERCE

14.    At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

### Introduction

15.     Since 2010, Defendants have marketed and sold via the Internet purported

weight-loss and related health products under various brand names, including, but not limited to,

LeanSpa™, LeanSpa™ with Acai, LeanSpa™ with HCA, and LeanSpa™ Cleanse, NutraSlim™,

NutraSlim™ with HCA, QuickDetox™, and SlimFuel™ (collectively, "Defendants' Products")

to consumers throughout the United States.

16.     Defendants market and sell their products through websites they own and operate,

including, but not limited to, LeanSpa.com, TryLeanSpa.com, GetLeanSpa.com,

LeanSpaCleanse.com, TryNutraSlim.com, GetNutraSlim.com, TryQuickdetox.com,

GetQuickdetox.com, and SlimFuel.com.

17.     Defendants also use other entities known as "affiliate marketers" to advertise their

products and to attract consumers to Defendants' websites.  Defendants hire affiliate marketers

through third parties known as "affiliate networks" that match merchants with the affiliate

marketers.  For each consumer who is referred from one of the affiliate marketer's websites, and

makes a purchase or signs up for a "trial" on one of Defendants' websites, Defendants pay a fee

to the affiliate network which in turn pays a commission to the affiliate marketer.

18.     From at least September 2010 to at least April 2011, the affiliate marketers used

by Defendants lured consumers to Defendants' websites and products through fake news

websites on the Internet.  Defendants paid affiliate networks millions of dollars and had

knowledge that consumers were lured to their websites through fake news websites featuring

their products.  Defendants began receiving consumer complaints about these fake news

6

websites from the Connecticut Better Business Bureau as early as November 2010, in which consumers explained they had ordered Defendants' products after seeing what appeared to be legitimate news articles featuring these products.

19.     Defendants' websites offer their products on a free trial basis and represent that consumers only need to pay a nominal shipping and handling fee, typically $4.95 or less. Defendants induce consumers to enter their credit or debit card information on their websites to pay for the nominal shipping and handling fee for the trial samples.  After consumers enter their credit or debit card information on Defendants' websites, Defendants then automatically enroll the consumers in Defendants' continuity plans for monthly product shipments in which Defendants make recurring charges to the consumers' credit card or bank accounts, usually $79.99 or more every month, that consumers typically neither knew about nor authorized.

20.     Defendants used several entities known as "Independent Sales Organizations," including Check21, LLC, and Eureka Payments, LLC, to obtain merchant accounts at banks to process credit and debit sales transactions.  Using these merchant accounts with several banks, including National Bank of California, WestAmerica Bank, HSBC Bank USA, and First Bank of Delaware, Defendants have already caused millions of dollars of unauthorized credit and debit card charges.  The bulk of these unauthorized charges were processed through First Bank of Delaware.

21.     Defendants make it very difficult for consumers to cancel these continuity plans and avoid recurring charges or redeem promised money-back guarantees.  Consumers have great difficulty reaching a live person when they try to cancel or request a refund, and if they do speak with someone, they are told they must navigate through a series of steps, including obtaining a

7

Return Merchandise Authorization ("RMA") number, returning the product back to a facility, and paying the postage costs for returning the product.

22.     As a result, numerous consumers across the U.S. have expended considerable time and expense to cancel the Defendants' continuity plans, dispute charges, and (sometimes) obtain partial or full refunds.  Defendants have taken in more than $25 million from consumers in the U.S.

### Defendants Use Fake News Websites to Promote and Sell their Products

23.     Defendants' affiliate marketers use websites designed to look like news reports to promote several of Defendants' Products.  Examples of these websites are attached as Exhibits A through C.

24.     The affiliate marketers' websites use domain names that appear to be objective news or health websites, such as channel8health.com, dailyhealth6.com, and online6health.com, and include titles such as "Acai Berry Diet Exposed: Miracle Diet or Scam?" and "1 Trick of a Tiny Belly: Reporter Loses Her 'Belly' Using 1 Easy Tip."  The websites often include the names and logos of major broadcast and cable television networks, falsely representing that the reports on the websites have been seen on these networks.

25.     The websites purport to provide objective investigative reports authored by reporters or commentators typically pictured on the websites.  The supposed authors of the reports claim to have tested Defendants' Products on themselves and experienced dramatic and positive results.  Following the reports are "responses" or "comments" that appear to be independent statements made by ordinary consumers.

26.     In fact, the news reports promoting Defendants' Products are fake.  Reporters or

commentators pictured on the websites are fictional and never conducted the tests or experienced the results described in the reports.  The "responses" and "comments" following the reports are simply additional advertising content, not independent statements from ordinary consumers.

27.     In many instances, when consumers attempt to navigate away from or close the affiliate marketer's fake news website, the affiliate marketer's pop-up message containing the following statement (or substantially similar language) re-emphasizes that Defendants' products are available on a free trial basis at no risk or cost:

> "Are you sure you don't want to take advantage of the LeanSpa and Natura Cleanse FREE TRIAL?"

> "Don't forget -  they will only be available for a limited time. Since these trials are completely free, there is no cost or risk to you.  You can also give them away if you'd like. Or give it a shot, like Cindy did, and transform your body."

> "If you are wondering why these trials are free, the simple answer is because the manufacturers are confident that their products will help you, and that you will continue to use their products, and refer friends and family."

> "Don't miss out on these great offers!"

An example of these pop-up messages is attached at Exhibit D.

28.     The sole purpose of the fake news websites is to promote Defendants' Products. The fake news websites are designed to entice consumers to click on links that will transfer them to Defendants' websites or "landing" pages.  Defendants' affiliate marketers receive a commission or other payment for each consumer who clicks on a link and ultimately makes a purchase or signs up for a "trial" on Defendants' websites.

29.     The fake news websites contain a number of deceptive claims about Defendants'

Products.  For example, the "reporters" featured in the "news" reports have represented that they have tested Defendants' Products, such as LeanSpa™ Acai, LeanSpa™ with Pure HCA, and LeanSpa™ Cleanse, alone or in combination with other products, on themselves and that the Defendants' Products, alone or in combination with other products, cause rapid and substantial weight loss, including losing twenty-five pounds in four weeks without any special diet or intense exercise.

30.     In truth and in fact, Defendants' Products, alone or in combination with other products, do not cause rapid and substantial weight loss, nor do Defendants possess and rely upon a reasonable basis to substantiate representations that consumers who use Defendants' Products will lose a substantial amount of weight.

### Defendants' Deceptive "Trial" Offers

31.     Defendants offer their products on the Internet to consumers on a "trial" basis with a "100% Satisfaction Guarantee," and represent that consumers need only pay a nominal charge for shipping and handling, usually $4.95 or less.  Examples of Defendants' landing pages for their "LeanSpa" and "NutraSlim" products are attached at Exhibits E and F, respectively.

32.     To create a sense of urgency, Defendants typically have represented that the offered "trial" is available only for a limited time by prominently displaying on their websites or landing pages, such as tryleanspa.com, trynutraslim.com, leanspacleanse.com, or tryquickdetox.com, one or more of the following statements:

    a.     Try it TODAY!

    b.     ACT NOW TO CLAIM YOUR TRIAL PACKAGE!

    c.     HURRY!  Limited to 1 order per household.

      d.     LIMITED TIME OFFER!

33.    In some instances, if consumers try to navigate away from the website, a pop-up message appears about Defendants' offer containing the following statement (or substantially similar language):

> Don't miss out on this GREAT OFFER!!!  Just press Cancel to remain on this page and receive an INSTANT discounted S&H price of $1.95.

An example of these pop-up messages on Defendants' websites is included in Exhibit E at FTC-LS 000084.

34.    Further highlighting that consumers' total monetary obligations are only the nominal shipping and handling fee, many of the Defendants' order webpages include an order summary that represents consumers will not be charged for the trial order other than the listed nominal shipping and handling fee.  An example of Defendants' order webpage is included in Exhibit E at FTC-LS 000085.

35.    In numerous instances, Defendants offer trials of two purported related products, typically an acai berry dietary supplement and a colon cleanse product.

36.    After consumers enter their payment information on Defendants' websites, ostensibly to pay the nominal shipping and handling charge, Defendants email consumers order confirmations that usually show no charges for the trial products other than the nominal shipping and handling fee.

37.    In connection with the trial offers, Defendants fail to disclose, or to disclose adequately, that consumers who do not affirmatively cancel within the trial period will be charged for the free trial samples, usually $79.99 (or a total of $158.98 if they ordered two trial

products), and that consumers who order the trial samples are also automatically enrolled in a monthly continuity plan and charged each month for recurring shipments of the products.

38.     In fine print and in fonts smaller than most others used on the webpage, and most often buried in boxes with other fine print information, Defendants' ordering webpages typically provide a statement that consumers can call to cancel within 14 days to avoid enrollment in an "auto-shipment program." Many consumers do not see this fine print or are not aware that they have to affirmatively cancel to avoid additional charges at the time they provide their payment information.

39.     Nowhere on the ordering webpages or in proximity to Defendants' promotional statements concerning the free trial do Defendants disclose that consumers seeking to avoid being charged for the trial samples and for recurring monthly shipments must obtain a RMA number, return the products, and incur the postage fees for returning the products. These obligations are referenced only in a separate lengthy multi-page terms and conditions webpage.

40.     In numerous instances, Defendants charge consumers $79.99 for each product before the consumers even receive the trial samples or have an opportunity to cancel before the end of the trial period.

41.     In many instances, consumers first become aware of their enrollment in Defendants' continuity programs when they receive a second shipment from Defendants. By this time, Defendants will already have charged consumers not only for the allegedly free trial shipment, but also for this second shipment.

42.     Consumers are not able to cancel easily or get out of Defendants' continuity plans. In numerous instances, consumers who attempt to call Defendants are put on hold for a

long period of time and then disconnected.  In other instances, consumers who attempt to cancel online by going on Defendants' websites and clicking on the "Easy Cancel" button option receive a notice that their account could not be found or that if they cancelled they would be charged $19.41 for the bottle they received.  In other instances, consumers who attempt to cancel by sending an email to Defendants receive only automated replies.

43.     In numerous other instances, even when consumers are able to reach and speak with a live person, obtain a RMA number from Defendants, and pay to ship the trial product to Defendants, they still incur additional charges, such as cancellation fees, or do not receive a full refund or credit.

### Deceptive Guarantees and Refunds

44.     Defendants' websites also represent that they will make full refunds to consumers who are dissatisfied with the product.  Sometimes the refund process is described as "risk free" and simple.

45.     For example, in connection with the Defendants' trial product offers, Defendants' landing pages, such as tryleanspa.com, trynutraslim.com, or tryquickdetox.com, make prominent disclosures about their "100% Satisfaction Guarantee" for their products.

46.     In other websites operated by Defendants, such as leanspa.com and slimfuel.com, Defendants make claims that their offers are "risk free" with a "30 Day Money Back Guarantee" for their products.  For example, the following statements have appeared on some of Defendants' websites:

     a.      Try it for 30 days, Risk Free;

     b.      30 Day Money Back Guarantee;

c.     THE LEANSPA GUARANTEE

We guarantee you will lose fat and gain muscle for PROPER weight loss
– without any risk.  You have nothing to lose but weight!

PROPER Weight Loss Guaranteed or your money back!

If for any reason, LeanSpa fails to meet your expectations, simply return
the bottle (even if empty) within 30 days of receipt for a prompt,
courteous refund of your purchase price (less s/h).

An example of webpages from Defendants' website leanspa.com containing these statements is
attached at Exhibit G.

47.     In numerous instances, Defendants do not provide the promised full refunds to
consumers.  In many instances, Defendants' customer service agents deny the availability of
refunds.  In other instances, Defendants promise refunds, but never actually issue them.

48.     In addition, in numerous instances, the process to obtain a refund is not simple.
Consumers are usually not able to reach a live person to process their cancellation and refund
requests before incurring additional charges.  In some cases, an additional shipment has already
been sent and charged to the consumer before the consumer is able to cancel.  In addition,
Defendants often impose onerous, inadequately disclosed conditions and limitations on issuing
full refunds.  For example, Defendants require consumers to first obtain a RMA number from
customer service prior to shipping the return package and consumers are required to bear the
costs of returning the product, for both the trial product and the additional shipments they
receive.  If the next month's shipment had already left the warehouse, Defendants typically
require consumers to return that package too or be charged.

49.     In many instances, consumers only receive refunds after they complained to law
enforcement or the Better Business Bureau.

## **False and Misleading Product Claims**

50.     Defendants represent on their websites offering LeanSpa™ and Slimfuel™ products that these products will cause rapid and substantial weight loss.

51.     Defendants' websites promoting LeanSpa™ and Slimfuel™ products display testimonials of purported customers who have lost substantial amounts of weight using these products.  For example, on Defendants' website tryleanspa.com one purported customer states, "I have been on LeanSpa now for 60 days and I have lost 18 pounds of fat."  On Defendants' website slimfuel.com a purported customer states, "I have lost a total of 50 pounds in eight weeks with SlimFuel!"

52.     On their websites, Defendants also represent that clinical studies prove that their LeanSpa™ and Slimfuel™ products will cause rapid and substantial weight loss.

53.     The following statements have appeared on Defendants' website tryleanspa.com about Defendants' LeanSpa™ product [footnotes omitted]:

    a.    Clinically Tested to Reduce Belly Fat!*

    b.    WARNING: The LeanSpa Weight Loss System is an advanced weight loss system designed to work fast and naturally for Proper Weight Loss!**

    c.    Change Your Body with LeanSpa!*

        In a pilot study on 17 subjects, the LeanSpa Formula showed a significant, average weight loss over a 2-month period.

    d.    LeanSpa Clinical Results

        Actual study participant results

15

[Chart displaying "Fat Loss" results for three subjects of 13.6 pounds, 5.1 pounds, and 5.4 pounds]

An example of a webpage from Defendants' website tryleanspa.com containing these statements and footnotes is attached at Exhibit H.

54.     The following statement appears on Defendants' website slimfuel.com about Defendants' Slimfuel™ product:

CLINICAL STUDIES

In a pilot study on 17 subjects, the SlimFuel Formula showed a significant, average weight loss over a 2-month period.

An example of a webpage from Defendants' website slimfuel.com containing this statement is attached at Exhibit I.

55.     Defendants' websites leanspa.com and slimfuel.com refer to and contain hyperlinks to the same undated purported "clinical study," entitled "A Pilot Study to Evaluate the Safety and Efficacy of a Novel Proper Weight Loss Formula" (the "Pilot Study").

56.     In truth and in fact, the Pilot Study does not show that Defendants' products LeanSpa™ and Slimfuel™ cause significant weight loss.

**VIOLATIONS OF THE FTC ACT**

57.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

58.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act. Section 12(a) of the FTC Act, 15 U.S.C. § 52(a), prohibits the dissemination of any false advertisement in or affecting commerce

16

for the purpose of inducing, or which is likely to induce, the purchase of food, drugs, devices, services, or cosmetics.  For the purposes of Section 12 of the FTC Act, 15 U.S.C. § 52, the Defendants' Products are either a "food" or "drug" as defined in Section 15(b) and (c) of the FTC Act, 15 U.S.C. § 55(b), (c).

## COUNT ONE - Misrepresentations (Trial Offer)

### (By Plaintiff Federal Trade Commission)

59.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of Defendants' Products, Defendants, directly or through affiliates acting on their behalf and for their benefit, have represented, expressly or by implication, that Defendants' trial offers are free or risk-free after the payment of a nominal shipping and handling charge.

60.     In truth and in fact, Defendants' trial offers are not free or risk-free.  Consumers who provide their credit or debit account information to pay a nominal shipping and handling fee for the trial product are likely to be charged a large amount, typically $79.99, for the trial product, and large recurring amounts for subsequent monthly shipments if they are not able to cancel an automatic enrollment into Defendants' continuity plans.

61.     Therefore, Defendants' representations as set forth in Paragraph 59 of this Complaint are false and misleading, and constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT TWO - Failures to Disclose

## (By Plaintiff Federal Trade Commission)

62.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of the Defendants' Products, Defendants, directly or through affiliates acting on their behalf and for their benefit, have represented, expressly or by implication, that consumers who pay a nominal fee to receive a trial supply will incur no risks or obligations.

63.     In numerous instances, Defendants have failed to disclose, or to disclose adequately, to consumers the material terms and conditions of the offer, including, but not limited to, the fact that:

    a.    consumers who sign up to receive a trial supply of one of Defendants' products are charged for the trial supply of the product if they do not return it to Defendants within a certain time period;

    b.    consumers who sign up to receive a trial supply of one of Defendants' products are automatically enrolled in a continuity program for the product and must cancel the program within a specified period of time to avoid additional recurring shipments of products and charges;

    c.    consumers must obtain a RMA number from Defendants before returning the product to Defendants in order to avoid being charged for the free trial samples and subsequent automatic shipments of products; and

    d.    consumers who attempt to cancel during the trial period will incur additional costs in canceling or returning the product, including paying a cancellation fee or paying for return shipping.

64.     Defendants' failure to disclose, or to disclose adequately, the material information described in Paragraph 63 above, in light of the representation described in Paragraph 62 above, constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### COUNT THREE - Misrepresentations (Guarantees and Refunds)

### (By Plaintiff Federal Trade Commission)

65.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of Defendants' Products, Defendants have represented, directly or indirectly, expressly or by implication, that they will provide full refunds to all consumers who request them.

66.     In truth and in fact, in numerous instances Defendants have either not provided full refunds to consumers who requested them or provided refunds only after consumers complained to governmental agencies or to the Better Business Bureau.

67.     Therefore, Defendants' representations as set forth in Paragraph 65 of this Complaint are false and misleading, and constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### COUNT FOUR - Misrepresentations (Fake News Reports)

### (By Plaintiff Federal Trade Commission)

68.     In connection with the advertising, marketing, promotion, offering for sale, or sale of the Defendants' Products, Defendants, directly or through affiliates acting on their behalf and for their benefit, have represented, expressly or by implication, that:

    a.      Objective news reporters have performed independent tests demonstrating the effectiveness of the product featured, including LeanSpa™ Acai, LeanSpa™ with Pure HCA, and LeanSpa™Cleanse; and

    b.      The comments following these "news reports" express the views of independent consumers.

69.    In truth and in fact:

    a.      Objective news reporters have not performed independent tests demonstrating the effectiveness of the product featured, including LeanSpa™ Acai, LeanSpa™ with Pure HCA, and LeanSpa™Cleanse; and

    b.      The comments following these "news reports" do not express the views of independent consumers.

70.    Therefore, Defendants' representations as set forth in Paragraph 68 of this Complaint are false and misleading, and constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT FIVE - False and Unsubstantiated Product Claims

### (By Plaintiff Federal Trade Commission)

71.    In connection with the advertising, marketing, promotion, offering for sale, or sale of the Defendants' Products, Defendants, directly or through affiliates acting on their behalf and for their benefit, have represented, expressly or by implication, that use of the Defendants' Products will result in rapid and substantial weight loss, including as much as losing twenty-five pounds in four weeks.

72.    In connection with the advertising, marketing, promotion, offering for sale, or sale of the Defendants' Products, Defendants have represented, expressly or by implication, that clinical studies prove that their LeanSpa™ and Slimfuel™ products will cause rapid and substantial weight loss.

73.    The representations set forth in Paragraphs 71 and 72 of this Complaint are false, misleading, or were not substantiated at the time the representations were made.

74.    Therefore, the making of each of the representations as set forth in Paragraphs 71 and 72 of this Complaint constitutes a deceptive act or practice and the making of false advertisements, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

## VIOLATIONS OF THE ELECTRONIC FUND TRANSFER ACT AND REGULATION E

75.    Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), provides that a "preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made." Section 903(9) of the EFTA, 15 U.S.C. § 1693a(9), provides that the term "preauthorized electronic fund transfer" means "an electronic fund transfer authorized in advance to recur at substantially regular intervals."

76.    Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b), provides that "[p]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer."

77.     Section 205.10(b) of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205.10(b), Supp. I, provides that "[t]he authorization process should evidence the consumer's identity and assent to the authorization." *Id.* at ¶10(b), cmt. 5.  The Official Staff Commentary further provides that "[a]n authorization is valid if it is readily identifiable as such and the terms of the preauthorized transfer are clear and readily understandable." *Id.* at ¶10(b), cmt. 6.

## COUNT SIX -

## Unauthorized Electronic Fund Transfers from Consumers' Bank Accounts

## (By Plaintiff Federal Trade Commission)

78.     In numerous instances, Defendants have debited consumers' bank accounts on a recurring basis without obtaining a written authorization signed or similarly authenticated from consumers for preauthorized electronic fund transfers from their accounts, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

79.     In numerous instances, Defendants have debited consumers' bank accounts on a recurring basis without providing to the consumer a copy of a written authorization signed or similarly authenticated by the consumer for preauthorized electronic fund transfers from the consumer's account, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

80.     Pursuant to Section 917(c) of the EFTA, 15 U.S.C. § 1693o(c), every violation of the EFTA and Regulation E constitutes a violation of the FTC Act.

81.     By engaging in violations of the EFTA and Regulation E as alleged in Paragraphs 78 and 79 of this Complaint, Defendants have engaged in violations of the FTC Act.  15 U.S.C. § 1693o(c).

## VIOLATIONS OF CUTPA

82.     CUTPA at §42-110b(a) states the following: "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

83.     CUTPA states at § 42-110a(4): "trade" and "commerce" shall mean the "advertising, the sale or rent or lease, the offering for sale or lease, or the distribution of any service or any property, tangible or intangible, real, personal or mixed, and any article, commodity, or thing of value in this state."

84.     CUTPA also states at § 42-110b(b) that: "[i]t is the intent that in construing subsection (a) of this section, the commissioner and the courts of this state shall be guided by interpretations given by the Federal Trade Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended."

85.     Defendants all operated or have operated from the same Branford, Connecticut address.

86.     Defendants' products ship from and contain the return address of 181 Marsh Hill Road, Orange, Connecticut 06477.

87.     The acts or practice alleged in this Complaint all emanate from and are intimately associated with Connecticut, and Defendants have therefore engaged in trade or commerce in the State of Connecticut.

## COUNT SEVEN - Deceptive Acts or Practices (Trial Offer)

### (By Plaintiff State of Connecticut)

88.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of Defendants' Products, Defendants, directly or through affiliates acting on their behalf and for their benefit, have represented, expressly or by implication, that Defendants' trial offers are free or risk-free after the payment of a nominal shipping and handling charge.

89.     In truth and in fact, Defendants' trial offers are not free or risk-free.  Consumers who provide their credit or debit account information to pay a nominal shipping and handling fee for the trial product are likely to be charged a large amount, typically $79.99, for the trial product, and large recurring amounts for subsequent monthly shipments if they are not able to cancel an automatic enrollment into Defendants' continuity plans.

90.     Defendants' acts or practices, as described herein, were likely to mislead consumers acting reasonably under the circumstances into believing that they could obtain a product free or risk-free for only a nominal shipping and handling fee.

91.     Defendants' representations as set forth in Paragraph 88 of this Count were material to consumers' decisions about whether or not to purchase products from Defendants.

92.     Defendants have therefore engaged in unfair or deceptive acts practices in violation of Conn. Gen. Stat. § 42-110b(a).

**COUNT EIGHT - Civil Penalties (Trial Offer)**

**(By Plaintiff State of Connecticut)**

93.     The allegations of Paragraphs 88 through 92 of Count Seven are incorporated by reference as Paragraph 93 of Count Eight as if fully set forth herein.

94.     Defendants engaged in the acts or practices alleged herein when they knew or should have known that their conduct was unfair or deceptive, in violation of Conn. Gen. Stat. § 42-110b(a), and, therefore, are liable for civil penalties of up to $5,000 per willful violation pursuant to Conn. Gen. Stat. § 42-110o(b).

**COUNT NINE -**

***Per Se* Unfair or Deceptive Acts or Practices (Failures to Disclose Material Contingency)**

**(By Plaintiff State of Connecticut)**

95.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of the Defendants' products, Defendants, directly or through affiliates acting on their behalf and for their benefit, have represented, expressly or by implication, that consumers who pay a nominal fee to receive a trial supply will incur no further financial risks or obligations.

96.     In numerous instances in which Defendants have made the representation set forth in Paragraph 95 of this Count, Defendants have failed to disclose, or to disclose adequately, to consumers the material contingencies, conditions or limitations of the offer, including, but not limited to, the following:

a.      consumers who sign up to receive a trial supply of one of Defendants' products are charged for the trial supply of the product if they do not return it to Defendants within a certain time period;

b.      consumers who sign up to receive a trial supply of one of Defendants' products are automatically enrolled in a membership program for the product and must cancel the program within a specified period of time to avoid additional recurring shipments of products and charges;

c.      in order to avoid being charged for the free trial samples and subsequent automatic shipments of products, consumers must obtain a RMA number from Defendants before returning the product to Defendants; and

d.      consumers who attempt to cancel during the trial period will incur additional costs in canceling or returning the product, including paying a cancellation fee or paying for return shipping.

97.     Defendants' failure to conspicuously state each material contingency, condition or limitation to the offer that consumers who pay a nominal fee to receive a trial supply will incur no risks or obligations constitutes a *per se* unfair or deceptive act or practice pursuant to Regulations of Connecticut State Agencies § 42-110b-22.

98.     Defendants have therefore engaged in unfair or deceptive acts and practices in violation of Conn. Gen. Stat. § 42-110b(a).

### COUNT TEN - Civil Penalties

### (*Per Se* Unfair or Deceptive Acts or Practices (Failures to Disclose Material Contingency)

### (By Plaintiff State of Connecticut)

99.     The allegations of Paragraphs 95 through 98 of Count Nine are incorporated by reference as Paragraph 99 of Count Ten as if fully set forth herein.

100.     Defendants engaged in the acts or practices alleged herein when they knew or should have known that their conduct was unfair or deceptive, in violation of Conn. Gen. Stat. § 42-110b(a), and, therefore, are liable for civil penalties of up to $5,000 per willful violation pursuant to Conn. Gen. Stat. § 42-110o(b).

### COUNT ELEVEN - Deceptive Acts or Practices (Guarantees and Refunds)

### (By Plaintiff State of Connecticut)

101.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of Defendants' Products, Defendants have represented, directly or indirectly, expressly or by implication, that they will provide full refunds to all consumers who request them.

102.     In truth and in fact, in numerous instances Defendants have either not provided full refunds to consumers who requested them or provided them only after consumers complained to governmental agencies or to the Better Business Bureau.

103.     Defendants' acts or practices, as described herein, were likely to mislead consumers acting reasonably under the circumstances into believing that Defendants will provide full refunds to all consumers who request them.

104.   Defendants' representations as set forth in Paragraph 101 of this Count were material to consumers' decisions about whether or not to purchase products from Defendants.

105.   Defendants have therefore engaged in unfair or deceptive acts and practices in violation of Conn. Gen. Stat. § 42-110b(a).

## COUNT TWELVE - Civil Penalties (Guarantees and Refunds)
## (By Plaintiff State of Connecticut)

106.   The allegations of Paragraphs 101 through 105 of Count Eleven are incorporated by reference as Paragraph 106 of Count Twelve as if fully set forth herein.

107.   Defendants engaged in the acts or practices alleged herein when they knew or should have known that their conduct was unfair or deceptive, in violation of Conn. Gen. Stat. § 42-110b(a), and, therefore, are liable for civil penalties of up to $5,000 per willful violation pursuant to Conn. Gen. Stat. § 42-110o(b).

## COUNT THIRTEEN – Deceptive Acts or Practices (Fake News Reports)
## (By Plaintiff State of Connecticut)

108.   In connection with the advertising, marketing, promotion, offering for sale, or sale of the Defendants' Products, Defendants, directly or through affiliates acting on their behalf and for their benefit, have represented, expressly or by implication, that:

a.   Objective news reporters have performed independent tests demonstrating the effectiveness of the product featured, including LeanSpa™ Acai, LeanSpa™ with Pure HCA, and LeanSpa™ Cleanse; and

b.   The comments following these "news reports" express the views of independent consumers.

109.    In truth and in fact:

    a.      Objective news reporters have not performed independent tests

            demonstrating the effectiveness of the product featured, including

            LeanSpa™ Acai, LeanSpa™ with Pure HCA, and LeanSpa™ Cleanse;

            and

    b.      The comments following these "news reports" do not express the views of

            independent consumers.

110.    Defendants' acts or practices, as described herein, were likely to mislead

consumers acting reasonably under the circumstances into believing that the news reports and

the tests cited therein were objective and genuine and that the comments following the "news

reports" expressed the views of independent consumers.

111.    Defendants' representations as set forth in Paragraph 108 of this Count were

material to consumers' decisions about whether or not to purchase products from Defendants.

112.    Defendants have therefore engaged in unfair or deceptive acts and practices in

violation of Conn. Gen. Stat. § 42-110b(a).

## COUNT FOURTEEN–

## Civil Penalties for Deceptive Acts or Practices (Fake News Reports)

## (By Plaintiff State of Connecticut)

113.    The allegations of Paragraphs 108 through 112 of Count Thirteen are

incorporated by reference as Paragraph 113 of Count Fourteen as if fully set forth herein.

114.    Defendants engaged in the acts or practices alleged herein when they knew or

should have known that their conduct was unfair or deceptive, in violation of Conn. Gen. Stat. §

42-110b(a), and, therefore, are liable for civil penalties of up to $5,000 per willful violation pursuant to Conn. Gen. Stat. § 42-110o(b).

## COUNT FIFTEEN –

### Unauthorized Electronic Fund Transfers from Consumers' Bank Accounts

### (By Plaintiff State of Connecticut)

115.    In numerous instances, Defendants have debited consumers' bank accounts on a recurring basis without obtaining a written authorization signed or similarly authenticated from consumers for preauthorized electronic fund transfers from their accounts, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

116.    In numerous instances, Defendants have debited consumers' bank accounts on a recurring basis without providing to the consumer a copy of a written authorization signed or similarly authenticated by the consumer for preauthorized electronic fund transfers from the consumer's account, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

117.    By engaging in the aforementioned acts and practices, Defendants have violated the public policy embodied in the EFTA and Regulation E as alleged in Paragraphs 115 and 116 of this Complaint.

118.    Defendants' actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

119.    Defendants' acts or practices, as described herein, are oppressive, unethical, immoral, and unscrupulous.

120.    The Defendants' acts or practices, as described herein, caused substantial injury to consumers in that consumers' bank accounts were debited on a recurring basis without proper authorization.

121.    The Defendants' acts or practices, as described herein, constitute unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b(a).

## COUNT SIXTEEN –

### Civil Penalties for Unfair or Deceptive Acts or Practices (Unauthorized Charges)
### (By Plaintiff State of Connecticut)

122.    The allegations of Paragraphs 115 through 121 of Count Fifteen are incorporated by reference as Paragraph 122 of Count Sixteen as if fully set forth herein.

123.    Defendants engaged in the acts or practices alleged herein when they knew or should have known that their conduct was unfair or deceptive, in violation of Conn. Gen. Stat. § 42-110b(a), and, therefore, are liable for civil penalties of up to $5,000 per willful violation pursuant to Conn. Gen. Stat. § 42-110o(b).

## CONSUMER INJURY

124.    Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, the EFTA, and CUTPA.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

125.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

126.     The counts based upon CUTPA may be enforced by this Court though its pendent or supplement jurisdiction pursuant to 28 U.S.C. § 1367, and this Court may award relief under CUTPA, §42-110m(a) and 42-110o(b).

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. §§ 53(b), Section 917(c) of the EFTA, 15 U.S.C. § 1693o(c), Conn. Gen. Stat. §§ 42-110a *et. seq.*, and the Court's own equitable powers, requests that the Court:

A.     Award Plaintiffs such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including, but not limited to, a temporary restraining order, an order freezing assets, immediate access, expedited discovery, the appointment of a receiver, and a preliminary injunction;

B.     Enter a permanent injunction to prevent future violations of the FTC Act, the EFTA, and CUTPA by Defendants;

C.     Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, the EFTA, and CUTPA, including, but not limited to, civil penalties, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

D.     Award Plaintiffs the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Respectfully submitted,

WILLIAM K. TOM
General Counsel

LEONARD L. GORDON
Regional Director
Northeast Region

Dated: November 7, 2011

Darren H. Lubetzky
David W. Dulabon
Federal Trade Commission
Northeast Region
One Bowling Green, Suite 318
New York, NY 10004
Tel: (212) 607-2898
Fax: (212) 607-2822
Email: dlubetzky@ftc.gov
Email: ddulabon@ftc.gov

John Hughes (CT 05289)
Assistant United States Attorney
Chief of Civil Division
157 Church Street
New Haven, CT 06510
Tel: (203) 821-3700
Fax: (203) 773-5373
Email: john.hughes@usdoj.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

33

GEORGE JEPSEN,
ATTORNEY GENERAL,

Dated: _11/4/11_

Phillip Rosario (CT 00999)
Matthew F. Fitzsimmons (CT 26981)
Jonathan J. Blake (CT 22321)
Office of the Attorney General
110 Sherman Street
Hartford CT 06105
Tel: (860) 808-5400
Fax: (860) 808-5593
Email: Phillip.Rosario@ct.gov
Email: Matthew.Fitzsimmons@ct.gov
Email: Jonathan.Blake@ct.gov

Attorneys for Plaintiff
STATE OF CONNECTICUT