# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and<br><br>STATE OF CONNECTICUT,<br><br>    Plaintiffs,<br><br>    v.<br><br>LEANSPA, LLC, a Connecticut<br>limited liability company,<br><br>NUTRASLIM, LLC, a Connecticut<br>limited liability company,<br><br>NUTRASLIM U.K. LTD, also d/b/a LEANSPA<br>U.K. LTD., an United Kingdom limited liability<br>company, and<br><br>BORIS MIZHEN, individually and as an officer<br>of LEANSPA, LLC, NUTRASLIM, LLC, and<br>NUTRASLIM U.K. LTD,<br><br>    Defendants. | **FILED UNDER SEAL**<br><br>**Case No.** _____ |

[Proposed]

### *EX PARTE* TEMPORARY RESTRAINING ORDER

Plaintiffs Federal Trade Commission ("FTC" or the "Commission") and the State of

Connecticut ("State"), through its Attorney General, have filed a Complaint for a Permanent

Injunction and Other Equitable Relief (the "Complaint"), and moved *ex parte* for a temporary

restraining order and for an order to show cause why a preliminary injunction should not be

granted pursuant to Rule 65(b) of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

The Court, having considered the Complaint, the Plaintiffs' *Ex Parte* Motion for a Temporary Restraining Order with Asset Freeze, the Appointment of a Receiver, and other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("*Ex Parte* Motion"), declarations and exhibits, and the memorandum of law filed in support thereof, and being otherwise advised, finds as follows:

1.       This Court has jurisdiction over the subject matter of this case, and there is good cause to believe it will have jurisdiction over all parties hereto;

2.       There is good cause to believe that venue lies properly with this Court;

3.       There is good cause to believe that LeanSpa, LLC, NutraSlim, LLC, NutraSlim U.K. Ltd., and Boris Mizhen (collectively, "Defendants"), have engaged in and are likely to engage in acts and practices that violate Sections 5 and 12 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a) and 52, the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693(e), and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110(b);

4.       There is good cause to believe that the Plaintiffs are likely to prevail on the merits of this action.  The evidence set forth in Plaintiffs' Memorandum in Support of its *Ex Parte* Motion, and the accompanying declarations and exhibits, demonstrates that Defendants have engaged in unfair and deceptive acts or practices in violation of the FTC Act and CUTPA by: (a) misrepresenting that their trial offers are free or risk-free and failing to adequately disclose material features of their negative option continuity plans; (b) misleading consumers that they will provide full refunds; (c) misleading consumers that their products are tested positively by

independent investigative journalists employed by objective news sources and that favorable testimonials posted on these advertisements are made by genuine consumers; and (d) making false and unsubstantiated claims that the use of their dietary supplements will result in rapid and substantial weight loss and that clinical studies prove that their products will cause rapid and substantial weight loss. There is good cause to believe that Defendants will continue such illegal actions if not restrained from doing so by Order of this Court;

5.     The evidence set forth in Plaintiffs' Memorandum in Support of their *Ex Parte* Motion, and the accompanying declarations and exhibits, also demonstrates that Defendants have violated EFTA by acquiring consumers' bank account information when those consumers apply for trial samples online and then, without authorization and notice to the consumers, debiting those consumers' bank accounts. There is good cause to believe that Defendants will continue such illegal actions if not restrained from doing so by Order of this Court;

6.     There is good cause to believe that immediate and irreparable damage to this Court's ability to grant effective final relief for consumers, including monetary restitution, rescission or refunds, will occur from the sale, transfer, or other disposition by Defendants of their Assets and company records, or those Assets and company records under their control, unless Defendants are immediately restrained and enjoined by Order of this Court. There is thus good cause for an asset freeze, the appointment of a Temporary Receiver over the Receivership Defendants, as defined herein, immediate access to the Receivership Defendants' business premises, and for relieving the Plaintiffs of their duty to provide Defendants with prior notice of this motion. Based on the foregoing, there is good cause to issue this order on an *ex parte* basis;

7.      There is good cause for appointing a Temporary Receiver for Defendants LeanSpa, LLC, NutraSlim, LLC, and NutraSlim U.K. Ltd.;

8.      Weighing the equities and considering the Plaintiffs' likelihood of ultimate success on the merits, a Temporary Restraining Order with asset freeze and other equitable relief is in the public interest;

9.      There is good cause for issuing this Temporary Restraining Order pursuant to Rule 65(b) of the Federal Rules of Civil Procedure; and

10.     Because the FTC is an independent agency of the United States of America, no security is required for the issuance of a Temporary Restraining Order.  Fed. R. Civ. P. 65(c).

## DEFINITIONS

For the purposes of this Temporary Restraining Order, the following definitions apply:

1.      **"Assets"** means any legal or equitable interest in, right to, or claim to, any and all real and personal property of Defendants, or held for the benefit of Defendants, including but not limited to chattel, goods, real estate, instruments, equipment, fixtures, general intangibles, effects, leaseholds, inventory, checks, notes, accounts, credits, receivables, shares of stock, contracts, and all cash and currency, or other assets, or any interest therein, wherever located.

2.      **"Defendants"** means Defendants LeanSpa, LLC, NutraSlim, LLC, NutraSlim U.K. Ltd., and Boris Mizhen.

3.      **"Dietary Supplement"** means (a) any product labeled as a dietary supplement or otherwise represented as a dietary supplement; or (b) any pill, tablet, capsule, powder, softgel, gelcap, liquid, or other similar form containing one or more ingredients that are a vitamin, mineral, herb or other botanical, amino acid, probiotic, or other dietary substance for use by

humans to supplement the diet by increasing the total dietary intake, or a concentrate, metabolite, constituent, extract, or combination of any ingredient described above, that is intended to be ingested, and is not to be used as a conventional food or as a sole item of a meal or diet.

4.     **"Document"** is synonymous in meaning and equal in scope to the terms "document" and "electronically stored information," as described and used in Federal Rule of Civil Procedure 34(a)(1)(A), and includes writings, drawings, graphs, charts, Web pages, audio and video recordings, electronic correspondence, computer records, and other data compilations from which information can be obtained and translated, if necessary, into reasonably usable form through detection devices.

5.     "**Individual Defendant**" means Boris Mizhen.

6.     "**Negative Option Feature**" means, in an offer or agreement to sell or provide any product, program, or service, a provision under which the consumer's silence or failure to take an affirmative action to reject products or services, or to cancel the agreement, is interpreted by the seller or provider as acceptance of the offer.

7.     **"Plaintiffs"** means the Federal Trade Commission ("Commission" or "FTC") and the State of Connecticut ("State").

8.     "**Preauthorized Electronic Fund Transfer**," as defined by the Electronic Fund Transfer Act, 15 U.S.C. § 1693a(9), means an electronic fund transfer authorized in advance to recur at substantially regular intervals.

9.     "**Receivership Defendants**" means LeanSpa, LLC, NutraSlim, LLC, and NutraSlim U.K. Ltd., and their subsidiaries, affiliates, divisions, successors, and assigns, and includes fictitious names under which they do business.

10.     **"Temporary Receiver"** means the Temporary Receiver appointed in Section X of this Order.  The term "Temporary Receiver" also includes any deputy receivers or agents as may be named by the Temporary Receiver.

## I.

## PROHIBITION ON NEGATIVE OPTIONS

**IT IS THEREFORE ORDERED** that Defendants, whether acting directly or through any corporation, partnership, subsidiary, division, affiliate, or other entity or device, are hereby temporarily restrained and enjoined from engaging in, or assisting others engaged in, the advertising, marketing, promoting, offering for sale, or sale of any product, program, or service with a Negative Option Feature.

## II.

## PROHIBITED BUSINESS ACTIVITIES

**IT IS FURTHERED ORDERED** that, in connection with the advertising, marketing, promotion, offering for sale, or sale of any products or services, Defendants, whether acting directly or through any corporation, partnership, subsidiary, division, affiliate, or other entity or device, and their officers, agents, servants, employees, attorneys, and those persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby temporarily restrained and enjoined from:

A.      Misrepresenting, or assisting others in misrepresenting, directly or by implication, any material fact, including, but not limited to, that:

1.      There is no cost for a trial of Defendants' products and that Defendants will not charge consumers anything other than a nominal fee;

    2.      Defendants will provide full refund to all consumers who request them; and

    3.      Objective news reporters have performed independent tests demonstrating the effectiveness of Defendants' products.

B.     Failing to disclose, or disclose adequately, material terms, contingencies, limitations, or conditions of any offer of product or service, including, but not limited to, that:

    1.      Consumers who sign up to receive a trial supply of one of Defendants' products are charged for the trial supply of the product if they do not return it to the Defendants within a certain time period;

    2.      Consumers who sign up for a trial supply of one of Defendants' products must obtain a return merchandise authorization number from Defendants before returning the products to Defendants; and

    3.      Consumers who sign up for a trial supply of one of Defendants' products will incur additional costs in returning the product, including, but not limited to, paying for cancellation fees or return shipping;

C.     Charging, causing to be charged, or assisting others in charging any consumer's credit card, or debiting, causing to be debited, or assisting others in debiting any consumer's bank account without the consumer's express informed consent for such charge or debit;

D.     Charging, causing to be charged, or assisting others in charging any consumer's credit card, or debiting, causing to be debited, or assisting others in debiting any consumer's bank account for any post trial offer fee or charge, prior to the expiration date of the trial offer;

E.      Commencing any trial period before the date a consumer actually receives, or the Defendants reasonably expect, a consumer to receive a trial product;

F.      Making, or assisting others in making, directly or by implication, including through the use of a product name, endorsement, depiction, or illustration about the health or fitness benefits of any Dietary Supplement, including, but not limited to, representations regarding weight loss or muscle gain; unless the representation is non-misleading and, at the time of making such representation, Defendants possess and rely upon competent and scientific evidence that substantiates that the representation is true.  For purposes of this section, competent and reliable evidence means tests, analyses, research, or studies that have been conducted and evaluated in an objective manner by qualified persons and are generally accepted in the profession to yield accurate and reliable results; and

G.      Misrepresenting, or assisting others in misrepresenting, directly or by implication, including through the use of a product name, endorsement, depiction, or illustration, the existence, contents, validity, results, conclusions, or interpretations of any test, study, or research concerning any Dietary Supplement.

.

## III.

## ACTIVITIES PROHIBITED PURSUANT TO
## THE ELECTRONIC FUNDS TRANSFER ACT

**IT IS FURTHER ORDERED** that Defendants, whether acting directly or through any corporation, partnership, subsidiary, division, affiliate, or other entity or device, and their officers, agents, servants, employees, attorneys, and those persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby temporarily restrained and enjoined from:

A.     Failing to obtain written authorization for Preauthorized Electronic Fund Transfers from a consumer's account before initiating any Preauthorized Electronic Fund Transfer, as required by Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b), as more fully set out in Section 205.10 of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205, Supp. I; and

B.     Failing to provide a copy of a valid written authorization to the consumer for Preauthorized Electronic Fund Transfers from a consumer's account, as required by Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b), as more fully set out in Section 205.10 of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205, Supp. I.

## IV.

## CEASING COLLECTION ACTIVITY

**IT IS FURTHER ORDERED** that Defendants, whether acting directly or through any corporation, partnership, subsidiary, division, affiliate, or other entity or device, and their

officers, agents, servants, employees, attorneys, and those persons or entities in active concert or

participation with them who receive actual notice of this Order by personal service or otherwise,

are hereby temporarily restrained and enjoined from causing any withdrawal, assessment of a

fee, or other payment to be made against any consumer account of the Receiver Defendants, or

otherwise causing collection of, or attempts to collect, payment, directly or indirectly, from a

consumer of the Receiver Defendants, for any product, program, or service offered or provided

to consumers, where the purported authorization for such payment occurred prior to the effective

date of this Order.

**V.**

**ASSET FREEZE**

**IT IS FURTHER ORDERED** that Defendants, whether acting directly or through any

corporation, partnership, subsidiary, division, affiliate, or other entity or device, and their

officers, agents, servants, employees, and attorneys, and those persons acting in active concert or

participation with them who receive actual notice of this Order by personal service or otherwise,

are hereby temporarily restrained and enjoined from directly or indirectly:

A.       Transferring, liquidating, converting, encumbering, pledging, loaning, selling,

concealing, dissipating, disbursing, assigning, spending, withdrawing, gifting, conveying,

granting a lien or security interest or other interest in, or otherwise disposing of any funds, real

or personal property, accounts, contracts, consumer lists, or any other assets, or any interest

therein, wherever located, including outside the United States, that are:

1.       Owned or controlled, directly or indirectly, by any Defendant, in whole or

in part, including, but not limited to, any assets held by, for, or in the name of any Defendant at

Page 10 of 37

any bank or savings or loan institution or credit or debit card processing agent, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, merchant account processor, or other financial institution, depository of any kind, or business entity;

      2.    Held for the benefit of any Defendant;

      3.    In the actual or constructive possession of any Defendant; or

      4.    Owned, controlled by, or in the actual or constructive possession of any corporation, partnership, limited liability company, or other entity directly or indirectly owned, managed, or controlled by any Defendant, or any other entity acting under a fictitious name owned by or controlled by any Defendant, including, but not limited to, any assets held by, for, or subject to access by, any Defendant, at any bank or savings or loan institution or credit or debit card processing agent, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, merchant account processor, or other financial institution, or depository of any kind;

    B.    Opening or causing to be opened any safe deposit boxes titled, individually or jointly, in the name of any Defendant, or subject to access by any Defendant;

    C.    Cashing any checks or depositing any payments received from customers of the Receivership Defendants;

    D.    Incurring charges or cash advances on any credit card, debit card, or checking card issued in the name, singly or jointly, of any Defendant;

    E.    Obtaining a personal or secured loan encumbering the assets of any Defendant; and

F.      Incurring liens or encumbrances on real property, personal property or other assets in the name, singly or jointly, of any Defendant.

The assets affected by this Section shall include both existing assets and assets acquired after the date this Order was entered.

This Section does not prohibit transfers to the Temporary Receiver, as specifically required in Section XIII (Delivery of Receivership Property), nor does it prohibit the repatriation of foreign assets, as specifically required in Section VIII (Repatriation of Foreign Assets) of this Order.

## VI.

## FINANCIAL REPORTS

**IT IS FURTHER ORDERED** that the Individual Defendant shall, within five (5) business days after service of this Order, prepare and deliver to counsel for the Plaintiffs and the Temporary Receiver:

A.      Completed financial statements on the forms attached to this Order as **Attachment A** ("Financial Statement for Individual Defendant") for himself individually, and **Attachment B** ("Financial Statement for Corporate Defendant") for each business entity (whether or not incorporated) under which the Individual Defendant conducts business or which the Individual Defendant is an owner, officer, or that he controls directly or indirectly.  The financial statements shall be accurate as of the date of entry of this Order and signed under penalty of perjury; and

B.      All federal income tax returns filed by each Defendant since January 1, 2010.

## VII.

## RETENTION OF ASSETS AND RECORDS
## BY FINANCIAL INSTITUTIONS AND THIRD PARTIES

**IT IS FURTHER ORDERED** that, pending determination of the Plaintiffs' request for a preliminary injunction, any financial or brokerage institution, merchant bank, credit or debit card processing company, payment processing company, escrow agent, trust, entity, or person that: (1) holds, controls, or maintains custody of any account or asset owned or controlled by any Defendant; (2) holds, controls, or maintains custody of any account or asset titled in the name of any Defendant, either individually or jointly, or held for the benefit or any Defendant; (3) holds, controls, or maintains custody of any account or asset associated with credit or debit card charges, electronic fund transfers, or remotely created checks made by, or on behalf of, any Defendant or any other entity owned or controlled by any Defendant; or (4) has held, controlled, or maintained any account or asset of, or on behalf of, any Defendant at any time since January 1, 2010, upon service with a copy of this Order, shall:

A.      Prohibit Defendants or any other person or entity with control over such assets from withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting, selling, gifting, or otherwise disposing of any such assets, funds, or other property, except:

1.      As directed by further order of the Court; or

2.      As directed in writing by the Temporary Receiver (regarding assets held in the name or for the benefit of Receivership Defendants).

B.      Deny the Defendants access to any safe deposit box titled in the name of any Defendant, individually or jointly, or subject to access by any Defendant, whether directly or

indirectly.

      C.    Provide counsel for the Plaintiffs and the Temporary Receiver, within five (5) business days after being served with a copy of this Order, a certified statement setting forth:

      1.    The identification number of each such account or asset titled: (1) in the name, individually or jointly, of any Defendant; (2) held on behalf of, or for the benefit of, any Defendant; (3) owned or controlled by any Defendant; or (4) otherwise subject to access by any Defendant, directly or indirectly;

      2.    The balance of each such account, or a description of the nature and value of such asset, as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the balance or value removed order to close the account, and the name of the person or entity to whom such account or other asset was remitted; and

      3.    The identification of any safe deposit box that is either titled in the name of any Defendant, or is otherwise subject to access by any Defendant.

      D.    Provide counsel for the Plaintiffs and the Temporary Receiver, within five (5) business days after being served with a request, copies of all documents pertaining to such account or asset, including but not limited to originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs; provided that such institution or custodian may charge a reasonable fee.

## VIII.

## REPATRIATION OF FOREIGN ASSETS

**IT IS FURTHER ORDERED** that, within five (5) business days following the service of this Order, each Defendant shall:

A.     Provide counsel for the Plaintiffs and the Temporary Receiver with a full accounting of all funds and assets outside of the territory of the United States which are held either: (1) by Defendant(s); (2) for the benefit of any Defendant(s); or (3) under direct or indirect control, individually or jointly, of any Defendant(s);

B.     Transfer to the territory of the United States all such funds and assets in foreign countries;

C.     Sign and deliver to counsel for the Plaintiffs and the Temporary Receiver the Consent to Release of Financial Records attached to this Order as **Attachment C**; and

D.     Hold and retain all repatriated funds and assets, and prevent any disposition, transfer, or dissipation whatsoever of any such assets or funds, except as required by this Order.

## IX.

## NON-INTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that Defendants, whether acting directly or through any corporation, partnership, subsidiary, division, affiliate, or other entity or device, and their officers, agents, servants, employees, and attorneys, and those persons acting in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby temporarily restrained and enjoined from taking any action, directly or indirectly, that

may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by Section VIII of this Order, including but not limited to:

      A.      Sending any statement, letter, fax, e-mail, or wire transmission, telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement, until such time that all assets have been fully repatriated pursuant to Section VII of this Order; and

      B.      Notifying any trustee, protector, or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a Court Order, until such time that all assets have been fully repatriated pursuant to Section VIII of this Order.

## X.

## APPOINTMENT OF TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that _____ is appointed Temporary Receiver for the Receivership Defendants, and any affiliates or subsidiaries thereof controlled by any Receivership Defendant, with the full power of an equity Receiver.  The Temporary Receiver shall be the agent of this Court and solely the agent of this Court in acting as Temporary Receiver under this Order.  The Temporary Receiver shall be accountable directly to this Court.  The Temporary Receiver shall comply with all local rules and laws governing federal equity receivers.

# XI.

## COOPERATION WITH THE TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that Defendants shall fully cooperate with and assist the Temporary Receiver.  Defendants' cooperation and assistance shall include, but not be limited to, providing any information to the Temporary Receiver that the Temporary Receiver deems necessary to exercise the authority and discharge the responsibilities of the Temporary Receiver under this Order; providing any login and password required to access any computer or electronic files or information in any medium; and advising all persons who owe money to the Receivership Defendants that all debts should be paid directly to the Temporary Receiver. Defendants are hereby restrained and enjoined from directly or indirectly:

      A.      Transacting any of the business of the Receivership Defendants;

      B.      Excusing debts owed to the Receivership Defendants;

      C.      Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any documents of the Receivership Defendants;

      D.      Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Defendants, or the Temporary Receiver;

      E.      Failing to notify the Temporary Receiver of any asset, including accounts, of the Receivership Defendants held in any name other than the name of the Receivership Defendants, or by any person or entity other than the Receivership Defendants, or failing to provide any

assistance or information requested by the Temporary Receiver in connection with obtaining

possession, custody, or control of such assets; or

   F.  Doing any act or thing whatsoever to interfere with the Temporary Receiver's

taking and keeping custody, control, possession, or managing of the assets or documents subject

to this receivership; or to harass or interfere with the Temporary Receiver in any way; or to

interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents

of the Receivership Defendants; or to refuse to cooperate with the Temporary Receiver or the

Temporary Receiver's duly authorized agents in the exercise of their duties or authority under

any Order of this Court.

   This Section does not prohibit transfers to the Temporary Receiver, as specifically

required in Section XIII (Delivery of Receivership Property), nor does it prohibit the

Repatriation of Foreign Assets, as specifically required in Section VIII (Repatriation of Foreign

Assets) of this Order.

## XII.

## DUTIES AND AUTHORITY OF TEMPORARY RECEIVER

   **IT IS FURTHER ORDERED** that the Temporary Receiver is directed and authorized to

accomplish the following:

   A.  Assume full control of the Receivership Defendants by removing, as the

Temporary Receiver deems necessary or advisable, any director, officer, independent contractor,

employee, attorney, or agent of the Receivership Defendants, including Defendant Boris Mizhen,

from control of, management of, or participation in, the affairs of the Receivership Defendants.

Such control shall include access to all privilege information or documentation belonging to any

Receivership Defendant and the authority to assert or waive such privilege on behalf of the Receivership Defendants;

B.       Take exclusive custody, control, and possession of all assets and documents of, or in the possession, custody, or under the control of, the Receivership Defendants, wherever situated.  The Temporary Receiver shall have full power to collect, divert, and open mail and to sue for, collect, receive, take possession of, hold, and manage all assets and documents of the Receivership Defendants and other persons or entities whose interests are now held by or under the direction, possession, custody, or control of the Receivership Defendants;

C.       Take all steps necessary to secure the assets and business premises of the Receivership Defendants, which may include, but are not limited to, taking the following steps as the Temporary Receiver deems necessary or advisable: (1) serving and filing this Order; (2) completing a written inventory of all receivership assets; (3) obtaining pertinent information from all employees and other agents of the Receivership Defendants, including, but not limited to, the name, home address, social security number, job description, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent; (4) video-recording all portions of the location; (5) changing the locks and, in cooperation with the Plaintiffs' forensic contractors, disconnecting any computer networks or other means of access to electronically stored information or other documents maintained at that location; or (6) requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Temporary Receiver with proof of identification, and/or to demonstrate to the satisfaction of the Temporary Receiver that such persons are not removing from the premises documents or assets of the Receivership Defendants.  Such authority shall include, but

not be limited to, the authority to order any owner, director, or officer of any Receivership

Defendants to leave the business premises.  Law enforcement personnel, including, but not

limited to, the local police may assist the Temporary Receiver in implementing this Order to

keep the peace and maintain security to facilitate the implementation of this Order;

        D.      Conserve, hold, and manage all receivership assets, and perform all acts necessary

or advisable to preserve the value of those assets, in order to prevent any irreparable loss,

damage, or injury to consumers, including, but not limited to, obtaining an accounting of the

assets and preventing the transfer, withdrawal, or misapplication of assets, and including the

authority to liquidate or close out any open securities or commodity futures positions of the

Receivership Defendants;

        E.      Enter into contracts and purchase insurance as advisable or necessary;

        F.      Prevent the inequitable distribution of assets and determine, adjust, and protect

the interests of consumers and creditors who have transacted business with one or more

Receivership Defendants;

        G.      Manage and administer the business of the Receivership Defendants until further

order of this Court by performing all incidental acts that the Temporary Receiver deems to be

advisable or necessary, which includes retaining, hiring, or dismissing any employees,

independent contractors, or agents;

        H.      Choose, engage, and employ attorneys, accountants, appraisers, investigators, and

other independent contractors and technical specialists, as the Temporary Receiver deems

advisable or necessary in the performance of duties and responsibilities;

I.      Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order. The Temporary Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendants prior to the date of entry of this Order, except payments that the Temporary Receiver deems necessary or advisable to secure assets of the Receivership Defendants, such as rental payments;

J.      Collect any money due or owing to the Receivership Defendants.  Provided, however, that the Temporary Receiver shall not attempt to collect any amount from a consumer or to allow any Receivership Defendant to continue to debit or otherwise charge a consumer's account, if the Temporary Receiver believes the consumer was a victim of the deceptive acts or practices alleged in the Complaint;

K.      Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal or foreign courts that the Temporary Receiver deems necessary and advisable to preserve or recover the assets of the Receivership Defendants or to carry out the Temporary Receiver's mandate under this Order;

L.      Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted against the Receivership Defendants or the Temporary Receiver that the Temporary Receiver deems necessary and advisable to preserve the assets of the Receivership Defendants or to carry out the Temporary Receiver's mandate under this Order;

M.      Continue and conduct the businesses of the Receivership Defendants in such manner, to such extent, and for such duration as the Temporary Receiver may in good faith deem

to be necessary or appropriate to operate the businesses profitably, using the assets of the receivership estate, and lawfully, if at all;

     N.     Take depositions and issue subpoenas to obtain documents and records pertaining to the receivership and compliance with this Order.  Subpoenas may be served by agents or attorneys of the Temporary Receiver and by agents of any process server retained by the Temporary Receiver;

     O.     Open one or more bank accounts as designated depositories for funds of the Receivership Defendants.  The Temporary Receiver shall deposit all funds of the Receivership Defendants in such a designated account and shall make all payments and disbursements from the receivership estate from such an account;

     P.     Maintain accurate records of all receipts and expenditures made by the Temporary Receiver; and

     Q.     File reports with the Court on a timely and reasonable basis.

## XIII.

## DELIVERY OF RECEIVERSHIP PROPERTY

**IT IS FURTHER ORDERED** that immediately upon service of this Order upon them, the Defendants, including the Receivership Defendants, shall forthwith or within such time as permitted by the Temporary Receiver in writing, deliver to the Temporary Receiver possession and custody of:

     A.     All funds, assets, and property of the Receivership Defendants, whether situated within or outside the territory of the United States, that are: (1) held by the Receivership

Defendants, (2) held for the benefit of the Receivership Defendants, or (3) under the direct or indirect control, individually or jointly, of the Receivership Defendants;

B.     All documents of the Receivership Defendants, including but not limited to all books and records of assets including funds and property, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, records of ACH transactions, and check registers), corporate minutes, contracts, customer and consumer lists, title documents, and electronic records;

C.     All funds and other assets belonging to members of the public now held by the Receivership Defendants;

D.     All keys, computer and other passwords, entry codes, combinations to locks required to open or gain access to any of the property or effects, and all monies in any bank deposited to the credit of the Receivership Defendants, wherever situated; and

E.     Information identifying the accounts, employees, properties, or other assets or obligations of the Receivership Defendants.

## XIV.

### TRANSFER OF FUNDS TO THE TEMPORARY RECEIVER BY FINANCIAL INSTITUTIONS AND OTHER THIRD PARTIES

**IT IS FURTHER ORDERED** that, upon service of a copy of this Order, any financial or brokerage institution or depository, escrow agent, title company, commodity trading company, payment processing company, or trust shall cooperate with all reasonable requests of counsel for the Plaintiffs and the Temporary Receiver relating to implementation of this Order, including transferring funds at the Temporary Receiver's direction and producing records related to the assets and sales of the Receivership Defendants.

## XV.

## TEMPORARY RECEIVER'S REPORTS

**IT IS FURTHER ORDERED** that the Temporary Receiver shall report to this Court on or before the date set for the hearing to Show Cause regarding the Preliminary Injunction, regarding: (1) the steps taken by the Temporary Receiver to implement the terms of this Order; (2) the value of all liquidated and unliquidated assets of the Receivership Defendants; (3) the sum of all liabilities of the Receivership Defendants; (4) the steps the Temporary Receiver intends to take in the future to: (a) prevent any diminution in the value of assets of the Receivership Defendants; (b) pursue receivership assets from third parties; and (c) adjust the liabilities of the Receivership Defendants, if appropriate; and (5) any other matters which the Temporary Receiver believes should be brought to the Court's attention. *Provided,* however, if any of the required information would hinder the Temporary Receiver's ability to pursue receivership assets, the portions of the Temporary Receiver's report containing such information may be filed under seal and not served on the parties.

## XVI.

## TEMPORARY RECEIVER'S BOND

**IT IS FURTHER ORDERED** that the Temporary Receiver shall file with the Clerk of this Court a bond in the sum of $_____ with sureties to be approved by the Court, conditioned that the Temporary Receiver will truly perform the duties of the office and abide by and perform all acts the Court directs.

## XVII.

## COMPENSATION OF THE TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that the Temporary Receiver, and all persons or entities

retained or hired by the Temporary Receiver as authorized under this Order, shall be entitled to

reasonable compensation for the performance of duties undertaken pursuant to this Order and for

the cost of actual out-of-pocket expenses incurred by them from the assets now held by or in the

possession or control of, or which may be received by, the Receivership Defendants.  The

Temporary Receiver shall file with the Court and serve on the parties a request for the payment

of reasonable compensation at the time of the filing of any report required by Section XV.  The

Temporary Receiver shall not increase the fees or rates used as the bases for such fee

applications without prior approval of the Court.

## XVIII.

## WITHDRAWAL OF TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that the Temporary Receiver and any professional

retained by the Temporary Receiver, including but not limited to his or her attorneys and

accountants, be and are hereby authorized to withdraw from their respective appointments or

representations at any time after the date of this Order, for any reason in their sole and absolute

discretion, by sending written notice seven (7) days prior to the date the Temporary Receiver

intends to withdraw to the Court and to the parties; and such Temporary Receiver and

professionals shall be relieved of all liabilities and responsibilities seven (7) days from the date

of such notice or withdrawal.  The written notice shall include an interim report indicating the

Temporary Receiver's actions and reflect its knowledge gained.  The report shall also contain the Temporary Receiver's recommendations, if any.

## XIX.

## ACCESS TO BUSINESS PREMISES AND RECORDS

**IT IS FURTHER ORDERED** that the Plaintiffs and the Temporary Receiver, and their representatives, agents, and assistants, shall have immediate access to all business premises and storage facilities, owned, controlled, or used by the Receivership Defendants, including, but not limited to, the offices and facilities of the Receivership Defendants at **420 East Main Street, Branford, Connecticut, 06405** and any commercial mail boxes, used by the Receivership Defendants.

The Plaintiffs and the Temporary Receiver are authorized to employ the assistance of law enforcement officers as they deem necessary to effect service and peacefully implement this Order.  The Plaintiffs and the Temporary Receiver may exclude Defendants and Defendants' employees from the business premises during the immediate access.  The purpose of the immediate access shall be to effect service and to secure, inspect and copy documents and electronic data, including but not limited to, correspondence, emails, financial data, and other documents concerning Receivership Defendants' business practices and assets.

A.      The Plaintiffs and the Temporary Receiver and their representatives, agents, and assistants, shall have the right to remove documents from the above-listed premises in order that they may be inspected, inventoried, and copied and/or secured.

B.     The Plaintiffs shall return any removed documents to the Temporary Receiver within five (5) business days, or such time as is agreed upon by the Plaintiffs and the Temporary Receiver.

C.     Defendants and all employees or agents of Receivership Defendants shall provide the Plaintiffs and the Temporary Receiver with any necessary means of access to documents and records, including, without limitation, the locations of Receivership Defendants' business premises, keys and combinations to locks, computer access codes, and storage area access information.

D.     If any documents, records, property, computers or other electronic data storage devices containing information related to the business practices or finances of the Receivership Defendants are at a location other than those listed herein, including but not limited to, the personal residences of the Defendants, then immediately upon service of this Order upon them, Defendants shall produce to the Temporary Receiver within 24 hours all such documents, records, property, computers or other electronic data storage devices.  In order to prevent the destruction of electronic data, upon service of this Order upon Defendants, any computers or other electronic data storage devices containing such information shall be powered down (turned off) in the normal course for the operating systems used on such devices and shall not be used until produced for copying and inspection, along with any codes needed for access.

E.     Within forty-eight (48) hours of service of this Order, each Defendant shall produce to the Temporary Receiver a list of all agents, employees, officers, servants, attorneys, accountants, financial advisors, and those persons in active concert and participation with them,

who have been associated or done business with the Receivership Defendants. The list shall include name, address, email, and the most recent contact information.

## XX.

## DEFENDANTS' ACCESS TO BUSINESS PREMISES AND RECORDS

**IT IS FURTHER ORDERED** that the Temporary Receiver shall allow the Defendants and their representatives reasonable access to the premises of the Receivership Defendants. The purpose of this access shall be to inspect, inventory, and copy any documents and other property owned by, or in the possession of, the Receivership Defendants, provided that those documents and property are not removed from the premises without the permission of the Temporary Receiver. The Temporary Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access.

## XXI.

## PRESERVATION OF RECORDS

**IT IS FURTHER ORDERED** that Defendants, whether acting directly or through any corporation, partnership, subsidiary, division, affiliate, or other entity or device, and their officers, agents, servants, employers, and attorneys, and those persons acting in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby temporarily restrained and enjoined from destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any documents that relate to the business practices or finances of any Defendant, including, but not limited to, any contracts, accounting data, correspondence, advertisements, computer tapes, disks or other computerized records, books, written or printed records, handwritten notes, recordings,

telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, and copies of federal, state, or local business or personal income or property tax returns.

## XXII.

## PROHIBITION ON USE OF CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants, whether acting directly or through any corporation, partnership, subsidiary, division, affiliate, or other entity or device, and their officers, agents, servants, employees, and attorneys, and those persons acting in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby temporarily restrained and enjoined from using, benefitting from, selling, renting, leasing, transferring, or otherwise disclosing the name, address, telephone number, email address, social security number, credit card number, debit card number, bank account number, any financial account number, or any data that enables access to a customer's account, or other identifying information of any person which any Defendant obtained prior to entry of this Order in connection with the marketing or sale of any good or service, including those who were contacted or are on a list to be contacted by any of the Defendants; *provided* that Defendants may disclose such identifying information to a law enforcement agency or as required by any law, regulation, or court order.

## XXIII.

## CREDIT REPORTS

**IT IS FURTHER ORDERED** that the Plaintiffs and/or the Temporary Receiver may obtain credit reports concerning any of the Defendants pursuant to Section 604(a)(1) of the Fair

Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to Plaintiffs.

## XXIV.

## NOTIFICATION OF BUSINESS ACTIVITIES

**IT IS FURTHER ORDERED** that the Individual Defendant is hereby temporarily restrained and enjoined from directly or indirectly creating, operating, or exercising any control over any business entity, including any partnership, limited partnership, joint venture, sole proprietorship or corporation, without first serving on counsel for the Plaintiffs and Temporary Receiver a written statement disclosing the following:

1. The name of the business entity;

2. The address and telephone number of the business entity;

3. The names of the business entity's officers, directors, principals, managers and employees; and

4. A detailed description of the business entity's intended or actual activities.

## XXV.

## STAY OF ACTIONS AND BANKRUPTCY PETITIONS

**IT IS FURTHER ORDERED** that:

A. Except by leave of this Court, during the pendency of the Temporary Receivership ordered herein, the Receivership Defendants and all customers, principals, investors, creditors, stockholders, lessors, and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of the Receivership Defendants, and all others acting for or on behalf of such persons, including attorneys, trustees, agents, sheriffs, constables,

marshals, and other officers and their deputies, and their respective attorneys, servants, agents, and employees, are hereby stayed from:

1.    Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations;

2.    Accelerating the due date of any obligation or claimed obligation; filing or enforcing any lien; taking or attempting to take possession, custody, or control of any asset; attempting to foreclose, forfeit, alter, or terminate any interest in any asset, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise;

3.    Executing, issuing, serving, or causing the execution, issuance or service of, any legal process, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process, whether specified in this Order or not; or

4.    Doing any act or thing whatsoever to interfere with the Temporary Receiver's taking custody, control, possession, or management of the assets or documents subject to this receivership; or to harass or interfere with the Temporary Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Defendants.

B.    This Section does not stay:

1.    The commencement or continuation of a criminal action or proceeding;

2.      The commencement or continuation of an action or proceeding by a

governmental unit to enforce such governmental unit's police or

regulatory power;

3.      The enforcement of a judgment, other than a money judgment, obtained in

an action or proceeding by a governmental unit to enforce such

governmental unit's police or regulatory power; or

4.      The issuance to the Receivership Defendant of a notice of tax deficiency.

C.      Plaintiffs are authorized to file the "Notice of Stay" attached to this Order as

**Attachment D** in all currently pending actions, including (1) *First Bank of Delaware v.*

*LeanSpa, LLC, et al.*, No. 1:11-cv-00675-UNA (D. Del.), and (2) *LeadClick Media, Inc. v.*

*LeanSpa, LLC et al.*, 4:11-cv-04423-DMR (N.D. Ca.), and in all actions that have been filed or

may be filed in the future.

**IT IS FURTHER ORDERED**, that, in light of the appointment of the Temporary

Receiver, the Receivership Defendants are hereby prohibited from filing petitions for relief

under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., without prior permission

from this Court.

## XXVI.

## SERVICE OF ORDER

**IT IS FURTHER ORDERED** that copies of this Order may be served by any means,

including facsimile transmission or email, by employees or agents of the Plaintiffs or the

Temporary Receiver, upon any financial institution or other entity or person that may have

possession, custody, or control of any documents or assets of Defendants, or that may otherwise

be subject to any provision of this Order.  Service upon any branch or office of any financial institution shall effect service upon the entire financial institution.

## XXVII.

## DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this Order to their agents, servants, employees, consultants, and any affiliated businesses, and other persons and entities subject in any part to their direct or indirect control.  Within five (5) business days of receipt of this Order, Defendants must submit to counsel for the Plaintiffs and Temporary Receiver a truthful sworn statement identifying those persons and entities to whom this Order has been distributed.

## XXVIII.

## CORRESPONDENCE

**IT IS FURTHER ORDERED** that, for the purposes of this Order, all correspondence and service of pleadings on the Plaintiffs shall be addressed to:

Darren Lubetzky
Federal Trade Commission
Northeast Region
One Bowling Green, Suite 318
New York, NY 10004
Phone: (212) 607-2829
Facsimile: (212) 607-2832
Email: dlubetzky@ftc.gov

Matthew Fitzsimmons
Office of the Attorney General
110 Sherman Street
Hartford CT 06105
Phone: (860)808-5400
Facsimile (860) 808-5593
Email: Matthew.Fitzsimmons@ct.gov

## XXIX.

## EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that, notwithstanding the provisions of Federal Rules of

Civil Procedure 26(d) and (f) and 30(a)(2)(C), and pursuant to Federal Rules of Civil Procedure

30(a), 34, and 45, the Plaintiffs are granted leave, at any time after service of this Order, to

conduct limited discovery for the purpose of discovering the (1) nature, location, status, and

extent of Defendants' assets; (2) nature and location of documents reflecting the business

transactions of Defendants; and (3) Defendants' compliance with this Order.  Counsel for the

Plaintiffs may proceed as follows:

A.     Take the deposition of any person or entity, on at least three (3) calendar days

notice.  Depositions may be taken Monday through Saturday and may be taken by telephone or

other electronic means;

B.     Serve upon any Defendant requests for production of documents or inspection

that require production or inspection within five (5) business days of service; and may serve

subpoenas upon non-parties that direct production or inspection within five (5) business days of

service; and

C.     Any discovery taken pursuant to this Order is in addition to, and is not subject to,

the presumptive limits on discovery set forth in the Federal Rules of Civil Procedure and Local

Rules of this Court.  If a Defendant fails to appear for a properly noticed deposition or fails to

comply with a request for production or inspection, the Defendants may be prohibited from

introducing evidence at the hearing on the Plaintiffs' request for a preliminary injunction.

Deposition transcripts that have not been signed may be used for the purpose of the hearing on the Order to Show Cause Why a Preliminary Injunction Should Not Issue.

## XXX.

## PRELIMINARY INJUNCTION

**IT IS FURTHER ORDERED**, pursuant to Fed. R. Civ. P. 65(b), that Defendants shall appear on the _____ day of _____, 2011, at _____ at the United States courthouse, located at _____, Connecticut, Courtroom ____, to show cause, if there is any, why this Court should not enter a preliminary injunction pending final ruling on the Complaint against Defendants, enjoining them from further violations of Sections 5 and 12 of the Federal Trade Commission Act, the Electronic Funds Transfer Act, 15 U.S.C. § 1693(e), and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110(b), continuing the freeze of their assets, appointing a permanent receiver and imposing such additional relief as may be appropriate.

## XXXI.

## MOTION FOR LIVE TESTIMONY AND PLEADINGS
## FOR THE PRELIMINARY INJUNCTION HEARING

**IT IS FURTHER ORDERED,** that the issuance of a preliminary injunction pursuant to Fed. R. Civ. P. 65 enjoining the Defendants during the pendency of this action shall be determined on the pleadings, declarations, memoranda, and other exhibits filed by the parties and on oral argument.

A. Any party who desires to present live testimony at the hearing shall file a motion requesting leave to present live testimony, and serve such motion on all opposing parties, not later than three (3) business days prior to the preliminary injunction hearing. Such motion shall

set forth (1) the name, address, and telephone number of each proposed witness, (2) a detailed summary or affidavit revealing the substance of each proposed witness' expected testimony, and (3) an explanation of why taking the live testimony would be helpful to the Court.  Any papers opposing a timely motion to present live testimony or to present live testimony in response to another party's timely motion to present live testimony shall be filed with this Court and served on the other parties at least two (2) business days prior to the preliminary injunction hearing.

B.     The Defendants shall file with the Court and serve counsel for the Plaintiffs any answering pleadings, memoranda, declarations or other evidence no later than four (4) business days prior to the preliminary injunction hearing.  The Plaintiffs may file responsive or supplemental pleadings, memoranda, declarations or other evidence with the Court and serve the same on Defendants no later than (1) business day prior to the preliminary injunction hearing.

*Provided, however*, that service for all documents in Subsections A and B above shall be performed by personal or overnight delivery, facsimile or electronic mail, and documents shall be delivered so that they shall be received by the other parties no later than 5:00 p.m. on the appropriate days provided in this Section.

## XXXII.
## DURATION OF ORDER

**IT IS FURTHER ORDERED** that the Temporary Restraining Order granted herein shall expire on the _____ day of _____, 2011, at ___ o'clock a.m./p.m., unless within such time, the Order, for good cause shown, is extended for an additional period not to exceed fourteen (14) calendar days, or unless it is further extended pursuant to Federal Rule of Civil Procedure 65.

# XXXIII.

## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that the Court shall continue to retain jurisdiction of this matter for all purposes.

**SO ORDERED**, this _____ day of _____, 2011, at _____ o'clock a.m./p.m.

_____
United States District Court Judge