# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

**FEDERAL TRADE COMMISSION, and**

**STATE OF CONNECTICUT,**

    **Plaintiffs,**

    **v.**

**LEANSPA, LLC, a Connecticut**
**limited liability company,**

**NUTRASLIM, LLC, a Connecticut**
**limited liability company,**

**NUTRASLIM U.K. LTD, also d/b/a**
**LEANSPA U.K. LTD., an United Kingdom**
**limited liability company,**

**BORIS MIZHEN, individually and as an**
**officer of LEANSPA, LLC, NUTRASLIM,**
**LLC, and NUTRASLIM U.K. LTD,**

**LEADCLICK MEDIA, INC., a California**
**corporation, and LEADCLICK MEDIA,**
**LLC, as a successor limited liability**
**company, and**

**RICHARD CHIANG, individually and as an**
**officer of LEADCLICK MEDIA INC.**

    **Defendants, and**

**ANGELINA STRANO,**

    **Relief Defendant.**

**Case No. 3:11-cv-1715 (VLB)**

**The Honorable Vanessa L. Bryant**

**July 26, 2012**

## AMENDED COMPLAINT FOR PERMANENT INJUNCTION
## AND OTHER EQUITABLE RELIEF

Plaintiffs, the Federal Trade Commission ("FTC") and the State of Connecticut, for their Amended Complaint allege:

1.      The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and Section 917(c) of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693o(c), to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52; Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a); and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

2.      The State of Connecticut, by and through George Jepsen, the Attorney General of the State of Connecticut, acting at the request of William M. Rubenstein, Commissioner of the Connecticut Department of  Consumer Protection, brings this action under the Connecticut Unfair Trade Practices Act ("CUTPA"), Chapter 735a of the Connecticut General Statutes, and more particularly Conn. Gen. Stat. § 42-110m, to obtain injunctive relief against the Defendants' alleged violations of Conn. Gen. Stat. § 42-110b(a), to obtain other relief as is necessary to redress injury to consumers resulting from the Defendants' violations of law, and civil penalties, pursuant to Conn. Gen. Stat. § 42-110o(b).

2

## JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), and 1693o(c).

4.    This Court has supplemental jurisdiction over Plaintiff State of Connecticut's claims under 28 U.S.C. § 1367.

5.    Venue is proper in this district under 28 U.S.C. § 1391 (b) and (c), and 15 U.S.C. § 53(b).

## PLAINTIFFS

6.    The FTC is an independent agency of the United States Government created by statute.  15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces Section 12 of the FTC Act, 15 U.S.C. § 52, which prohibits false advertisements for food, drugs, devices, services, or cosmetics in or affecting commerce.  The FTC also enforces the EFTA, which regulates the rights, liabilities, and responsibilities of participants in electronic fund transfer systems, 15 U.S.C. §§ 1693, *et seq*.

7.    The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the EFTA and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.  15 U.S.C. §§ 53(b), 56(a)(2)(A), and 1693o(c).

3

8.      The State of Connecticut, through its Attorney General acting at the request of its Commissioner of Consumer Protection, is authorized to initiate proceedings to enjoin violations of CUTPA and to seek injunctive relief, restitution and civil penalties and other equitable relief as this Court deems appropriate.  Conn. Gen. Stat. §§ 42-110m and 42-110o.

## DEFENDANTS

9.      Defendant Boris Mizhen ("Mizhen"), a resident of Guilford, Connecticut, owns, directs, or otherwise controls Defendants LeanSpa, LLC, NutraSlim, LLC, and NutraSlim U.K. Ltd.  Mizhen is the chief executive officer and owner of Defendants LeanSpa, LLC and NutraSlim, LLC, and an officer, director, or owner of Defendant NutraSlim U.K. Ltd.  Mizhen uses or has used each of these companies to operate an international enterprise marketing dietary supplements and related health products over the Internet.  By and through these companies, he has harmed U.S. consumers with his unfair and deceptive business practices.  At all times material to this Amended Complaint, acting alone or in concert with others, Mizhen has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Amended Complaint.  Defendant Mizhen resides in this district and in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

10.     Defendant LeanSpa, LLC ("LeanSpa") is a Connecticut limited liability company with its principal place of business at 420 East Main Street, Bldg

4

2, Suite 8, Branford, Connecticut 06405.  LeanSpa transacts or has transacted business in this district and throughout the United States.  At all times material to this Amended Complaint, acting alone or in concert with others, LeanSpa has advertised, marketed, promoted, offered to sell, and sold purported weight-loss and colon cleanse products under various brand names, including, but not limited to, LeanSpa™, LeanSpa™ with Acai, LeanSpa™ with HCA, and LeanSpa™ Cleanse to consumers throughout the United States.

11.     Defendant NutraSlim, LLC ("NutraSlim") is a Connecticut limited liability company with its principal place of business at 420 East Main Street, Bldg 2, Suite 8, Branford, Connecticut 06405.  NutraSlim transacts or has transacted business in this district and throughout the United States.  At all times material to this Amended Complaint, acting alone or in concert with others, NutraSlim has advertised, marketed, promoted, offered to sell, and sold purported weight-loss and colon cleanse products under various brand names, including, but not limited to, NutraSlim™, NutraSlim™ with HCA, and QuickDetox™ to consumers throughout the United States.

12.     Defendant NutraSlim U.K. Ltd. ("NutraSlim U.K."), also doing business as LeanSpa U.K. Ltd., is a United Kingdom limited liability company with its principal place of business at 420 East Main Street, Bldg 2, Suite 8, Branford, Connecticut 06405.  NutraSlim U.K. transacts or has transacted business in this district and throughout the United States.  At all times material to this Amended Complaint, acting alone or in concert with others, NutraSlim U.K. has advertised,

5

marketed, promoted, offered to sell, and sold purported weight-loss and colon

cleanse products under various brand names, including, but not limited to,

NutraSlim™, NutraSlim™ with HCA, QuickDetox™, and SlimFuel™ to consumers

throughout the United States.

13.     Defendants LeanSpa, NutraSlim, and NutraSlim U.K. (collectively,

"LeanSpa Companies") have operated as a common enterprise while engaging in

the deceptive, unfair, and unlawful acts and practices alleged below.  The

LeanSpa Companies have conducted the business practices described below

through an interrelated network of companies that have common ownership,

officers, managers, business functions, employees, and office locations, and

have commingled funds.  Because the LeanSpa Companies have operated a

common enterprise, each of them is jointly and severally liable for their acts and

practices alleged below.  Individual Defendant Mizhen has formulated, directed,

controlled, had the authority to control, or participated in the acts and practices

of the LeanSpa Companies that constitute the common enterprise (the LeanSpa

Companies and Mizhen are collectively referred to herein as the "LeanSpa

Defendants").

14.     Defendant LeadClick Media, Inc. is a California corporation with its

principal place of business in Poway, California.  LeadClick Media, Inc. is a

wholly-owned subsidiary of a publicly held Delaware corporation, CoreLogic, Inc.

In or around December 2011, LeadClick Media, Inc. converted to the limited

liability company LeadClick Media, LLC (LeadClick Media, Inc. and its successor

LeadClick Media, LLC are collectively referred to herein as "LeadClick"). LeadClick transacts or has transacted business in this district and throughout the United States.  At all times material to this Amended Complaint, LeadClick has marketed the LeanSpa Defendants' products.

15.     Defendant Richard Chiang ("Chiang") was an officer of LeadClick Media, Inc.   (Chiang and LeadClick are collectively referred to herein as the "LeadClick Defendants").  At all times material to this Amended Complaint, acting alone or in concert with others, Chiang has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Amended Complaint at paragraphs 25 to 40.  In connection with the matters alleged herein, Chiang transacts or has transacted business in this district and throughout the United States.

## RELIEF DEFENDANT

16.     Relief Defendant Angelina Strano ("Strano") is the spouse of Defendant Mizhen.  Strano resides in this district.  Strano has received ill-gotten funds that are the proceeds of the unlawful acts or practices alleged in this Amended Complaint, and she has no legitimate claim to those funds.

## COMMERCE

17.     At all times material to this Amended Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

7

## DEFENDANTS' BUSINESS ACTIVITIES

### Introduction

18.     Since 2010, the LeanSpa Defendants have marketed and sold via the Internet purported weight-loss and related health products under various brand names, including, but not limited to, LeanSpa™, LeanSpa™ with Acai, LeanSpa™ with HCA, and LeanSpa™ Cleanse, NutraSlim™, NutraSlim™ with HCA, QuickDetox™, and SlimFuel™ (collectively, "LeanSpa Defendants' Products") to consumers throughout the United States.

19.     The LeanSpa Defendants market and sell their products through websites they own and operate, including, but not limited to, LeanSpa.com, TryLeanSpa.com, GetLeanSpa.com, LeanSpaCleanse.com, TryNutraSlim.com, GetNutraSlim.com, TryQuickdetox.com, GetQuickdetox.com, and SlimFuel.com.

20.     The LeanSpa Defendants also use other entities known as "affiliate marketers" to advertise their products and to attract consumers to the LeanSpa Defendants' websites.  The LeanSpa Defendants hire affiliate marketers through third parties known as "affiliate networks" that match merchants with the affiliate marketers.  The main affiliate network used by the LeanSpa Defendants was defendant LeadClick.  From at least September 2010 to at least April 2011, the affiliate marketers hired by LeadClick and other affiliate networks used fake news sites to promote the LeanSpa Defendants' products and lure consumers to the LeanSpa Defendants' websites.

21.     The LeanSpa Defendants' websites offer their products on a free trial

8

basis and represent that consumers only need to pay a nominal shipping and handling fee, typically $4.95 or less.  The LeanSpa Defendants induce consumers to enter their credit or debit card information on their websites to pay for the nominal shipping and handling fee for the trial samples.  After consumers enter their credit or debit card information on the LeanSpa Defendants' websites, the LeanSpa Defendants then automatically enroll the consumers in the LeanSpa Defendants' continuity plans for monthly product shipments in which the LeanSpa Defendants make recurring charges to the consumers' credit card or bank accounts, usually $79.99 or more every month, that consumers typically neither knew about nor authorized.

22.     The LeanSpa Defendants used several entities known as "Independent Sales Organizations," including Check21, LLC, and Eureka Payments, LLC, to obtain merchant accounts at banks to process credit and debit sales transactions.  Using these merchant accounts with several banks, including National Bank of California, WestAmerica Bank, HSBC Bank USA, and First Bank of Delaware, the LeanSpa Defendants have already caused millions of dollars of unauthorized credit and debit card charges.  The bulk of these unauthorized charges were processed through First Bank of Delaware.

23.     The LeanSpa Defendants make it very difficult for consumers to cancel these continuity plans and avoid recurring charges or redeem promised money-back guarantees.  Consumers have great difficulty reaching a live person when they try to cancel or request a refund, and if they do speak with someone,

**9**

they are told they must navigate through a series of steps, including obtaining a Return Merchandise Authorization ("RMA") number, returning the product back to a facility, and paying the postage costs for returning the product.

24.     As a result, numerous consumers across the U.S. have expended considerable time and expense to cancel the LeanSpa Defendants' continuity plans, dispute charges, and (sometimes) obtain partial or full refunds.  The LeanSpa Defendants have taken in more than $25 million from consumers in the U.S.

<u>The LeanSpa Defendants and LeadClick Used Fake News Sites</u>
<u>to Lure Consumers to the LeanSpa Defendants' Trial Offers</u>

25.     From at least September 2010 to at least April 2011, the LeanSpa Defendants hired defendant LeadClick to provide online Internet marketing campaigns and generate online consumer leads for the LeanSpa Defendants' diet supplement and weight loss products.  As part of these marketing campaigns for the LeanSpa Defendants, LeadClick hired third party "affiliate marketers" to promote the LeanSpa Defendants' products and generate consumer leads.

26.     The LeanSpa Defendants paid LeadClick a set fee, referred to as "Cost Per Action" or "CPA," for each instance in which a consumer clicked on one of LeadClick's network links and landed on the LeanSpa Defendants' websites and ordered one of the LeanSpa Defendants' trial products.  LeadClick then paid a commission, or percentage of the fee, to the affiliate marketer.  The LeanSpa Defendants paid LeadClick over $8 million for consumer leads

10

generated from LeadClick's deceptive marketing.

27.     LeadClick also reviewed the LeanSpa Defendants' websites to help improve "conversions," or the number of consumers who ordered one of the LeanSpa Defendants' trial products.

28.     As an officer and representative of LeadClick, Chiang coordinated directly with Mizhen regarding LeadClick's lead generation activities for the LeanSpa Defendants, including the use of blogs or fake news sites to market the products and obtain consumer leads.  Chiang and Mizhen also discussed the LeanSpa Defendants' monthly sales and chargeback levels.

29.     From at least September 2010 to at least April 2011, the affiliate marketers hired by LeadClick (and other affiliate networks) to generate consumer leads for the LeanSpa Defendants used websites designed to look like news reports to lure consumers to the LeanSpa Defendants' websites.   The fake news sites typically promoted two products, an acai-based diet supplement and a colon or coffee cleansing product.  Examples of these websites are attached as Exhibits A through C.

30.     The affiliate marketers' websites use domain names that appear to be objective news or health websites, such as channel8health.com, dailyhealth6.com, and online6health.com, and include titles such as "Acai Berry Diet Exposed: Miracle Diet or Scam?" and "1 Trick of a Tiny Belly: Reporter Loses Her 'Belly' Using 1 Easy Tip."  The websites often include the names and logos of

major broadcast and cable television networks, falsely representing that the reports on the websites have been seen on these networks.

31.    The websites purport to provide objective investigative reports authored by reporters or commentators typically pictured on the websites.  The supposed authors of the reports claim to have tested the LeanSpa Defendants' Products on themselves and experienced dramatic and positive results.  Following the reports are "responses" or "comments" that appear to be independent statements made by ordinary consumers.

32.    In fact, the news reports promoting the LeanSpa Defendants' Products are fake.  Reporters or commentators pictured on the websites are fictional and never conducted the tests or experienced the results described in the reports.  The "responses" and "comments" following the reports are simply additional advertising content, not independent statements from ordinary consumers.

33.    In many instances, when consumers attempt to navigate away from or close the affiliate marketer's fake news website, the affiliate marketer's pop-up message containing the following statement (or substantially similar language) re-emphasizes that the LeanSpa Defendants' products are available on a free trial basis at no risk or cost:

> "Are you sure you don't want to take advantage of the LeanSpa and Natura Cleanse FREE TRIAL?"
>
> "Don't forget -  they will only be available for a limited time.  Since these trials are completely free, there is no cost or risk to you.  You can also give them away if

you'd like. Or give it a shot, like Cindy did, and
transform your body."

"If you are wondering why these trials are free, the
simple answer is because the manufacturers are
confident that their products will help you, and that you
will continue to use their products, and refer friends and
family."

"Don't miss out on these great offers!"

An example of these pop-up messages is attached at Exhibit D.

34.    The sole purpose of the fake news websites is to promote the

LeanSpa Defendants' Products.  The fake news websites are designed to entice

consumers to click on links that will transfer them to the LeanSpa Defendants'

websites or "landing" pages.

35.    The affiliate marketers hired by LeadClick (and other affiliate

networks) receive a commission or other payment for each consumer who clicks

on a link and ultimately makes a purchase or signs up for a "trial" on the LeanSpa

Defendants' websites.

36.    The fake news websites contain a number of deceptive claims about

the LeanSpa Defendants' Products.  For example, the "reporters" featured in the

"news" reports have represented that they have tested the Leanspa Defendants'

Products, such as LeanSpa™ Acai, LeanSpa™ with Pure HCA, and LeanSpa™

Cleanse, alone or in combination with other products, on themselves and that the

LeanSpa Defendants' Products, alone or in combination with other products,

cause rapid and substantial weight loss, including losing twenty-five pounds in

four weeks without any special diet or intense exercise.

37.    In truth and in fact, the LeanSpa Defendants' Products, alone or in combination with other products, do not cause rapid and substantial weight loss, nor do the LeanSpa Defendants possess and rely upon a reasonable basis to substantiate representations that consumers who use the LeanSpa Defendants' Products will lose a substantial amount of weight.

38.    The LeadClick Defendants and the LeanSpa Defendants both monitored and had knowledge that affiliate marketers in LeadClick's network were using fake news websites to lure consumers to the LeanSpa Defendants' websites.  The LeanSpa Defendants and the LeadClick Defendants discussed which products to pair with the LeanSpa Defendants' products on the fake news sites.

39.    The LeanSpa Defendants began receiving consumer complaints about these fake news websites from the Connecticut Better Business Bureau as early as November 2010, in which consumers explained they had ordered the LeanSpa Defendants' products after seeing what appeared to be legitimate news articles featuring these products.

40.    The LeadClick Defendants also had knowledge that the LeanSpa Defendants had a high level of disputed consumer charges, or chargebacks, resulting from the consumer leads generated by LeadClick's deceptive marketing. For example, in February 2011, the LeanSpa Defendants and the LeadClick Defendants discussed increasing the volume of leads generated by LeadClick in order to increase the monthly total number of transactions and thereby reduce

14

the LeanSpa Defendants' monthly chargeback rate monitored by credit card processing systems.  The LeanSpa Defendants also discussed with the LeadClick Defendants the use of offshore payment processors after several U.S. banks terminated or threatened to terminate the LeanSpa Defendants' merchant processing account as a result of excessive chargebacks.

**LeanSpa Defendants' Deceptive "Trial" Offers**

41.     The LeanSpa Defendants offer their products on the Internet to consumers on a "trial" basis with a "100% Satisfaction Guarantee," and represent that consumers need only pay a nominal charge for shipping and handling, usually $4.95 or less.  Examples of the LeanSpa Defendants' landing pages for their "LeanSpa" and "NutraSlim" products are attached at Exhibits E and F, respectively.

42.     To create a false sense of urgency, the LeanSpa Defendants typically have represented that the offered "trial" is available only for a limited time by prominently displaying on their websites or landing pages, such as tryleanspa.com, trynutraslim.com, leanspacleanse.com, or tryquickdetox.com, one or more of the following statements:

       a.     Try it TODAY!

       b.     ACT NOW TO CLAIM YOUR TRIAL PACKAGE!

       c.     HURRY!  Limited to 1 order per household.

       d.     LIMITED TIME OFFER!

15

43.     In some instances, if consumers try to navigate away from the website, a pop-up message appears about the LeanSpa Defendants' offer containing the following statement (or substantially similar language):

> Don't miss out on this GREAT OFFER!!!  Just press Cancel to remain on this page and receive an INSTANT discounted S&H price of $1.95.

An example of these pop-up messages on the LeanSpa Defendants' websites is included in Exhibit E at FTC-LS 000084.

44.     Further highlighting that consumers' total monetary obligations are only the nominal shipping and handling fee, many of the LeanSpa Defendants' order webpages include an order summary that represents consumers will not be charged for the trial order other than the listed nominal shipping and handling fee.  An example of the LeanSpa Defendants' order webpage is included in Exhibit E at FTC-LS 000085.

45.     In numerous instances, the LeanSpa Defendants offer trials of two purported related products, typically an acai berry dietary supplement and a colon cleanse product.

46.     After consumers enter their payment information on the LeanSpa Defendants' websites, ostensibly to pay the nominal shipping and handling charge, the LeanSpa Defendants email consumers order confirmations that usually show no charges for the trial products other than the nominal shipping and handling fee.

16

47.     In connection with the trial offers, the LeanSpa Defendants fail to disclose, or to disclose adequately, that consumers who do not affirmatively cancel within the trial period will be charged for the free trial samples, usually $79.99 (or a total of $158.98 if they ordered two trial products), and that consumers who order the trial samples are also automatically enrolled in a monthly continuity plan and charged each month for recurring shipments of the products.

48.      In fine print and in fonts smaller than most others used on the webpage, and most often buried in boxes with other fine print information, the LeanSpa Defendants' ordering webpages typically provide a statement that consumers can call to cancel within 14 days to avoid enrollment in an "auto-shipment program."  Many consumers do not see this fine print or are not aware that they have to affirmatively cancel to avoid additional charges at the time they provide their payment information.

49.     Nowhere on the ordering webpages or in proximity to the LeanSpa Defendants' promotional statements concerning the free trial do the LeanSpa Defendants disclose that consumers seeking to avoid being charged for the trial samples and for recurring monthly shipments must obtain a RMA number, return the products, and incur the postage fees for returning the products.  These obligations are referenced only in a separate lengthy multi-page terms and conditions webpage.

50.     In numerous instances, the LeanSpa Defendants charge consumers $79.99 for each product before the consumers even receive the trial samples or have an opportunity to cancel before the end of the trial period.

51.     In many instances, consumers first become aware of their enrollment in the LeanSpa Defendants' continuity programs when they receive a second shipment from the LeanSpa Defendants.  By this time, the LeanSpa Defendants will already have charged consumers not only for the allegedly free trial shipment, but also for this second shipment.

52.     Consumers are not able to cancel easily or get out of the LeanSpa Defendants' continuity plans.  In numerous instances, consumers who attempt to call the LeanSpa Defendants are put on hold for a long period of time and then disconnected.  In other instances, consumers who attempt to cancel online by going on the LeanSpa Defendants' websites and clicking on the "Easy Cancel" button option receive a notice that their account could not be found or that if they cancelled they would be charged $19.41 for the bottle they received.  In other instances, consumers who attempt to cancel by sending an email to the LeanSpa Defendants receive only automated replies.

53.     In numerous other instances, even when consumers are able to reach and speak with a live person, obtain a RMA number from the LeanSpa Defendants, and pay to ship the trial product to the LeanSpa Defendants, they still incur additional charges, such as cancellation fees, or do not receive a full refund or credit.

18

### Deceptive Guarantees and Refunds

54.    The LeanSpa Defendants' websites also represent that they will make full refunds to consumers who are dissatisfied with the product. Sometimes the refund process is described as "risk free" and simple.

55.    For example, in connection with the LeanSpa Defendants' trial product offers, the LeanSpa Defendants' landing pages, such as tryleanspa.com, trynutraslim.com, or tryquickdetox.com, make prominent disclosures about their "100% Satisfaction Guarantee" for their products.

56.    In other websites operated by the LeanSpa Defendants, such as leanspa.com and slimfuel.com, the LeanSpa Defendants make claims that their offers are "risk free" with a "30 Day Money Back Guarantee" for their products. For example, the following statements have appeared on some of the LeanSpa Defendants' websites:

      a.    Try it for 30 days, Risk Free;

      b.    30 Day Money Back Guarantee;

      c.    THE LEANSPA GUARANTEE

             We guarantee you will lose fat and gain muscle for PROPER weight loss – without any risk.  You have nothing to lose but weight!

             PROPER Weight Loss Guaranteed or your money back!

             If for any reason, LeanSpa fails to meet your expectations, simply return the bottle (even if empty) within 30 days of receipt for a prompt, courteous refund of your purchase price (less s/h).

An example of webpages from the LeanSpa Defendants' website leanspa.com

containing these statements is attached at Exhibit G.

57.     In numerous instances, the LeanSpa Defendants do not provide the promised full refunds to consumers.  In many instances, the LeanSpa Defendants' customer service agents deny the availability of refunds.  In other instances, the LeanSpa Defendants promise refunds, but never actually issue them.

58.     In addition, in numerous instances, the process to obtain a refund is not simple.   Consumers are usually not able to reach a live person to process their cancellation and refund requests before incurring additional charges.  In some cases, an additional shipment has already been sent and charged to the consumer before the consumer is able to cancel.  In addition, the LeanSpa Defendants often impose onerous, inadequately disclosed conditions and limitations on issuing full refunds.  For example, the LeanSpa Defendants require consumers to first obtain a RMA number from customer service prior to shipping the return package and consumers are required to bear the costs of returning the product, for both the trial product and the additional shipments they receive.  If the next month's shipment had already left the warehouse, the LeanSpa Defendants typically require consumers to return that package too or be charged.

59.     In many instances, consumers only receive refunds after they complained to law enforcement or the Better Business Bureau.

## False and Misleading Product Claims

60.     The LeanSpa Defendants represent on their websites offering LeanSpa™ and Slimfuel™ products that these products will cause rapid and substantial weight loss.

61.     The LeanSpa Defendants' websites promoting LeanSpa™ and Slimfuel™ products display testimonials of purported customers who have lost substantial amounts of weight using these products.  For example, on the LeanSpa Defendants' website tryleanspa.com one purported customer states, "I have been on LeanSpa now for 60 days and I have lost 18 pounds of fat."  On the LeanSpa Defendants' website slimfuel.com a purported customer states, "I have lost a total of 50 pounds in eight weeks with SlimFuel!"

62.     On their websites, the LeanSpa Defendants also represent that clinical studies prove that their LeanSpa™ and Slimfuel™ products will cause rapid and substantial weight loss.

63.     The following statements have appeared on the LeanSpa Defendants' website tryleanspa.com about the LeanSpa Defendants' LeanSpa™ product [footnotes omitted]:

    a.    Clinically Tested to Reduce Belly Fat!*

    b.    WARNING: The LeanSpa Weight Loss System is an advanced weight loss system designed to work fast and naturally for Proper Weight Loss!**

    c.    Change Your Body with LeanSpa!*

> In a pilot study on 17 subjects, the LeanSpa Formula showed a significant, average weight loss over a 2-month period.

d.    **LeanSpa Clinical Results**

> **Actual study participant results**

> **[Chart displaying "Fat Loss" results for three subjects of 13.6 pounds, 5.1 pounds, and 5.4 pounds]**

An example of a webpage from the LeanSpa Defendants' website tryleanspa.com containing these statements and footnotes is attached at Exhibit H.

64.    The following statement appears on the LeanSpa Defendants' website slimfuel.com about the LeanSpa Defendants' Slimfuel™ product:

> **CLINICAL STUDIES**

> In a pilot study on 17 subjects, the SlimFuel Formula showed a significant, average weight loss over a 2-month period.

An example of a webpage from the LeanSpa Defendants' website slimfuel.com containing this statement is attached at Exhibit I.

65.    The LeanSpa Defendants' websites leanspa.com and slimfuel.com refer to and contain hyperlinks to the same undated purported "clinical study," entitled "A Pilot Study to Evaluate the Safety and Efficacy of a Novel Proper Weight Loss Formula" (the "Pilot Study").

66.    In truth and in fact, the Pilot Study does not show that the LeanSpa Defendants' products LeanSpa™ and Slimfuel™ cause significant weight loss.

## VIOLATIONS OF THE FTC ACT

67.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

68.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act. Section 12(a) of the FTC Act, 15 U.S.C. § 52(a), prohibits the dissemination of any false advertisement in or affecting commerce for the purpose of inducing, or which is likely to induce, the purchase of food, drugs, devices, services, or cosmetics. For the purposes of Section 12 of the FTC Act, 15 U.S.C. § 52, the LeanSpa Defendants' Products are either a "food" or "drug" as defined in Section 15(b) and (c) of the FTC Act, 15 U.S.C. § 55(b), (c).

### COUNT ONE - Misrepresentations (Trial Offer)

**(By Plaintiff Federal Trade Commission Against the LeanSpa Defendants)**

69.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of the LeanSpa Defendants' Products, the LeanSpa Defendants, directly or through affiliates acting on their behalf and for their benefit, have represented, expressly or by implication, that the LeanSpa Defendants' trial offers are free or risk-free after the payment of a nominal shipping and handling charge.

70.     In truth and in fact, the LeanSpa Defendants' trial offers are not free or risk-free. Consumers who provide their credit or debit account information to pay a nominal shipping and handling fee for the trial product are likely to be

charged a large amount, typically $79.99, for the trial product, and large recurring amounts for subsequent monthly shipments if they are not able to cancel an automatic enrollment into the LeanSpa Defendants' continuity plans.

71.     Therefore, the LeanSpa Defendants' representations as set forth in Paragraph 69 of this Amended Complaint are false and misleading, and constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### COUNT TWO - Failures to Disclose

**(By Plaintiff Federal Trade Commission Against the LeanSpa Defendants)**

72.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of the LeanSpa Defendants' Products, the LeanSpa Defendants, directly or through affiliates acting on their behalf and for their benefit, have represented, expressly or by implication, that consumers who pay a nominal fee to receive a trial supply will incur no risks or obligations.

73.     In numerous instances, the LeanSpa Defendants have failed to disclose, or to disclose adequately, to consumers the material terms and conditions of the offer, including, but not limited to, the fact that:

> a.     consumers who sign up to receive a trial supply of one of the LeanSpa Defendants' products are charged for the trial supply of the product if they do not return it to the LeanSpa Defendants within a certain time period;
>
> b.     consumers who sign up to receive a trial supply of one of the

24

LeanSpa Defendants' products are automatically enrolled in a continuity program for the product and must cancel the program within a specified period of time to avoid additional recurring shipments of products and charges;

c.     consumers must obtain a RMA number from the LeanSpa Defendants before returning the product to the LeanSpa Defendants in order to avoid being charged for the free trial samples and subsequent automatic shipments of products; and

d.     consumers who attempt to cancel during the trial period will incur additional costs in canceling or returning the product, including paying a cancellation fee or paying for return shipping.

74.     The LeanSpa Defendants' failure to disclose, or to disclose adequately, the material information described in Paragraph 73 above, in light of the representation described in Paragraph 72 above, constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

COUNT THREE - Misrepresentations (Guarantees and Refunds)

(By Plaintiff Federal Trade Commission Against the LeanSpa Defendants)

75.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of the LeanSpa Defendants' Products, the

25

LeanSpa Defendants have represented, directly or indirectly, expressly or by implication, that they will provide full refunds to all consumers who request them.

76.     In truth and in fact, in numerous instances the LeanSpa Defendants have either not provided full refunds to consumers who requested them or provided refunds only after consumers complained to governmental agencies or to the Better Business Bureau.

77.     Therefore, the LeanSpa Defendants' representations as set forth in Paragraph 75 of this Amended Complaint are false and misleading, and constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

COUNT FOUR - Misrepresentations (Fake News Reports)

(By Plaintiff Federal Trade Commission

Against the LeanSpa Defendants and the LeadClick Defendants)

78.     In connection with the advertising, marketing, promotion, offering for sale, or sale of the LeanSpa Defendants' Products, the LeanSpa Defendants and the LeadClick Defendants, directly or through affiliates acting on their behalf and for their benefit, have represented, expressly or by implication, that:

    a.     Objective news reporters have performed independent tests demonstrating the effectiveness of the product featured, including LeanSpa™ Acai, LeanSpa™ with Pure HCA, and LeanSpa™Cleanse; and

26

        b.     The comments following these "news reports" express the views of independent consumers.

79.    In truth and in fact:

        a.     Objective news reporters have not performed independent tests demonstrating the effectiveness of the product featured, including LeanSpa™ Acai, LeanSpa™ with Pure HCA, and LeanSpa™Cleanse; and

        b.     The comments following these "news reports" do not express the views of independent consumers.

80.    Therefore, the LeanSpa Defendants and the LeadClick Defendants' representations as set forth in Paragraph 78 of this Amended Complaint are false and misleading, and constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### COUNT FIVE - False and Unsubstantiated Product Claims

### (By Plaintiff Federal Trade Commission Against the LeanSpa Defendants)

81.    In connection with the advertising, marketing, promotion, offering for sale, or sale of the LeanSpa Defendants' Products, the LeanSpa Defendants, directly or through affiliates acting on their behalf and for their benefit, have represented, expressly or by implication, that use of the LeanSpa Defendants' Products will result in rapid and substantial weight loss, including as much as losing twenty-five pounds in four weeks.

82.     In connection with the advertising, marketing, promotion, offering for sale, or sale of the LeanSpa Defendants' Products, the LeanSpa Defendants have represented, expressly or by implication, that clinical studies prove that their LeanSpa™ and Slimfuel™ products will cause rapid and substantial weight loss.

83.     The representations set forth in Paragraphs 81 and 82 of this Amended Complaint are false, misleading, or were not substantiated at the time the representations were made.

84.     Therefore, the making of each of the representations as set forth in Paragraphs 81 and 82 of this Amended Complaint constitutes a deceptive act or practice and the making of false advertisements, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

## VIOLATIONS OF THE ELECTRONIC FUND TRANSFER ACT AND REGULATION E

85.     Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), provides that a "preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made."  Section 903(9) of the EFTA, 15 U.S.C. § 1693a(9), provides that the term "preauthorized electronic fund transfer" means "an electronic fund transfer authorized in advance to recur at substantially regular intervals."

86.     Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b), provides that "[p]reauthorized electronic fund transfers from a consumer's account may be

28

authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer."

87.     Section 205.10(b) of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205.10(b), Supp. I, provides that "[t]he authorization process should evidence the consumer's identity and assent to the authorization."  *Id.* at ¶10(b), cmt. 5.  The Official Staff Commentary further provides that "[a]n authorization is valid if it is readily identifiable as such and the terms of the preauthorized transfer are clear and readily understandable."  *Id.* at ¶10(b), cmt. 6.

**COUNT SIX -**

**Unauthorized Electronic Fund Transfers from Consumers' Bank Accounts**

**(By Plaintiff Federal Trade Commission Against the LeanSpa Defendants)**

88.     In numerous instances, the LeanSpa Defendants have debited consumers' bank accounts on a recurring basis without obtaining a written authorization signed or similarly authenticated from consumers for preauthorized electronic fund transfers from their accounts, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

89.     In numerous instances, the LeanSpa Defendants have debited consumers' bank accounts on a recurring basis without providing to the consumer a copy of a written authorization signed or similarly authenticated by the consumer for preauthorized electronic fund transfers from the consumer's

29

account, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and

Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

90.     Pursuant to Section 917(c) of the EFTA, 15 U.S.C. § 1693o(c), every

violation of the EFTA and Regulation E constitutes a violation of the FTC Act.

91.     By engaging in violations of the EFTA and Regulation E as alleged in

Paragraphs 88 and 89 of this Amended Complaint, the LeanSpa Defendants have

engaged in violations of the FTC Act.  15 U.S.C. § 1693o(c).

## VIOLATIONS OF CUTPA

92.     CUTPA at §42-110b(a) states the following: "[n]o person shall engage

in unfair methods of competition and unfair or deceptive acts or practices in the

conduct of any trade or commerce."

93.     CUTPA states at § 42-110a(4): "trade" and "commerce" shall mean

the "advertising, the sale or rent or lease, the offering for sale or lease, or the

distribution of any service or any property, tangible or intangible, real, personal

or mixed, and any article, commodity, or thing of value in this state."

94.     CUTPA also states at § 42-110b(b) that: "[i]t is the intent that in

construing subsection (a) of this section, the commissioner and the courts of this

state shall be guided by interpretations given by the Federal Trade Commission

and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act (15

U.S.C. 45(a)(1)), as from time to time amended."

95.     The LeanSpa Defendants all operated or have operated from the

same Branford, Connecticut address.

96.     The LeanSpa Defendants' products ship from and contain the return address of 181 Marsh Hill Road, Orange, Connecticut 06477.

97.     The acts or practice alleged in this Amended Complaint all emanate from and are intimately associated with Connecticut, and the LeanSpa Defendants have therefore engaged in trade or commerce in the State of Connecticut.

COUNT SEVEN - Deceptive Acts or Practices (Trial Offer)

(By Plaintiff State of Connecticut Against the LeanSpa Defendants)

98.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of the LeanSpa Defendants' Products, the LeanSpa Defendants, directly or through affiliates acting on their behalf and for their benefit, have represented, expressly or by implication, that the LeanSpa Defendants' trial offers are free or risk-free after the payment of a nominal shipping and handling charge.

99.     In truth and in fact, the LeanSpa Defendants' trial offers are not free or risk-free.  Consumers who provide their credit or debit account information to pay a nominal shipping and handling fee for the trial product are likely to be charged a large amount, typically $79.99, for the trial product, and large recurring amounts for subsequent monthly shipments if they are not able to cancel an automatic enrollment into the LeanSpa Defendants' continuity plans.

100.    The LeanSpa Defendants' acts or practices, as described herein, were likely to mislead consumers acting reasonably under the circumstances into believing that they could obtain a product free or risk-free for only a nominal shipping and handling fee.

101.    The LeanSpa Defendants' representations as set forth in Paragraph 98 of this Count were material to consumers' decisions about whether or not to purchase products from the LeanSpa Defendants.

102.    The LeanSpa Defendants have therefore engaged in unfair or deceptive acts practices in violation of Conn. Gen. Stat. § 42-110b(a).

## COUNT EIGHT - Civil Penalties (Trial Offer)

### (By Plaintiff State of Connecticut Against the LeanSpa Defendants)

103.    The allegations of Paragraphs 98 through 102 of Count Seven are incorporated by reference as Paragraph 103 of Count Eight as if fully set forth herein.

104.    The LeanSpa Defendants engaged in the acts or practices alleged herein when they knew or should have known that their conduct was unfair or deceptive, in violation of Conn. Gen. Stat. § 42-110b(a), and, therefore, are liable for civil penalties of up to $5,000 per willful violation pursuant to Conn. Gen. Stat. § 42-110o(b).

**COUNT NINE -**

***Per Se* Unfair or Deceptive Acts or Practices**
**(Failures to Disclose Material Contingency)**

**(By Plaintiff State of Connecticut Against the LeanSpa Defendants)**

105.    In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of the LeanSpa Defendants' products, the LeanSpa Defendants, directly or through affiliates acting on their behalf and for their benefit, have represented, expressly or by implication, that consumers who pay a nominal fee to receive a trial supply will incur no further financial risks or obligations.

106.    In numerous instances in which the LeanSpa Defendants have made the representation set forth in Paragraph 105 of this Count, the LeanSpa Defendants have failed to disclose, or to disclose adequately, to consumers the material contingencies, conditions or limitations of the offer, including, but not limited to, the following:

> a.    consumers who sign up to receive a trial supply of one of the LeanSpa Defendants' products are charged for the trial supply of the product if they do not return it to the LeanSpa Defendants within a certain time period;

> b.    consumers who sign up to receive a trial supply of one of the LeanSpa Defendants' products are automatically enrolled in a membership program for the product and must cancel the program within a specified period of time to avoid additional

    recurring shipments of products and charges;

  c.  in order to avoid being charged for the free trial samples and subsequent automatic shipments of products, consumers must obtain a RMA number from the LeanSpa Defendants before returning the product to the LeanSpa Defendants; and

  d.  consumers who attempt to cancel during the trial period will incur additional costs in canceling or returning the product, including paying a cancellation fee or paying for return shipping.

  107. The LeanSpa Defendants' failure to conspicuously state each material contingency, condition or limitation to the offer that consumers who pay a nominal fee to receive a trial supply will incur no risks or obligations constitutes a *per se* unfair or deceptive act or practice pursuant to Regulations of Connecticut State Agencies § 42-110b-22.

  108. The LeanSpa Defendants have therefore engaged in unfair or deceptive acts and practices in violation of Conn. Gen. Stat. § 42-110b(a).

**COUNT TEN - Civil Penalties**

**(*Per Se* Unfair or Deceptive Acts or Practices (Failures to Disclose Material Contingency)**

**(By Plaintiff State of Connecticut Against the LeanSpa Defendants)**

  109. The allegations of Paragraphs 105 through 108 of Count Nine are incorporated by reference as Paragraph 109 of Count Ten as if fully set forth

34

herein.

110.    The LeanSpa Defendants engaged in the acts or practices alleged herein when they knew or should have known that their conduct was unfair or deceptive, in violation of Conn. Gen. Stat. § 42-110b(a), and, therefore, are liable for civil penalties of up to $5,000 per willful violation pursuant to Conn. Gen. Stat. § 42-110o(b).

COUNT ELEVEN - Deceptive Acts or Practices (Guarantees and Refunds)

(By Plaintiff State of Connecticut Against the LeanSpa Defendants)

111.    In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of the LeanSpa Defendants' Products, the LeanSpa Defendants have represented, directly or indirectly, expressly or by implication, that they will provide full refunds to all consumers who request them.

112.    In truth and in fact, in numerous instances the LeanSpa Defendants have either not provided full refunds to consumers who requested them or provided them only after consumers complained to governmental agencies or to the Better Business Bureau.

113.    The LeanSpa Defendants' acts or practices, as described herein, were likely to mislead consumers acting reasonably under the circumstances into believing that the LeanSpa Defendants will provide full refunds to all consumers who request them.

114.   The LeanSpa Defendants' representations as set forth in Paragraph 111 of this Count were material to consumers' decisions about whether or not to purchase products from the  LeanSpa Defendants.

115.   The LeanSpa Defendants have therefore engaged in unfair or deceptive acts and practices in violation of Conn. Gen. Stat. § 42-110b(a).

**COUNT TWELVE - Civil Penalties (Guarantees and Refunds)**

**(By Plaintiff State of Connecticut Against the LeanSpa Defendants)**

116.   The allegations of Paragraphs 111 through 115 of Count Eleven are incorporated by reference as Paragraph 116 of Count Twelve as if fully set forth herein.

117.   The LeanSpa Defendants engaged in the acts or practices alleged herein when they knew or should have known that their conduct was unfair or deceptive, in violation of Conn. Gen. Stat. § 42-110b(a), and, therefore, are liable for civil penalties of up to $5,000 per willful violation pursuant to Conn. Gen. Stat. § 42-110o(b).

**COUNT THIRTEEN – Deceptive Acts or Practices (Fake News Reports)**

**(By Plaintiff State of Connecticut**

**Against the LeanSpa Defendants and the LeadClick Defendants)**

118.   In connection with the advertising, marketing, promotion, offering for sale, or sale of the LeanSpa Defendants' Products, the LeanSpa Defendants and the LeadClick Defendants, directly or through affiliates acting on their behalf and for their benefit, have represented, expressly or by implication, that:

      a.      Objective news reporters have performed independent tests demonstrating the effectiveness of the product featured, including LeanSpa™ Acai, LeanSpa™ with Pure HCA, and LeanSpa™ Cleanse; and

      b.      The comments following these "news reports" express the views of independent consumers.

119.   In truth and in fact:

      a.      Objective news reporters have not performed independent tests demonstrating the effectiveness of the product featured, including LeanSpa™ Acai, LeanSpa™ with Pure HCA, and LeanSpa™ Cleanse; and

      b.      The comments following these "news reports" do not express the views of independent consumers.

120.   The LeanSpa Defendants and the LeadClick Defendants' acts or practices, as described herein, were likely to mislead consumers acting reasonably under the circumstances into believing that the news reports and the tests cited therein were objective and genuine and that the comments following the "news reports" expressed the views of independent consumers.

121.   The LeanSpa Defendants and the LeadClick Defendants' representations as set forth in Paragraph 118 of this Count were material to consumers' decisions about whether or not to purchase products from the LeanSpa Defendants.

122.    The LeanSpa Defendants and the LeadClick Defendants have therefore engaged in unfair or deceptive acts and practices in violation of Conn. Gen. Stat. § 42-110b(a).

### COUNT FOURTEEN –

**Civil Penalties for Deceptive Acts or Practices (Fake News Reports)**

**(By Plaintiff State of Connecticut**

**Against the LeanSpa Defendants and the LeadClick Defendants)**

123.    The allegations of Paragraphs 118 through 122 of Count Thirteen are incorporated by reference as Paragraph 123 of Count Fourteen as if fully set forth herein.

124.    The LeanSpa Defendants and the LeadClick Defendants engaged in the acts or practices alleged herein when they knew or should have known that their conduct was unfair or deceptive, in violation of Conn. Gen. Stat. § 42-110b(a), and, therefore, are liable for civil penalties of up to $5,000 per willful violation pursuant to Conn. Gen. Stat. § 42-110o(b).

### COUNT FIFTEEN –

**Unauthorized Electronic Fund Transfers from Consumers' Bank Accounts**

**(By Plaintiff State of Connecticut Against the LeanSpa Defendants)**

125.    In numerous instances, the LeanSpa Defendants have debited consumers' bank accounts on a recurring basis without obtaining a written authorization signed or similarly authenticated from consumers for preauthorized electronic fund transfers from their accounts, thereby violating Section 907(a) of

the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

126.   In numerous instances, the LeanSpa Defendants have debited consumers' bank accounts on a recurring basis without providing to the consumer a copy of a written authorization signed or similarly authenticated by the consumer for preauthorized electronic fund transfers from the consumer's account, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

127.   By engaging in the aforementioned acts and practices, the LeanSpa Defendants have violated the public policy embodied in the EFTA and Regulation E as alleged in Paragraphs 125 and 126 of this Amended Complaint.

128.   The LeanSpa Defendants' actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

129.   The LeanSpa Defendants' acts or practices, as described herein, are oppressive, unethical, immoral, and unscrupulous.

130.   The LeanSpa Defendants' acts or practices, as described herein, caused substantial injury to consumers in that consumers' bank accounts were debited on a recurring basis without proper authorization.

131.   The LeanSpa Defendants' acts or practices, as described herein, constitute unfair or deceptive acts or practices in violation of Conn. Gen. Stat. §

42-110b(a).

## COUNT SIXTEEN –

### Civil Penalties for Unfair or Deceptive Acts or Practices (Unauthorized Charges)

### (By Plaintiff State of Connecticut Against the LeanSpa Defendants)

132.   The allegations of Paragraphs 125 through 131 of Count Fifteen are incorporated by reference as Paragraph 132 of Count Sixteen as if fully set forth herein.

133.   The LeanSpa Defendants engaged in the acts or practices alleged herein when they knew or should have known that their conduct was unfair or deceptive, in violation of Conn. Gen. Stat. § 42-110b(a), and, therefore, are liable for civil penalties of up to $5,000 per willful violation pursuant to Conn. Gen. Stat. § 42-110o(b).

## COUNT SEVENTEEN

### (By Plaintiffs against Angelina Strano)

134.   Relief Defendant Strano has received, directly or indirectly, funds or otherwise benefitted from funds that are proceeds of the LeanSpa Defendants' unlawful acts and practices described herein.

135.    Relief Defendant Strano has no legitimate claim to the ill-gotten funds or benefits she received and will be unjustly enriched if she is not required to disgorge the funds or the value of benefits she received as a result of the LeanSpa Defendants' unlawful acts or practices.

136.   By reason of the foregoing, Relief Defendant Strano holds funds or

40

assets in constructive trust for the benefit of injured consumers.

## CONSUMER INJURY

137.   Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, the EFTA, and CUTPA. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

138.   Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations  of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

139.   The counts based upon CUTPA may be enforced by this Court though its pendent or supplement jurisdiction pursuant to 28 U.S.C. § 1367, and this Court may award relief under CUTPA, §42-110m(a) and 42-110o(b).

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. §§ 53(b), Section 917(c) of the EFTA, 15 U.S.C. § 1693o(c), Conn. Gen. Stat. §§ 42-

110a *et. seq.*, and the Court's own equitable powers, requests that the Court:

A.      Award Plaintiffs such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including, but not limited to, a temporary restraining order, an order freezing assets, immediate access, expedited discovery, the appointment of a receiver, and a preliminary injunction as to the LeanSpa Defendants;

B.      Enter a permanent injunction to prevent future violations of the FTC Act, the EFTA, and CUTPA by Defendants;

C.      Award such relief as the Court finds necessary to redress injury to consumers  resulting from Defendants' violations of the FTC Act, the EFTA, and CUTPA, including, but not limited to, civil penalties, prejudgment interest, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies;

D.      Enter an order requiring the Relief Defendant to disgorge all funds or assets, or the value of the benefits she has received from such funds or assets, which are traceable to Defendants' unlawful acts or practices; and

E.      Award Plaintiffs the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Respectfully submitted,

WILLARD K. TOM
General Counsel

WILLIAM H. EFRON

**42**

Regional Director
Northeast Region

Dated: July 26, 2012

*David W. Dulabon*

Darren H. Lubetzky (phv04227)
David W. Dulabon (phv05052)
Savvas S. Diacosavvas (phv05495)
Federal Trade Commission
Northeast Region
One Bowling Green, Suite 318
New York, NY 10004
Tel: (212) 607-2829
Fax: (212) 607-2822
Email: dlubetzky@ftc.gov
Email: ddulabon@ftc.gov
Email: sdiacosavvas@ftc.gov

John Hughes (CT 05289)
Assistant United States Attorney
Chief of Civil Division
157 Church Street
New Haven, CT 06510
Tel: (203) 821-3700
Fax: (203) 773-5373
Email: john.hughes@usdoj.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

GEORGE JEPSEN,
ATTORNEY GENERAL,

Dated: July 26, 2012

Phillip Rosario (CT 00999)
Matthew F. Fitzsimmons (CT 26981)
Jonathan J. Blake (CT 22321)
Office of the Attorney General
110 Sherman Street
Hartford CT 06105
Tel: (860) 808-5400
Fax: (860) 808-5593
Email: Phillip.Rosario@ct.gov

43

**Email: Matthew.Fitzsimmons@ct.gov**
**Email: Jonathan.Blake@ct.gov**

**Attorneys for Plaintiff**
**STATE OF CONNECTICUT**