UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and | |
| STATE OF CONNECTICUT, | Case No. 3:11-cv-1715 (JCH) |
| Plaintiffs, | The Honorable Janet C. Hall |
| v. | |
| LEANSPA, LLC, a Connecticut limited liability company, | December 6, 2012 |
| NUTRASLIM, LLC, a Connecticut limited liability company, | |
| NUTRASLIM U.K. LTD, also d/b/a LEANSPA U.K. LTD., an United Kingdom limited liability company, | |
| BORIS MIZHEN, individually and as an officer of LEANSPA, LLC, NUTRASLIM, LLC, and NUTRASLIM U.K. LTD, | |
| LEADCLICK MEDIA, INC., a California corporation, and LEADCLICK MEDIA, LLC, as a successor limited liability company, and | |
| RICHARD CHIANG, individually and as an officer of LEADCLICK MEDIA INC. | |
| Defendants, and | |
| ANGELINA STRANO, | |
| Relief Defendant. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT RICHARD CHIANG'S MOTION TO DISMISS
COUNTS FOUR, THIRTEEN AND FOURTEEN OF THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

I.     INTRODUCTION........................................................................................................ 1

II.    BACKGROUND......................................................................................................... 2

      A.    Initial Complaint and Preliminary Injunction Order............................................. 2

      B.    Plaintiffs' Amended Complaint and Related Proceedings.................................... 2

III.   ARGUMENT..............................................................................................................6

      A.    The Amended Complaint Sufficiently Alleges that Chiang is Liable for
            Violating the FTC Act and CUTPA  ...................................................................6

      B.    Plaintiffs' Claims Against LeadClick and Chiang Are Not Barred by the CDA...8

      C.    Plaintiffs Have Pled Sufficient Facts to State a Claim for Individual Liability
            Against Chiang Under the FTC Act and CUTPA...................................................9

      D.    Plaintiffs Claims for Monetary Relief are Proper ............................................... 15

IV.   CONCLUSION.......................................................................................................... 19

## TABLE OF AUTHORITIES

### Cases

Arista Records, LLC v. Doe 3, 604 F.3d 110 (2d Cir. 2010) ........................................................ 7

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ..................................................................................... 7

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) ............................................................ 6, 7

Boykin v. KeyCorp., 521 F.3d 202 (2d Cir. 2008) ..................................................................... 7

Caldor, Inc. v. Heslin, 215 Conn. 590 (1990) ............................................................................ 10

Doctor's Associates, Inc. v. QIP Holders, LLC, No. 3:06-cv-1710 (JCH),
     2007 WL 1186026 (D. Conn. Apr. 19, 2007) (Hall, J.) ..................................................... 9

Environmental Energy Services, Inc. v. Cylenchar, Ltd., No. 3:11-CV-0039 (JCH),
     2011 U.S. Dist. LEXIS 117457 (D. Conn. Oct. 11, 2011) (Hall, J.) .............................. 10

FTC v. Amy Travel Service, Inc., 875 F.2d 564 (7th Cir. 1989) ................................................. 10

FTC v. Bay Area Business Council, Inc., 423 F.3d 627 (7tth Cir. 2005) ............................. 13, 17

FTC v. Bronson Partners, LLC, 654 F.3d 359 (2d Cir. 2011) ................................................ 16, 17

FTC v. Bronson Partners, LLC, 564 F. Supp. 2d 119 (D. Conn. 2008) ..................................... 14

FTC v. Capital City Mortgage Corp., 321 F. Supp. 2d 16 (D.D.C. 2004) .................................. 18

FTC v. Commerce Planet, Inc., No. 8:09-cv-01324,
     2012 WL 2930418 (C.D. Cal. June 22, 2012) ........................................................... 13, 17

FTC v. Consumer Health Benefits Association, No. 10-CV-3551 (ILG)(RLM),
     2012 WL 1890242 (E.D.N.Y. May 23, 2012) .................................................................. 10

FTC v. Crescent Publishing Group, Inc., 129 F. Supp. 2d 311 (S.D.N.Y. 2001) ....................... 10

FTC v. Cyberspace.com, LLC, No. C00-1806L,
     2002 WL 320602899 (W.D. Wash. July 10, 2002) .......................................................... 14

FTC v. Direct Marketing Concepts, Inc., 624 F.3d 1 (1st Cir. 2010) ......................................... 16

iii

**Cases (continued)**

FTC v. Gem Merchandising Corp., 87 F.3d 466 (11th Cir. 1996) ................................................ 16

FTC v. H.N. Singer, Inc., 668 F.2d 1107 (9th Cir. 1982) ............................................................. 14

FTC v. Innovative Marketing, Inc., 654 F. Supp. 378 (D. Md. 2009) ...................................... 11

FTC v. Ivy Capital, Inc., No. 2:11-CV-283,
    2011 U.S. Dist. LEXIS 57035 (D. Nev. May 25, 2011) .................................................. 14

FTC v. Medical Billers Network, Inc., 543 F. Supp. 2d 283, 320 (S.D.N.Y. 2008) .................. 10

FTC v. Network Services Depot, Inc., 617 F.3d 1127 (9th Cir. 2010) ................................. 13, 17

FTC v. Neovi, Inc., 604 F.3d 1150 (9th Cir. 2010) ..................................................................... 15

FTC v. Seismic Entertainment Productions, Inc., 441 F. Supp. 2d 349 (D.N.H. 2006) ............. 17

FTC v. Washington Data Resources, 856 F. Supp. 2d 1247 (M.D. Fla. 2012) .................... 13, 17

FTC v. Wellness Support Network, Inc., No. C-10-04879,
    2011 WL 1303419 (N.D. Cal. 2011) .............................................................................. 13

Lujan v. Cabana Management, Inc., No. 10-CV-0755,
    2010 WL 5391462 (E.D.N.Y. Dec. 22, 2010) ................................................................ 15

Marinoff v. City College of New York, 63 Fed. Appx. 530 (2d Cir. 2003) ............................... 19

Normand Josef Enterprises, Inc. v. Connecticut National Bank, 230 Conn. 486 (1994) ........... 10

State v. Cardwell, 246 Conn. 721 (1998) ................................................................................... 18

Swift v. Zynga Game Network, LLC, No. C09-05443,
    2010 U.S. Dist. LEXIS 117355 (N.D. Cal. Nov. 3, 2010) ................................................ 8

United States v. Hylton, No. 3:11-CV-1543 (JCH),
    2012 U.S. Dist. LEXIS 84671 (D. Conn. June 19, 2012) (Hall, J.) ............................... 6, 7

**Statutes**

Communications Decency Act,
    47 U.S.C. § 230 ................................................................................................ 1, 6, 8, 9

Connecticut Unfair Trade Practices Act,
    Conn. Gen. Stat. §§ 42-110b(a), et seq........................................................ passim

Federal Trade Commission Act,
    15 U.S.C. § 45(a) ............................................................................................... passim

**Miscellaneous**

Fed. R. Civ. P. 8 .......................................................................................................... 1, 6

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 1, 6

R. Langer, J. Morgan & D. Belt, <u>12 Connecticut Practice Series:</u>
    <u>Connecticut Unfair Trade Practices, Business Torts and Antitrust</u> (2012-13) ............... 10

I.      **INTRODUCTION**

Plaintiffs, the Federal Trade Commission ("FTC") and the State of Connecticut ("State"),

oppose Defendant Richard Chiang's ("Chiang") motion to dismiss Counts Four, Thirteen, and

Fourteen of Plaintiffs' Amended Complaint pursuant to Rules 8 and 12(b)(6) of the Federal

Rules of Civil Procedure (Dkt. No. 179).  Chiang's motion is based on a mischaracterization of

what Plaintiffs allege and is procedurally premature and, thus, should be denied.

First, as explained more fully in Plaintiffs' Memorandum of Law in Opposition to

Defendants LeadClick Media, Inc.'s, and its successor, LeadClick Media, LLC's (collectively,

"LeadClick") Motion to Dismiss (Dkt. No. 174) and incorporated herein by reference, Plaintiffs

have pled sufficient facts to state a claim for LeadClick's liability and have shown that the

Communications Decency Act ("CDA"), 47 U.S.C. § 230, does not provide immunity to

LeadClick or to Chiang for their own alleged active participation in a nationwide deceptive

marketing scheme that took more than $25 million from consumers.  Second, the Amended

Complaint demonstrates that Plaintiffs have alleged sufficient facts to establish individual

liability against Chiang since he (1) participated directly in the acts or had the authority to

control them and (2) knew of the acts or practices.  Finally, Chiang's argument that the

Plaintiffs' claims for monetary relief should be dismissed is procedurally premature, as it

primarily is directed to the proof of the amount of his monetary liability under the FTC Act and

the Connecticut Unfair Trade Practices Act ("CUTPA"), and ignores well-settled law regarding

an individual officer's joint and several liability with corporate defendants and CUTPA's

provisions for civil penalties.  Therefore, for the reasons discussed more fully below, Chiang's

motion should be denied.

## II.   BACKGROUND

### A.   Initial Complaint and Preliminary Injunction Order

Plaintiffs commenced this action on November 7, 2011 against Boris Mizhen ("Mizhen") and companies he controls, LeanSpa, LLC, NutraSlim, LLC, and NutraSlim U.K., Ltd. (collectively, the "LeanSpa Defendants"), to stop the deceptive marketing of various purported weight loss products under brand names including LeanSpa™ and NutraSlim™ and to obtain redress for the consumers in this District and throughout the United States who were victimized by this scam. (Dkt. No. 1). Plaintiffs concurrently moved ex parte for a temporary restraining order ("TRO") against the LeanSpa Defendants. (Dkt. No. 3). On November 14, 2011, Judge Robert Chatigny granted in part Plaintiffs' TRO application, ordered that the LeanSpa Defendants' assets be frozen, and scheduled a preliminary injunction hearing before this Court on November 22, 2011. (Dkt. Nos. 23, 24). On November 22, 2011, Judge Vanessa L. Bryant entered a Stipulated Preliminary Injunction Order, freezing the assets of the LeanSpa Defendants to preserve the status quo pending trial. (Dkt. No. 36).

### B.   Plaintiffs' Amended Complaint and Related Proceedings

Plaintiffs learned that those responsible for this deceptive scheme extended beyond the LeanSpa Defendants. With the Court's leave, on July 26, 2012, Plaintiffs filed an Amended Complaint (the "Amended Complaint" or "Am. Compl.") naming the LeanSpa Defendants' primary lead generator and its principal as additional defendants.[1] (Dkt. No. 90).

---

[1]  The Amended Complaint also names Angelina Strano ("Strano"), wife of defendant Mizhen, as a relief defendant, alleging that she received ill-gotten proceeds from the LeanSpa Defendants with no legitimate claim to those funds. (Am. Compl. ¶¶ 16, 134-36).

2

Specifically, the Amended Complaint names LeadClick and Chiang, individually and as an officer of LeadClick Media, Inc., as defendants (LeadClick and Chiang are collectively referred to as the "LeadClick Defendants").  The Amended Complaint alleges violations of Section 5 of the FTC Act, 15 U.S.C. § 45(a), and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b(a), et seq. against the LeanSpa Defendants, LeadClick, and Chiang for engaging in a variety of deceptive marketing and business practices to generate sales. As set forth in the Amended Complaint, the LeanSpa Defendants, LeadClick, and Chiang engaged in a deceptive marketing scheme that disguised advertisements as independent news reports (the "fake news reports" or the "fake news sites") to lure consumers to pay online for trial samples of purported diet supplements sold by the LeanSpa Defendants.  (Am. Compl. ¶¶ 25-40). Consumers who paid for these trial samples were then enrolled into continuity plans with the LeanSpa Defendants they could not easily cancel and incurred substantial monthly charges.

As described in the Amended Complaint, the LeanSpa Defendants hired LeadClick to provide online Internet marketing campaigns and generate online consumer leads for the LeanSpa Defendants' diet supplement and weight loss products.  (Am. Compl. ¶ 25).  The LeanSpa Defendants paid LeadClick a prearranged fee, referred to as a "Cost Per Action," for each consumer purchase that it generated, and these payments totaled over $8 million from at least September 2010 through April 2011.  (Id. ¶¶ 26, 29).  The LeadClick Defendants also reviewed the LeanSpa Defendants' websites to help improve "conversions," or the number of consumers who ordered one of the LeanSpa Defendants' trial products.  (Id. ¶ 27).  As an officer of LeadClick Media, Inc., Chiang formulated, directed, controlled, had authority to control, or participated in the deceptive marketing campaign for the LeanSpa Defendants.  (Id. ¶ 15).

3

As part of the marketing campaigns for the LeanSpa Defendants, LeadClick, in turn, contracted with its own cadre of "affiliate marketers" to promote the LeanSpa Defendants' products and to generate consumer leads.  (Id. ¶ 25).  From at least September 2010 to at least April 2011, these affiliate marketers hired by the LeadClick Defendants to generate consumer leads for the LeanSpa Defendants used websites designed to look like news reports to lure consumers to the LeanSpa Defendants' websites.  (Id. ¶ 29).  The news reports used by the affiliate marketers and the LeadClick Defendants to promote the LeanSpa Defendants' products were fake.  (Id. ¶ 32).  Reporters or commentators pictured on the websites were fictional and never conducted the tests or experienced the results described in the reports.  (Id.).  The "responses" or "comments" following the reports were simply additional advertising content, not independent statements from ordinary consumers.  (Id.).  The sole purpose of these fake news websites was to promote the LeanSpa Defendants' products, alone or in combination with other products, and deceptively entice consumers to the LeanSpa Defendants' websites or "landing" pages.  (Id. ¶¶ 34, 36).

As displayed in exhibits to the Amended Complaint, the fake news sites promoted two products, typically an acai berry based diet supplement combined with a colon cleanse product, using a format in which a phony news reporter described a two-step process where taking the acai product was "Step 1," and then the colon cleanse or detox product was "Step 2."  The fake news sites contained hyperlinks for each product that transferred consumers to websites operated by the LeanSpa Companies and other merchants.  (See, e.g., Dkt. No. 90-3, Am. Compl., Ex. C at FTC-LS 295-300).

As alleged in the Amended Complaint, LeadClick and Chiang did not just recruit and pay

4

the affiliate marketers to generate leads for the LeanSpa Defendants, but they also monitored the affiliates' use of these fake news sites and coordinated with defendant Mizhen the use of these fake sites to generate leads for the LeanSpa Defendants.  (Am. Compl. ¶¶ 28, 38).  In particular, Chiang discussed with Mizhen which products should be paired with the LeanSpa Defendants' products on these fake sites.  (Id. ¶ 38).

In addition, the Amended Complaint alleges that LeadClick and Chiang assisted the LeanSpa Defendants to continue this deceptive scheme in the face of escalating disputed customer charges, or chargeback rates, monitored by credit card associations.  (See id. ¶ 40).  For example, Chiang discussed with Mizhen the LeanSpa Companies' monthly chargeback levels and ways to manipulate the chargeback level by increasing the volume of leads generated by LeadClick in order to increase the monthly total number of transactions and thereby reduce the monthly chargeback rate.  (Id. ¶¶ 28, 40).  Chiang also discussed with Mizhen the use of offshore payment processors after several U.S. banks terminated or threatened to terminate the LeanSpa Defendants' merchant processing account as a result of excessive chargebacks.  (Id. ¶ 40).

On September 11, 2012, Plaintiffs moved for a preliminary injunction order that, *inter alia*, sought to freeze Chiang's assets up to the amount for which he is jointly and severally liable with LeadClick.[2]  (Dkt. No. 119).  On September 28, 2012, the LeadClick Defendants filed

---

[2]   At this early stage of the proceedings against Chiang, Plaintiffs already have submitted numerous documents and other evidence to support their claims in the Amended Complaint against him. Specifically, in support of their Motion for a Preliminary Injunction as to Chiang and incorporated herein by reference, Plaintiffs submitted numerous documents and other evidence showing Chiang's knowing and central participation in the use of the fake news sites to generate leads for the LeanSpa Defendants, as well as his involvement in trying to circumvent VISA's merchant monitoring program by manipulating the LeanSpa Companies' chargeback rates.  (Dkt. No. 122 at pp. 14-18, Ex. 2-3, 17-26).  The evidence submitted indicates that Chiang (1) participated directly in the acts or had authority to control them and (2) knew of the acts or practices.

a motion to dismiss the Amended Complaint based on Section 230 of the CDA, 47 U.S.C. § 230. (Dkt. No. 155).  On November 15, 2012, Plaintiffs and Chiang filed a consent motion for entry of a Stipulated Preliminary Injunction Order that would, *inter alia*, (1) preliminarily restrain Chiang from misrepresenting any material fact, including, but not limited to, that: (A) objective news reporters have performed independent tests demonstrating the effectiveness of any product or service; and (B) consumers have endorsed any product or service; and (2) freezing $270,000 of Chiang's personal assets, pending this Court's approval.  (Dkt. No. 177).  Shortly thereafter, Chiang filed the instant motion to dismiss.  (Dkt. No. 179).  For the reasons stated below, Chiang's motion should be denied.

III.   **ARGUMENT**

   A.   **The Amended Complaint Sufficiently Alleges that Chiang is Liable for violating the FTC Act and CUTPA.**

The Plaintiffs' allegations in the Amended Complaint satisfy the requirements of the Federal Rules of Civil Procedure.  Rule 8 states that a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted is ordinarily governed by the pleading requirements of Rule 8.  See Fed. R. Civ. P. 12(b)(6); see generally United States v. Hylton, No. 3:11-CV-1543 (JCH), 2012 U.S. Dist. LEXIS 84671, at *3-5 (D. Conn. June 19, 2012) (Hall, J.) (denying defendant's motion to dismiss complaint and citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007) for the proposition that Rule 12(b)(6) is interpreted in accordance with Rule 8(a)(2) to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief'").  "A complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Hylton, 2012 U.S. Dist. LEXIS 84671, at *3-4 (internal citation and quotation omitted). A plaintiff satisfies the plausibility standard by pleading sufficient facts for the court to reasonably infer that a defendant is liable for the alleged misconduct. See generally Twombly, 550 U.S. at 570 ("[W]e do not require heightened fact pleading of specifics . . ."). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556).

The complaint must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," but Rule 8 "does not require 'detailed factual allegations.'" Ashcroft, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). The plausibility standard is a "flexible" standard that does not require an across-the-board, heightened fact pleading standard. Boykin v. KeyCorp, 521 F.3d 202, 212-13 (2d Cir. 2008); accord Arista Records, LLC v. Doe 3, 604 F.3d 110, 119-21 (2d Cir. 2010); Hylton, 2012 U.S. Dist. LEXIS 84671, at *4-5. Rather, the plausibility standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." Twombly, 550 U.S. at 556.

As discussed more fully below, the Amended Complaint sufficiently alleges that Chiang violated the FTC Act and CUTPA and raises the "reasonable expectation that discovery will reveal evidence of illegal [conduct]." Id.

**B.**     **Plaintiffs' Claims Against LeadClick and Chiang Are Not Barred by the CDA.**

Chiang's first argument in support of his motion to dismiss is that if the Court grants the LeadClick Defendants' motion to dismiss (Dkt. No. 155), then the Court should grant Chiang's instant motion.  (Dkt. No. 179).  Plaintiffs, however, have pled sufficient facts in the Amended Complaint to establish LeadClick's liability.  In fact, in their motion to dismiss, the LeadClick Defendants did not dispute the sufficiency of the allegations stating a claim for relief under the FTC Act and CUTPA.  Rather, they claim that they are entitled to immunity from liability for their role in using fake news reports to market the LeanSpa Defendants' products pursuant to Section 230 of the CDA, 47 U.S.C. § 230.  (LeadClick Defs.' Mot. to Dismiss at 2).  As explained more fully in Plaintiffs' Opposition to the LeadClick Defendants' Motion to Dismiss (Dkt. No. 174) and incorporated herein by reference, the LeadClick Defendants' motion to dismiss based on the CDA should be denied because the LeadClick Defendants' CDA immunity claim raises factual issues as to: (1) whether LeadClick is a "provider or user of an interactive computer service," as the term is defined by the CDA; and (2) whether LeadClick is "responsible, in whole or in part, for the creation or development" of the fake news sites.  47 U.S.C. § 230(c)(1), (f)(3).  Cf. Swift v. Zynga Game Network, LLC, No. C09-05443, 2010 U.S. Dist. LEXIS 117355, at *18 (N.D. Cal. Nov. 3, 2010) (denying motion to dismiss and noting whether CDA immunity exists for a defendant alleged to have served as an online intermediary or broker between an online game developer and third party advertisers is "a fact-based inquiry").  As also more fully explained in Plaintiffs' Opposition to the LeadClick Defendants' Motion to Dismiss, the CDA defense is not available to one who is responsible for the creation and development of content on a website, and since Plaintiffs have sufficiently alleged that the

8

LeadClick Defendants have engaged in such conduct, Chiang and the LeadClick Defendants'
motions to dismiss on the CDA should be denied.

Moreover, "invocation of Section 230(c) immunity constitutes an affirmative defense . . .
[and] is generally not fodder for a Rule 12(b)(6) motion." Doctor's Assocs., Inc. v. QIP Holders,
LLC, No. 3:06-cv-1710 (JCH), 2007 WL 1186026, at *2 (D. Conn. Apr. 19, 2007) (Hall, J.)
(quoting Novak v. Overture Servs., Inc., 309 F. Supp. 2d 446, 452 (E.D.N.Y. 2004)).  Instead,
"such a defense is generally addressed as a Rule 12(c) or Rule 56 motion." Doctor's Assocs.,
2007 WL 1186026, at *2 (quoting Novak, 309 F. Supp. 2d at 452).  Therefore, the Court should
deny both the LeadClick Defendants' motion to dismiss and Chiang's instant motion.  At a
minimum, Plaintiffs should be entitled to develop through discovery the facts in support of their
claims against LeadClick and Chiang, especially as it relates to the CDA.  See Doctor's Assocs.,
2007 WL 1186026, at *2 (denying defendants' motion to dismiss count of amended complaint
without prejudice to raise the CDA claim as a Rule 56 Motion following discovery).

**C.**    **Plaintiffs Have Pled Sufficient Facts to State a Claim for Individual Liability
Against Chiang Under the FTC Act and CUTPA.**

Chiang next argues that Plaintiffs failed to allege a factual basis for his personal liability.
This argument is without merit, as the Amended Complaint sets forth Chiang's direct
participation in the deceptive marketing scheme and shows how he was principally involved in
LeadClick's use of the fake news sites to generate leads for the LeanSpa Defendants.

The parties agree that under the FTC Act, an individual defendant is jointly and severally
liable for corporate acts or practices if "(1) he participated directly in the deceptive acts or had
the authority to control them and (2) he had knowledge of the misrepresentations, was recklessly
indifferent to the truth or falsity of the misrepresentations, or was aware of a high probability of

9

fraud along with intentional avoidance of the truth."  FTC v. Consumer Health Benefits Ass'n,

No. 10-CV-3551 (ILG)(RLM), 2012 WL 1890242, at *5 (E.D.N.Y. May 23, 2012) (quoting FTC

v. Stefanchik, 559 F.3d 924, 931 (9th Cir. 2009)); see also FTC v. Crescent Publ'g Grp., Inc.,

129 F. Supp. 2d 311, 324 (S.D.N.Y. 2001).  "Authority to control the company can be evidenced

by active involvement in business affairs and the making of corporate policy, including

assuming the duties of a corporate officer."  FTC v. Amy Travel Serv., Inc., 875 F.2d 564, 573

(7th Cir. 1989) (internal citation omitted), cited in FTC v. Med. Billers Network, Inc., 543 F.

Supp. 2d 283, 320 (S.D.N.Y. 2008).  The knowledge requirement is satisfied by "actual

knowledge of material representations, reckless indifference to the truth or falsity of such

misrepresentations, or an awareness of the high probability of fraud along with the intentional

avoidance of the truth."  Amy Travel, 875 F.2d at 574 (internal citation and quotation omitted),

cited in Med. Billers Network, Inc., 543 F. Supp. 2d at 320.  An individual's degree of

participation in a business's affairs is probative of such knowledge.  Amy Travel, 875 F.2d at

573-74, cited in Med. Billers Network, Inc., 543 F. Supp. 2d at 320.  As discussed supra, the

control and knowledge requirements do not need to be pled with particularity.  While Chiang

does not address the State's claims under CUTPA, "[i]t is well established in Connecticut that 'a

director or officer who commits [a] tort or who directs the tortious act done, or participates or

operates therein, is liable to third persons injured thereby, even though liability may also attach

to the corporation for the tort.'"[3]  Envtl. Energy Servs., Inc. v. Cylenchar, Ltd., No. 3:11-CV-

---

[3]  Although the same standard applies under CUTPA and the FTC Act with respect to Chiang's
individual liability, Chiang's global assertion that Connecticut courts are "bound by" interpretations of
the FTC Act and federal law in applying CUTPA is mistaken.  Connecticut courts have consistently held
that the FTC Act provides guidance, but not a limitation, to the interpretation of CUTPA.  See Caldor,
Inc. v. Heslin, 215 Conn. 590, 597-598 (1990); Normand Josef Enters., Inc. v. Conn. Nat. Bank, 230
Conn. 486, 510-511, n.23 (1994); see also R. Langer, J. Morgan & D. Belt, 12 Connecticut Practice

0039 (JCH), 2011 U.S. Dist. LEXIS 117457, at *17-18 (D. Conn. Oct. 11, 2011) (Hall, J.)

(quoting Sturm v. Harb Dev. LLC, 298 Conn. 124, 132-33 (2010) (citations omitted)).  This

applies to claims brought under CUTPA.  Id. at *18 (citing Cohen v. Roll-A-Cover, LLC, 131

Conn. App. 443, 468-69 (2011)).  The same allegations, therefore, that would give rise to

individual liability under the FTC Act would also make Chiang liable under CUTPA.

   Here, Plaintiffs have alleged facts establishing each of the elements for individual

liability.  The Amended Complaint specifically alleges LeadClick's and Chiang's roles in this

deceptive marketing scheme.[4]  As described in the Amended Complaint, the LeanSpa

Defendants hired LeadClick to provide online Internet marketing campaigns and generate

consumer leads for the LeanSpa Defendants' diet supplement and weight loss products.  (Am.

Compl. ¶ 25).  The LeanSpa Defendants paid LeadClick a prearranged fee for each consumer

purchase that it generated, and these payments totaled over $8 million from at least September

2010 through April 2011.  (Id. ¶¶ 26, 29).  The LeadClick Defendants reviewed the LeanSpa

Defendants' websites to help improve "conversions," or the number of consumers who ordered

one of the LeanSpa Defendants' trial products.  (Id. ¶ 27).

   As part of the marketing campaigns for the LeanSpa Defendants, LeadClick, in turn,

contracted with its own cadre of "affiliate marketers" to promote the LeanSpa Defendants'

products and to generate consumer leads.  (Id. ¶ 25).  From at least September 2010 to at least

April 2011, these affiliate marketers hired by the LeadClick Defendants to generate leads for the

---

Series: Connecticut Unfair Trade Practices, Business Torts and Antitrust (2012-13) § 2.6, p. 78.

[4]  When weighing the sufficiency of the complaint, the Court should look at the complaint as a whole to
give context to the claims specifically related to Chiang.  See, e.g., FTC v. Innovative Mktg., Inc., 654 F.
Supp. 2d 378, 388 n.3 (D. Md. 2009).

LeanSpa Defendants used websites designed to look like news reports to lure consumers to the LeanSpa Defendants' websites.  (Id. ¶ 29).  The news reports used by the affiliate marketers and the LeadClick Defendants to promote the LeanSpa Defendants' products were fake.  (Id. ¶ 32).  Reporters or commentators pictured on the websites were fictional and never conducted the tests or experienced the results described in the reports.  (Id.).  The "responses" or "comments" following the reports were simply additional advertising content, not independent statements from ordinary consumers.  (Id.).  The sole purpose of these fake news websites was to promote the LeanSpa Defendants' products, alone or in combination with other products, and deceptively entice consumers to the LeanSpa Defendants' websites or "landing" pages.  (Id. ¶¶ 34, 36).

The Amended Complaint also alleges specific facts regarding Chiang's personal involvement and participation in this scheme.  For example, the Amended Complaint alleges that as an officer of LeadClick, Chiang formulated, directed, controlled, had the authority to control, or participated in the acts and practices of LeadClick.  (Am. Compl. ¶ 15).  In addition, the Amended Complaint alleges that Chiang coordinated with Mizhen regarding LeadClick's lead generation activities and discussed which products to pair with the LeanSpa Defendants' products on the fake news sites.  (Id. ¶¶ 28, 38).  Moreover, the Amended Complaint also alleges that Chiang discussed with Mizhen the issue of LeanSpa's monthly sales and chargeback levels to prolong the scheme.  (Id. ¶ 28).  For example, Chiang discussed with Mizhen ways to manipulate the chargeback level by increasing the volume of leads generated by LeadClick in order to increase the monthly total number of transactions and thereby reduce the monthly chargeback rate.  (Id. ¶¶ 28, 40).  Chiang also discussed with Mizhen the use of offshore payment processors after several U.S. banks terminated or threatened to terminate the LeanSpa

Defendants' merchant processing account as a result of excessive chargebacks.  (Id. ¶ 40).  Thus, Chiang's reliance (at p. 8) on FTC v. Wellness Support Network, Inc., No. C-10-04879, 2011 WL 1303419 (N.D. Cal. 2011) is misguided, as Plaintiffs' Amended Complaint does not rely solely on Chiang's title as an officer but, rather, alleges specific facts relating to his direct involvement and active participation.  Therefore, the Amended Complaint more than sufficiently pleads control and knowledge on the part of Chiang.

The cases cited by Chiang in support of his arguments are not persuasive.  For example, in support of his "control" arguments, Chiang cites a 1937 Supreme Court case to argue that Plaintiffs have not alleged that he "owned LeadClick or operated it for his personal benefit." (Def. Chiang's Mem. of Law In Support of Mot. to Dismiss at 8).  As discussed supra, the standard to find control for individual liability is not limited only to instances of ownership or operation of a corporate defendant for personal benefit.  Rather, courts routinely have found non-owner individual defendants jointly and severally liable with corporate defendants for violations of the FTC Act.  See, e.g., FTC v. Network Servs. Depot, Inc., 617 F.3d 1127, 1131 (9th Cir. 2010) (affirming district court's order granting FTC's motion for summary judgment that, *inter alia*, imposed liability for equitable monetary relief upon the companies, their owner, and one of their senior officers); FTC v. Bay Area Bus. Council, Inc., 423 F.3d 627, 637-38 (7th Cir. 2005) (affirming district court's order granting FTC's motion for summary judgment and holding non-owner defendant jointly and severally liable with corporate defendants for $12.5 million in consumer redress); FTC v. Washington Data Res., 856 F. Supp. 2d 1247, 1282 (M.D. Fla. 2012) (finding non-owner liable for the net revenue received by the corporate defendant); FTC v. Commerce Planet, Inc., No. 8:09-cv-01324, 2012 WL 2930418, at *32-35 (C.D. Cal. June 22,

13

2012) (finding non-owner executive individually liable for deceptive and unfair marketing practices in violation of Section 5(a) of the FTC Act and concluding that monetary equitable relief against individual defendant in the amount of $18.5 million, which was a reasonably conservative estimate of consumer injury, was proper).

Chiang also cites some FTC cases to argue that individual liability was found only in cases of "direct and substantial" employee involvement. (Def. Chiang's Mem. of Law In Support of Mot. to Dismiss at 8-10). Chiang asserts that none of the allegations in the Amended Complaint suggest his direct or substantial involvement and that Plaintiffs have not provided specifics regarding his involvement. (Id.). First, none of the cases cited by Chiang addressed motions to dismiss. Rather, all of the decisions addressed more advanced procedural stages of litigation with more developed records. FTC v. Cyberspace.com, LLC, No. C00-1806L, 2002 WL 320602899 (W.D. Wash. July 10, 2002) (granting FTC's motion as to liability but requiring additional evidence relating to consumer redress) and FTC v. Bronson Partners, LLC, 564 F. Supp. 2d 119 (D. Conn. 2008) (granting FTC's motion for summary judgment) were both decisions at the summary judgment stage of litigation where ample evidence was available. FTC v. H.N. Singer, Inc., 668 F.2d 1107 (9th Cir. 1982) involved the appeal of a preliminary injunction. Second, Chiang's argument essentially boils down to a challenge about the sufficiency of the *evidence* against him. As one court recently noted, "arguments as to the sufficiency of the evidence on this point [relating to the issue of whether an individual defendant is liable for a corporation's violations of the FTC Act] are inappropriate" at the motion to dismiss stage. FTC v. Ivy Capital, Inc., No. 2:11-cv-283, 2011 U.S. Dist. LEXIS 57035, at *17 (D. Nev. May 25, 2011).

14

Finally, regarding the "knowledge" requirement, Chiang focuses on "reckless indifference" and cites facts from <u>FTC v. Neovi, Inc.</u> to support his claim that he did not have knowledge.  Similar to the cases Chiang uses to support his "control" arguments, the <u>Neovi</u> decision addressed a later stage of the litigation (summary judgment) with a more developed factual record.  <u>FTC v. Neovi, Inc.</u>, 604 F.3d 1150, 1153 (9th Cir. 2010) (affirming district court's order entering summary judgment in favor of FTC).  At this stage of the proceeding, an exhaustive recitation of the facts against Chiang is not necessary.  "What is required is that the Complaint 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" <u>Lujan v. Cabana Mgmt., Inc.</u>, No. 10-cv-0755, 2010 WL 5391462, at *4 (E.D.N.Y. Dec. 22, 2010).  Here, Plaintiffs' Amended Complaint more than sufficiently pleads control and knowledge on the part of Chiang.

### D.   Plaintiffs' Claims for Monetary Relief Are Proper.

Finally, Chiang argues that the claims for monetary relief should be dismissed because Plaintiffs have not alleged that he was unjustly enriched.  Specifically, he argues that the Amended Complaint should be dismissed because Plaintiffs have not alleged that he *personally* benefitted from his role in this scheme.  Chiang's argument, however, conflates two issues, that is: (1) when can an individual be liable for equitable monetary relief, and (2) what is the proper measure of monetary relief.

As a threshold matter, there is no dispute between the parties that Plaintiffs can recover equitable monetary relief from Chiang if they prove that (1) he participated directly in the acts or had authority to control them and (2) he knew of the acts or practices.  As discussed more fully above, the Amended Complaint alleges specific facts regarding Chiang's personal involvement

and participation in this scheme, establishing the basis for which he can be liable for equitable monetary relief under the FTC Act and CUTPA.  Thus, Chiang's argument that Plaintiffs' claims for equitable monetary relief should be dismissed because he was not *personally* unjustly enriched is wholly without merit.

Next, it is well-settled that monetary relief is a natural extension of the remedial powers authorized by 15 U.S.C. § 53(b).  See generally FTC v. Bronson Partners, LLC, 654 F.3d 359, 365 (2d Cir. 2011) ("Section 13(b) permits a court to order ancillary equitable relief, including monetary relief").  A proper measure of monetary relief under § 13(b) includes disgorgement of revenues.  See, e.g., Id. at 372-73 (recognizing that "disgorgement is a well-established remedy in the Second Circuit" and that the proper measure of disgorgement is the gross receipts or revenues that defendants received from their unlawful activity); FTC v. Direct Mktg. Concepts, Inc., 624 F.3d 1, 32 (1st Cir. 2010) (affirming district court's determination of relief and finding that disgorgement of gross revenues (as opposed to net profits) was proper); FTC v. Gem Merch. Corp., 87 F.3d 466, 470 (11th Cir. 1996) ("[w]e conclude that section 13(b) permits a district court to order a defendant to disgorge illegally obtained funds").  Disgorgement is "a method of forcing the defendant to give up the amount by which he was unjustly enriched."  Bronson Partners, 654 F.3d at 372 (quoting SEC v. Commonwealth Chem. Secs., Inc., 574 F.2d 90, 102 (2d Cir. 1978)).  Here, Plaintiffs adequately allege a claim for equitable monetary relief (in the form of unjust enrichment) in the Amended Complaint as to the defendants.[5]  (See Am. Compl. ¶ 137).

---

[5]  Additionally, CUTPA provides for civil penalties under General Statutes § 42-110o, and General Statutes § 42-110m provides for the payment of restitution and "such other relief as may be granted in equity."

Moreover, Chiang's argument that any recovery from him should somehow be limited ignores the well-established law of joint and several liability for individual officer defendants and corporate defendants.  Chiang's reliance on a Supreme Court case interpreting the private enforcement provisions of the Employee Retirement Income Security Act ("ERISA") – Great West Life Ins. Co. v. Knudson – is inapposite.  For example, numerous post-2002 decisions have held non-owner individual officers jointly and severally liable with the corporate defendants for violations of the FTC Act.  See, e.g., Network Servs. Depot, 617 F.3d at 1131 (affirming district court's order granting FTC's motion for summary judgment that, *inter alia*, imposed liability for equitable monetary relief upon the companies, their owner, and one of their senior officers); Bay Area Bus. Council, 423 F.3d at 637-38 (affirming district court's order granting FTC's motion for summary judgment and holding non-owner individual defendant jointly and severally liable with the corporate defendants for $12.5 million in consumer redress); Commerce Planet, Inc., 2012 WL 2930418, at *32-35 (finding non-owner executive individually liable for deceptive and unfair marketing in violation of Section 5(a) of the FTC Act and concluding that monetary equitable relief against that individual defendant in the amount of $18.2 million, which was a reasonably conservative estimate of consumer injury, was proper); Washington Data Res., 856 F. Supp. 2d at 1282 (finding non-owner liable for the net revenue received by the corporate defendant); see generally FTC v. Seismic Entm't Prods., Inc., 441 F. Supp. 2d 349, 354 (D.N.H. 2006) (stating that "[j]oint and several liability means that each defendant is liable for the full amount of the judgment separately" and that "[i]ndividual and corporate defendants may be held jointly and severally liable for violations of the FTC Act.").

Here, the Amended Complaint alleges that LeadClick was unjustly enriched for receiving

over $8 million from the LeanSpa Defendants for generating the fake news sites.  Thus, under well-settled law, Chiang is jointly and severally liable with LeadClick for their violations of the FTC Act and CUTPA.  Furthermore, Plaintiffs need not prove specific amounts received by Chiang at the motion to dismiss stage.  See generally Bronson Partners, 654 F.3d at 373 (stating that "disgorgement does not require the district court to apply equitable tracing rules to identify specific funds in the defendant's possession that are subject to return"); FTC v. Capital City Mortgage Corp., 321 F. Supp. 2d 16, 20 (D.D.C. 2004) (denying defendants' motion to dismiss FTC's constructive trusts claims and deciding that issues relating to specific showing of ill-gotten gains by relief defendants are "issues of proof and fact that do not weigh in a court's decision regarding a motion to dismiss").

Chiang's argument also ignores the fact that the Amended Complaint alleges that LeadClick and Chiang are liable for civil penalties of up to $5,000 per willful violation of CUTPA.  (See Am. Compl. ¶ 124; Prayer for Relief ¶ C).  Connecticut General Statutes § 42-110o(b) authorizes the Attorney General to recover, on behalf of the State, civil penalties for each willful violation of CUTPA.  Civil penalties are therefore a statutory remedy available to the State for violations of CUTPA pursuant to General Statutes § 42-110o and are not an "equitable remedy" pursuant to § 42-110m, as Chiang erroneously asserts.[6]  (Def. Chiang's

---

[6]  The Supreme Court of Connecticut has held that whether any consumers were harmed by a CUTPA violation is not controlling of whether or not a civil penalty can be granted, and therefore Chiang's argument that the State must plead unjust enrichment in order to establish liability for civil penalties – or for other monetary relief as described above – is simply incorrect.  See State v. Cardwell, 246 Conn. 721, 745 (1998) ("Nowhere does [Conn. Gen. Stat. § 42-110o] require the court to consider, in determining whether to assess a penalty, whether . . . anyone was actually harmed by the unfair or deceptive trade practice.").  Here, the State alleges that LeadClick and Chiang are liable for civil penalties pursuant to General Statutes § 42-110o.  There can be no dispute that such penalties are a statutory remedy available to the State under CUTPA and explicitly pled in the Amended Complaint.

Mem. of Law In Support of Mot. to Dismiss at 13).

Finally, Chiang's argument relating to monetary relief ultimately is premature, as arguing the amount of potential liability is not proper for a motion to dismiss. During this threshold review, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Marinoff v. City College of N.Y., 63 Fed. Appx. 530, 531 (2d Cir. 2003) (vacating and remanding district court's order granting defendant's motion to dismiss) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Therefore, Plaintiffs respectfully request that the Court deny Chiang's motion to dismiss so that they can conduct discovery on the monetary relief issue.

## IV.     **CONCLUSION**

For the reasons stated above, the FTC and the State of Connecticut respectfully request that the Court deny Chiang's motion to dismiss Counts Four, Thirteen, and Fourteen of the Amended Complaint.

Respectfully submitted,

WILLARD K. TOM
General Counsel

WILLIAM H. EFRON
Regional Director
Northeast Region

Dated: December 6, 2012           */s/ Darren H. Lubetzky*
Darren H. Lubetzky (phv04227)
David W. Dulabon (phv05052)
Savvas S. Diacosavvas (phv05494)
Federal Trade Commission
Northeast Region
One Bowling Green, Suite 318
New York, NY 10004
Tel: (212) 607-2898

19

Fax: (212) 607-2822
Email: dlubetzky@ftc.gov
Email: ddulabon@ftc.gov
Email: sdiacosavvas@ftc.gov

John Hughes (CT 05289)
Assistant United States Attorney
Chief of Civil Division
157 Church Street
New Haven, CT 06510
Tel: (203) 821-3700
Fax: (203) 773-5373
Email: john.hughes@usdoj.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

GEORGE JEPSEN,
ATTORNEY GENERAL,

Dated: December 6, 2012             _/s/ Jonathan J. Blake_____
                                    Phillip Rosario (CT 00999)
                                    Matthew F. Fitzsimmons (CT 26981)
                                    Jonathan J. Blake (CT 22321)
                                    Office of the Attorney General
                                    110 Sherman Street
                                    Hartford CT 06105
                                    Tel: (860) 808-5400
                                    Fax: (860) 808-5593
                                    Email: Phillip.Rosario@ct.gov
                                    Email: Matthew.Fitzsimmons@ct.gov
                                    Email: Jonathan.Blake@ct.gov

                                    Attorneys for Plaintiff
                                    STATE OF CONNECTICUT

## CERTIFICATE OF SERVICE

This is to certify that on the 6th day of December 2012, I electronically filed the foregoing Plaintiffs' Opposition to Defendant Richard Chiang's Motion to Dismiss Counts Four, Thirteen and Fourteen of the Amended Complaint with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

_/Darren H. Lubetzky_
David W. Dulabon (phv05052)
Federal Trade Commission
Northeast Region
One Bowling Green, Suite 318
New York, NY 10004
Phone: (212) 607-2898
Fax: (212) 607-2822
Email: ddulabon@ftc.gov