UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and<br><br>STATE OF CONNECTICUT,<br><br>    Plaintiffs,<br><br>v.<br><br>LEANSPA, LLC, a Connecticut limited liability company,<br><br>NUTRASLIM, LLC, a Connecticut limited liability company,<br><br>NUTRASLIM U.K. LTD, also d/b/a LEANSPA U.K. LTD., an United Kingdom limited liability company,<br><br>BORIS MIZHEN, individually and as an officer of LEANSPA, LLC, NUTRASLIM, LLC, and NUTRASLIM U.K. LTD,<br><br>LEADCLICK MEDIA, INC., a California corporation, and LEADCLICK MEDIA, LLC, as a successor limited liability company, and<br><br>RICHARD CHIANG, individually and as an officer of LEADCLICK MEDIA INC.<br><br>    Defendants, and<br><br>ANGELINA STRANO,<br><br>    Relief Defendant. | Case No. 3:11-cv-1715 (JCH)<br><br>The Honorable Janet C. Hall<br><br>December 27, 2012 |

**PLAINTIFFS' MEMORANDUM OF LAW IN
OPPOSITION TO MOTION OF LEADCLICK DEFENDANTS
TO STAY DISCOVERY AND FOR A PROTECTIVE ORDER**

## I.   INTRODUCTION

Plaintiffs, the Federal Trade Commission ("FTC") and the State of Connecticut ("State"), oppose Defendants LeadClick Media, Inc's, and its successor LeadClick Media, LLC's (collectively, "LeadClick") motion to stay discovery and for a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure (Dkt. No. 184). LeadClick's motion should be denied because it has failed to establish good cause for issuance of a stay of discovery and for a protective order.

First, as explained more fully in Plaintiffs' Memorandum of Law in Opposition to LeadClick's Motion to Dismiss (Dkt. No. 174) and incorporated herein by reference, LeadClick's Motion to Dismiss Plaintiffs' Amended Complaint based on the Communications Decency Act ("CDA"), 47 U.S.C. § 230, should be denied. The CDA does not provide immunity to LeadClick for its own alleged active participation in a nationwide deceptive marketing scheme. Moreover, LeadClick's pending motion to dismiss raises issues of fact that serve as the basis for further discovery, not as the basis for a stay in this matter.

Second, Plaintiffs' discovery requests seek information relating to the fake news sites used by LeadClick and its affiliates to promote and generate leads for the LeanSpa Defendants. These deceptive marketing practices are the crux of some of Plaintiffs' alleged statutory violations against both LeadClick and the LeanSpa Defendants. Thus, the discovery sought by Plaintiffs bears not only on LeadClick's CDA immunity claim, but is also relevant to Plaintiffs' claims against the LeanSpa Defendants. LeadClick's request for a stay only serves to delay the production of relevant information in this lawsuit and may impair the ability of Plaintiffs to locate third-party witnesses and for all parties to complete discovery by the scheduled close of discovery on March 12, 2013.

Accordingly, there is no good cause for delaying LeadClick's response to Plaintiffs' discovery requests, and LeadClick's motion for a stay should be denied.

## II.   BACKGROUND

### A.   Initial Complaint and Preliminary Injunction Order

Plaintiffs commenced this action on November 7, 2011 against Boris Mizhen ("Mizhen") and companies he controls, LeanSpa, LLC, NutraSlim, LLC, and NutraSlim U.K., Ltd. (collectively, the "LeanSpa Defendants"), to stop the deceptive marketing of various purported weight loss products under brand names including LeanSpa™ and NutraSlim™ and to obtain redress for the consumers in this District and throughout the United States who were victimized by this scam. (Dkt. No. 1). Plaintiffs concurrently moved ex parte for a temporary restraining order ("TRO") against the LeanSpa Defendants. (Dkt. No. 3). On November 14, 2011, Judge Robert Chatigny granted in part Plaintiffs' TRO application, ordered that the LeanSpa Defendants' assets be frozen, and scheduled a preliminary injunction hearing before this Court on November 22, 2011. (Dkt. Nos. 23, 24). On November 22, 2011, Judge Vanessa L. Bryant entered a Stipulated Preliminary Injunction Order, freezing the assets of the LeanSpa Defendants to preserve the status quo pending trial. (Dkt. No. 36).

### B.   Plaintiffs' Amended Complaint and Related Proceedings

Plaintiffs learned that those responsible for this deceptive scheme extended beyond the LeanSpa Defendants. With the Court's leave, on July 26, 2012, Plaintiffs filed an Amended Complaint (the "Amended Complaint" or "Am. Compl.") naming the LeanSpa Defendants'

primary lead generator, LeadClick, and its principal, Richard Chiang (Chiang"), as additional defendants.[1] (Dkt. No. 90).

Specifically, the Amended Complaint alleges violations of Section 5 of the FTC Act, 15 U.S.C § 45(a), and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b(a), et seq. against the LeanSpa Defendants, LeadClick, and Chiang for engaging in a variety of deceptive marketing and business practices to generate sales. As set forth in the Amended Complaint, the LeanSpa Defendants, LeadClick, and Chiang engaged in a deceptive marketing scheme that disguised advertisements as independent news reports (the "fake news reports" or the "fake news sites") to lure consumers to pay online for trial samples of purported diet supplements sold by the LeanSpa Defendants. (Am. Compl. ¶¶ 25-40). Consumers who paid for these trial samples were then enrolled into continuity plans with the LeanSpa Defendants that they could not easily cancel and incurred substantial monthly charges.

As described in the Amended Complaint, the LeanSpa Defendants hired LeadClick to provide online Internet marketing campaigns and generate online consumer leads for the LeanSpa Defendants' diet supplement and weight loss products. (Am. Compl. ¶ 25). As part of the marketing campaigns for the LeanSpa Defendants, LeadClick, in turn, contracted with its own cadre of "affiliate marketers" to promote the LeanSpa Defendants' products and to generate consumer leads. (Id.). From at least September 2010 to at least April 2011, these affiliate marketers hired by LeadClick to generate consumer leads for the LeanSpa Defendants used

---

[1] The Amended Complaint also names Angelina Strano ("Strano"), wife of defendant Mizhen, as a relief defendant, alleging that she received ill-gotten proceeds from the LeanSpa Defendants with no legitimate claim to those funds. (Am. Compl. ¶¶ 16, 134-36).

3

websites designed to look like news reports to lure consumers to the LeanSpa Defendants' websites. (Id. ¶ 29). The news reports used by the affiliate marketers and LeadClick to promote the LeanSpa Defendants' products were fake. (Id. ¶ 32). Reporters or commentators pictured on the websites were fictional and never conducted the tests or experienced the results in the reports. (Id.). The "responses" or "comments" following the reports were simply additional advertising content, not independent statements from ordinary consumers. (Id.). The sole purpose of these fake news websites was to promote the LeanSpa Defendants' products, alone or in combination with other products, and deceptively entice consumers to the LeanSpa Defendants' websites or "landing" pages. (Id. ¶¶ 34, 36).

On September 11, 2012, Plaintiffs moved for a preliminary injunction order that, *inter alia*, sought to freeze Chiang's assets up to the amount for which he is jointly and severally liable with LeadClick. (Dkt. No. 119). On September 28, 2012, LeadClick filed a motion to dismiss the Amended Complaint based on Section 230 of the CDA, 47 U.S.C. § 230. (Dkt. No. 155). On November 15, 2012, Plaintiffs and Chiang filed a consent motion for entry of a Stipulated Preliminary Injunction Order, pending the Court's approval. (Dkt. No. 177). Shortly thereafter, Chiang also filed a motion to dismiss Plaintiffs' Amended Complaint. (Dkt. No. 179).

### C. <u>Plaintiffs' Discovery Requests Directed at LeadClick</u>

On November 15, 2012, Plaintiffs served document requests and interrogatories on LeadClick. (A copy of the discovery requests is attached at Exhibit A to Dkt. No. 185). Plaintiffs' document requests contained twenty-two (22) requests seeking information relating to: (1) contracts and communications that LeadClick had with the LeanSpa Defendants (Request

4

Nos. 1, 4, 14, and 21); (2) contracts and communications LeadClick had with the affiliates it hired to promote and generate leads for the LeanSpa Defendants (Request Nos. 2, 3, 5, and 15); (3) other communications LeadClick had relating to the LeanSpa Defendants, the advertisements used to generate leads for LeanSpa Defendants, and the fake news sites at issue in this lawsuit (Request Nos. 6, 7, 8, 9 and 17 through 20); (4) copies of the fakes news sites and other advertisements used by LeadClick to generate leads for the LeanSpa Defendants and materials showing the number of leads and funds generated from these advertisements (Request Nos. 11 through 13 and 22); and (5) communications relating to LeadClick's decision to close down its operations (Request No. 10).

Plaintiffs' interrogatories consisted of six (6) questions seeking the identification of: (1) LeadClick employees and the affiliates hired to generate leads for the LeanSpa Defendants (Nos. 1 and 2); (2) the number of leads and funds generated from the fakes news sites used for the LeanSpa Defendants (Nos. 2 and 3); (3) documents relating to LeadClick's review and monitoring of the advertisements used for the LeanSpa Defendants (No. 5); and (4) the amount of funds LeadClick received from the LeanSpa Defendants and certain bank accounts where those funds were deposited and transferred (Nos. 4 and 6).

On December 6, 2012, LeadClick filed the instant motion to stay discovery and for a protective order. (Dkt. No. 184).

## III.   LEADCLICK FAILS TO ESTABLISH THAT A STAY OF DISCOVERY IS APPROPRIATE

Parties may obtain discovery regarding any non-privileged matter that is relevant to the subject matter involved in the pending litigation. Fed. R. Civ. P. 26(b)(1). The information

5

sought need not be admissible at trial as long as the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Id. "Relevance" under Rule 26(b)(1) has been construed broadly to include "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Chamberlain v. Farmington Sav. Bank, 247 F.R.D. 288, 290 (D. Conn. 2007) (denying defendant's motion for a protective order) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).

Federal Rule of Civil Procedure 26(c) governs the issuance of a protective order to stay discovery. "The court may, for *good cause*, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery. . ." Fed. R. Civ. P. 26(c) (emphasis added). "The party seeking a stay of discovery bears the burden of showing good cause." Morien v. Munich Reinsurance Am., Inc., 270 F.R.D. 65, 66 (D. Conn. 2010) (denying defendant's motion for a protective order). However, "the pendency of a dispositive motion is not, in itself, an automatic ground for a stay." Id. at 67; see also Moss v. Hollis, No. B-90-177, 1990 U.S. Dist. LEXIS 13647, at *2 (D. Conn. June 27, 1990) (denying defendants' motion for protective order and stating that "[h]ad the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, they would contain such a provision").

Courts in Connecticut typically analyze three factors to decide whether a stay of discovery is appropriate: "1. [w]hether the defendant has made a strong showing that the plaintiff's claim is unmeritorious; 2. [t]he breadth of discovery and the burden of responding to it; and 3. [t]he risk of unfair prejudice to the party opposing the stay." Morien, 270 F.R.D. at 67; see also Fed. Hous. Fin. Agency v. The Royal Bank of Scotland Group PLC, No. 3:11-cv-01383,

6

2012 U.S. Dist. LEXIS 116292, at *14-15 (D. Conn. Aug. 17, 2012) (concluding that the defendants had not met their burden with respect to a stay of discovery and declining to order a stay under Fed. R. Civ. P. 26(c)); Lithgow v. Edelmann, 247 F.R.D. 61, 62 (D. Conn. Dec. 27, 2007) (denying defendant's motion for a protective order and to stay all discovery); Waterbury Hosp. v. U.S. Foodservice, Inc., No. 3:06-CV-1657, 2007 U.S. Dist. LEXIS 7320, at *4 (D. Conn. Feb. 1, 2007) (denying defendant's motion for a protective order and to stay discovery). As discussed more fully below, LeadClick fails to establish any of these factors to support a stay of discovery.

### A. LeadClick has not shown that Plaintiffs' claims are unmeritorious.

Rather than directly and expressly address the three factors that Connecticut district courts have adopted, LeadClick focuses its argument for staying discovery on a preliminary resolution of their immunity argument. (LeadClick Defendants' Mem. of Law in Support of Motion to Stay Discovery (Dkt. No. 185) ("LeadClick's Br.") at 3). In both its Motion to Dismiss (Dkt. No. 155) and its Memorandum in Support of their Motion to Stay Discovery (Dkt. No. 185), LeadClick claims that it is entitled to immunity from liability for its role in using fake news reports to market the LeanSpa Defendants' products pursuant to Section 230 of the CDA, 47 U.S.C. § 230. (LeadClick Defs.' Mot. to Dismiss at 2; LeadClick's Br. at 3).

When addressing the first factor in determining whether a motion to stay discovery is appropriate, courts will consider the "strength of the dispositive motion" that is the basis of the discovery stay application. See Lithgow, 247 F.R.D. at 62; Waterbury Hosp., 2007 U.S. Dist. LEXIS 7320, at *4. As discussed more fully in Plaintiffs' Opposition to the LeadClick Defendants' Motion to Dismiss (Dkt. No. 174) and incorporated herein by reference, LeadClick

7

has not made a strong showing that Plaintiffs' claims are unmeritorious. LeadClick's Motion to Dismiss should be denied because its CDA immunity claim raises factual issues as to: (1) whether LeadClick is a "provider or user of an interactive computer service," as the term is defined by the CDA; and (2) whether LeadClick is "responsible, in whole or in part, for the creation or development" of the fake news sites. 47 U.S.C. § 230(c)(1), (f)(3). Cf. Swift v. Zynga Game Network, LLC, No. C09-05443, 2010 U.S. Dist. LEXIS 117355, at *18 (N.D. Cal. Nov. 3, 2010) (denying motion to dismiss and noting whether CDA immunity exists for a defendant alleged to have served as an online intermediary or broker between an online game developer and third party advertisers is "a fact-based inquiry"). LeadClick's motion to dismiss is procedurally premature, as resolution of the CDA immunity issue is "generally not fodder for a Rule 12(b)(6) motion." Doctor's Assocs., Inc. v. QIP Holders, LLC, No. 3:06-cv-1710 (JCH), 2007 WL 1186026, at *2 (D. Conn. Apr. 19, 2007) (Hall, J.) (quoting Novak v. Overture Servs., Inc., 309 F. Supp. 2d 446, 452 (E.D.N.Y. 2004)). Rather, "invocation of Section 230(c) immunity constitutes an affirmative defense" that is "generally addressed as a Rule 12(c) or Rule 56 motion." Doctor's Assocs., 2007 WL 1186026, at *2 (denying defendants' motion to dismiss count of amended complaint without prejudice to raise the CDA claim as a Rule 56 Motion following discovery) (quoting Novak, 309 F. Supp. 2d at 452).

The question of whether LeadClick qualifies for CDA immunity is a fact-intensive inquiry that should be developed through discovery. Doctor's Assocs., 2007 WL 1186026, at *2; see also Curran v. Amazon.com, Inc., No. 2:07-0354, 2008 U.S. Dist. LEXIS 12479, at *41 (S.D.W.Va. Feb. 19, 2008) ("CDA immunity is a question awaiting discovery and exploration"); Perfect 10, Inc. v. Google, Inc., No. CV 04-9484, 2008 U.S. Dist. LEXIS 79200, at *24 (C.D.

8

Cal. July 16, 2008) (inquiry into whether CDA immunity applies is "fact-intensive"). LeadClick itself generally recognizes this. (See LeadClick's Br. at 6) (acknowledging that "discovery that is narrowly tailored to address whether the immunity claim is appropriate" "might be permissible in the context of an immunity claim").

Here, Plaintiffs' discovery requests seek information relating to LeadClick's role in creating, developing, and encouraging the use of fake news sites to generate leads for the LeanSpa Defendants and that bear on LeadClick's CDA defense, including, but not limited to, the following:

> Document Request 13 - All Advertisements that You and/or any Affiliate Advertiser displayed, distributed, disseminated, or caused to be disseminated relating to all Offers from or relating to the LeanSpa Defendants, and all communications relating to such Advertisements.
>
> Document Request 14 - All documents from the LeanSpa Defendants relating to any Offer from or relating to the LeanSpa Defendants, including sample Advertisements, sample creatives, sample landing pages, disclaimers, and substantiation for any advertising claims.
>
> Document Request 15 - All documents relating to any Offer from the LeanSpa Defendants that You provided or made available to Affiliate Advertisers, including sample Advertisements, sample creatives, sample landing pages, disclaimers, and substantiation for any advertising claims.
>
> Document Request 17 - All documents related to any audit or review of Advertisements related to any Offer from the LeanSpa Defendants, including: the Advertisements reviewed; Your comments or findings as a result of such audit or review; changes made by You or the LeanSpa Defendants as a result of such audit or review; and any actions You took to terminate or suspend any Affiliate Advertiser.

(LeadClick's Br., Ex. A). Granting a stay of discovery at this stage not only would thwart Plaintiffs' ability to explore LeadClick's affirmative defense of CDA immunity, but also inhibit Plaintiffs' ability to obtain information relevant to their claims against the LeanSpa Defendants.

9

### B. Plaintiffs' discovery requests are narrowly tailored and limited in scope, resulting in minimal burden on LeadClick to respond.

Although LeadClick does not directly address the three factors set forth by Connecticut district courts as discussed supra, the next aspect of LeadClick's stay argument most closely resembles the second factor – the breadth of discovery and the burden of responding to it. In their instant Motion to Stay Discovery, LeadClick analogizes the qualified immunity of government officials in their discretionary capacity to the immunity afforded by Section 230 of the CDA to argue that the threshold immunity question should be resolved before any discovery is allowed to shield it from "the costs of trial or . . . the burdens of broad-reaching discovery." (LeadClick's Br. at 3-4 (discussing two Supreme Court cases that explained qualified immunity and discovery protections afforded to government officials) (citations omitted)). LeadClick also cites the magistrate judge's opinion in Ben Ezra, Weinstein and Co. v. Am. Online, Inc., No. CIV 96-485, 1998 WL 896459 (D.N.M. Jul. 16, 1998) as support for its argument that the policy considerations behind discovery protections in qualified immunity cases also apply to Section 230 immunity under the CDA.[2] (LeadClick Defendants' Br. at 5). However, the magistrate judge in Ben Ezra, noted "[t]hat is not to say that [defendant] should be immune from all discovery." Ben Ezra, Weinstein and Co., 1998 WL 896459, at *2. In fact, the magistrate judge allowed the plaintiff in that case to conduct four depositions and serve twenty-five

---

[2] LeadClick cites two more cases for its proposition that courts have ordered a stay of discovery pending resolution of a motion to dismiss based on CDA immunity. (LeadClick's Br. at 5-6). In both cases, the courts briefly mentioned the discovery stays in their discussions of the procedural history without any meaningful analysis about the discovery stay decisions. Universal Commc'ns Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 416 (1st Cir. 2007); Doe v. Bates. No. 5:05-cv-91, 2006 WL 3813758, at *10 (E.D. Tex. Dec. 27, 2006). Neither case is from this jurisdiction and neither case is helpful to this Court's analysis on whether to grant a discovery stay given the standard articulated in numerous Connecticut district court cases (as discussed supra).

10

interrogatories. Ben Ezra, Weinstein and Co., Inc. v. Am. Online, Inc., 206 F.3d 980, 984 (10th Cir. 2000) (discussing the procedural history of the case).

Here, Plaintiffs have served limited discovery requests on LeadClick – specifically, six interrogatories and twenty-two documents requests. Plaintiffs' interrogatories are narrowly tailored to address the identification of the LeadClick employees who were involved in the advertising campaign for the LeanSpa Defendants, the identification of the Affiliate Advertisers who promoted offers from the LeanSpa Defendants, the amount of funds LeadClick received from the LeanSpa Defendants and ultimately transferred to its parent company (CoreLogic), the total number of clicks generated by the fake news sites, and an identification of the documents relating to LeadClick's monitoring and review of the advertisements related to the LeanSpa Defendants. (See LeadClick's Br., Exh. A).

Similarly, Plaintiffs' document requests are narrowly tailored to address issues in the pending litigation bearing on both LeadClick and the LeanSpa Defendants. In fact, nineteen of the twenty-two document requests specifically refer to documents relating to the LeanSpa Defendants or advertisements used to generate leads for the LeanSpa Defendants. The other three document requests refer to the fake news sites or communications relating to the decision to close down LeadClick (Request Nos. 7, 9 and 10). Therefore, LeadClick will not be overly burdened in responding to these narrowly tailored discovery requests. Indeed, LeadClick makes no specific claim of undue hardship to respond to Plaintiffs' discovery requests.

Even assuming *arguendo* that the Court dismisses Plaintiffs' claims against LeadClick, the discovery sought is still relevant for Plaintiffs' claims against the LeanSpa Defendants. LeadClick's Motion to Dismiss is not dispositive of the entire case before the Court. Even if the

Court were to grant LeadClick's Motion to Dismiss, LeadClick most certainly would be required to produce the information requested pursuant to a third-party subpoena under Rule 45 of the Federal Rules of Civil Procedure. Therefore, in the interest of judicial economy and in light of the March 12, 2013 discovery deadline, LeadClick's motion to stay discovery should be denied.

### C. Any Unnecessary Delay in Obtaining Discovery From LeadClick May Unfairly Prejudice Plaintiffs.

Plaintiffs would be prejudiced if discovery from LeadClick was stayed. Discovery currently is scheduled to close on March 12, 2013. Any unnecessary delay may impede Plaintiffs' ability to identify third-party witnesses and develop their case not only against LeadClick, but also against the other defendants in this case. For example, Plaintiffs' requests are designed to discover essential facts relating to LeadClick's role in using the fake news sites to promote the LeanSpa Defendants' products, their interactions with their affiliate advertisers as it relates to the fake news sites, and the amount of money LeadClick received from the LeanSpa Defendants for their advertising campaigns.

## IV. CONCLUSION

For the reasons stated above, the FTC and the State of Connecticut respectfully request that the Court deny LeadClick's motion to stay discovery and for a protective order.

Respectfully submitted,

Dated: December 27, 2012

/s/ David W. Dulabon
Darren H. Lubetzky (phv04227)
David W. Dulabon (phv05052)
Savvas S. Diacosavvas (phv05494)
Federal Trade Commission
Northeast Region
One Bowling Green, Suite 318

New York, NY 10004
Tel: (212) 607-2898
Fax: (212) 607-2822
Email: dlubetzky@ftc.gov
Email: ddulabon@ftc.gov
Email: sdiacosavvas@ftc.gov

John Hughes (CT 05289)
Assistant United States Attorney
Chief of Civil Division
157 Church Street
New Haven, CT 06510
Tel: (203) 821-3700
Fax: (203) 773-5373
Email: john.hughes@usdoj.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

GEORGE JEPSEN,
ATTORNEY GENERAL,

Dated: December 27, 2012      /s/ Jonathan J. Blake
Phillip Rosario (CT 00999)
Matthew F. Fitzsimmons (CT 26981)
Jonathan J. Blake (CT 22321)
Office of the Attorney General
110 Sherman Street
Hartford CT 06105
Tel: (860) 808-5400
Fax: (860) 808-5593
Email: Phillip.Rosario@ct.gov
Email: Matthew.Fitzsimmons@ct.gov
Email: Jonathan.Blake@ct.gov

Attorneys for Plaintiff
STATE OF CONNECTICUT

## **CERTIFICATE OF SERVICE**

This is to certify that on the 27th day of December 2012, I electronically filed the foregoing Plaintiffs' Memorandum of Law in Opposition to Motion of LeadClick Defendants to Stay Discovery and For a Protective Order with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

/s/ *David W. Dulabon*
David W. Dulabon (phv05052)
Federal Trade Commission
Northeast Region
One Bowling Green, Suite 318
New York, NY 10004
Phone: (212) 607-2898
Fax: (212) 607-2822
Email: ddulabon@ftc.gov