UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION | : | |
| et al., | : | CIVIL ACTION NO |
| Plaintiff, | : | 3:11-CV-01715 (JCH) |
| | : | |
| v. | : | |
| | : | JANUARY 7, 2014 |
| LEANSPA, LLC, et al., | : | |
| Defendants. | : | |

**STIPULATED ORDER FOR PERMANENT INJUNCTION
AND MONETARY JUDGMENT AS TO DEFENDANTS LEANSPA, LLC, NUTRASLIM,
LLC, NUTRASLIM U.K., LTD. (also d/b/a LEANSPA U.K., LTD.) AND BORIS
MIZHEN AND RELIEF DEFENDANT ANGELINA STRANO**

Plaintiffs, the Federal Trade Commission ("Commission" or "FTC") and the State

of Connecticut ("State"), through its Attorney General, filed their Third Amended

Complaint for Permanent Injunction and Other Equitable Relief (the "Third Amended

Complaint") in this matter on August 28, 2013, pursuant to Section 13(b) of the Federal

Trade Commission Act ("FTC Act"), 15 U.S.C. §53(b), Section 917(c) of the Electronic

Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693o(c), and Section 42-110m of the

Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §42-110b, *et seq.*

Through counsel, having filed a joint motion, the Plaintiffs and Defendants LeanSpa,

LLC ("LeanSpa"), NutraSlim, LLC ("NutraSlim"), NutraSlim U.K., Ltd. (also d/b/a

LeanSpa U.K., Ltd.) ("NutraSlim U.K."), and Boris Mizhen ("Mizhen") (LeanSpa,

NutraSlim, NutraSlim U.K., and Mizhen collectively referred to as the "LeanSpa

Defendants") and Relief Defendant Angelina Strano ("Strano") stipulate to the entry of

this Permanent Injunction and Monetary Judgment as to the LeanSpa Defendants and

1

as to Relief Defendant Strano ("Order") to resolve all matters in dispute in this action between them.

THEREFORE, IT IS ORDERED as follows:

## FINDINGS

1.      This Court has jurisdiction over this matter.

2.      The Third Amended Complaint charges that the LeanSpa Defendants participated in deceptive acts or practices in violation of Sections 5 and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, Section 907(a) of the EFTA, Section 205.10(b) of Regulation E, 12 C.F.R. §205.10(b), and CUTPA, Conn. Gen. Stat. §42-110(b), by deceptively enrolling consumers into continuity plans for purported weight-loss and colon cleanse products using, *inter alia*, fake news sites to promote the LeanSpa Defendants' products.

3.      The Third Amended Complaint also charges that Relief Defendant Strano received, directly or indirectly, funds or otherwise benefitted from funds that are proceeds of the LeanSpa Defendants' deceptive acts and practices and that she has no legitimate claim to those funds.

4.      The LeanSpa Defendants and Relief Defendant Strano neither admit nor deny any of the allegations in the Third Amended Complaint, except as specifically stated in this Order.  Only for purposes of this action, the LeanSpa Defendants and Relief Defendant Strano admit the facts necessary to establish jurisdiction.

5.      The LeanSpa Defendants and Relief Defendant Strano waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. §2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

6.      The LeanSpa Defendants and Relief Defendant Strano waive all rights to appeal or otherwise challenge or contest the validity of this Order.

7.      The LeanSpa Defendants, Relief Defendant Strano, and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, unconditionally and irrevocably release the Temporary Receiver and his agents, attorneys, accountants, professionals, and other representatives from all manner of actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, in law or in equity, which the LeanSpa Defendants, Relief Defendant Strano, and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, ever had, now have, or which their respective successors and assigns hereafter can, shall, or may have for, upon or by reason of any matter, cause, or thing whatsoever of whatever kind, whether known or unknown, liquidated or unliquidated, each as though fully set forth herein at length, which said parties ever had, now have, or which may result from the existing, past, or future state of things arising out of, connected with,

3

or in any way related to any condition or circumstance with respect to the above captioned case, the LeanSpa Defendants, Relief Defendant Strano, and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them.

8.      The LeanSpa Defendants, Relief Defendant Strano, and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, unconditionally acknowledge, affirm, warrant, and covenant that the rights, title, and interest of all assets, including any funds, held by the Temporary Receiver on behalf of the Receivership Defendants are the sole and exclusive property of and owned by LeanSpa, LLC (under the control of the Temporary Receiver) free and clear of any ownership interests, security interests, liens, or other encumbrances, and Mizhen, Relief Defendant Strano, and their affiliated entities shall indemnify, hold harmless, and keep indemnified the Corporate Defendants and the Temporary Receiver from any claims to or ownership interests, security interests, liens, or other encumbrances asserted to those assets, including reasonable attorney fees.

9.      On or before January 15, 2014, Relief Defendant Strano made an election to satisfy the monetary judgment set forth in Section XI(A) below either by (a) payment of the sum set forth in Section XI(A) in the manner set forth in Section XI(B), or (b) transferring the Condo Property in the manner set forth in Section XI(C) below, and Strano thereupon delivered notice of such election in writing to the Plaintiffs and the Temporary Receiver.

**DEFINITIONS**

For the purpose of this Order, the following definitions apply:

1.      **"Acai Berry Product"** or **"Acai Berry Products"** mean any Dietary Supplement, Food, or Drug, sold alone or in combination with companion products, that is advertised, marketed, promoted, offered for sale, distributed, or sold with express or implied representations that the product contains acai berries or the extract thereof.

2.      **"Adequate and well-controlled human clinical study"** means a human clinical study that is randomized, double-blind, placebo-controlled, and conducted by persons qualified by training and experience to conduct such study.

3.      **"Affiliate"** means any Person, including third-party marketers, who participates in an Affiliate Program.

4.      **"Affiliate Network"** means any Person who provides the LeanSpa Defendants or any entity Defendant Mizhen controls with Affiliates for an Affiliate Program or whom Defendant Mizhen or any entity he contols contracts with as an Affiliate to promote any good or service.

5.      **"Affiliate Program(s)"** means any arrangement under which the LeanSpa Defendants or any entity Defendant Mizhen controls, pays, offers to pay, or provides or offers to provide any form of consideration to any third party, either directly or through an Affiliate Network, to (a) provide Defendant Mizhen or any entity he controls with, or refer to him or any entity he controls, potential or actual customers; or (b) otherwise market, advertise, or offer for sale any product or service on behalf of

Defendant Mizhen or any entity he controls.

   6. **"Clearly and Prominently"** shall mean: (a) in textual communications (e.g., printed publications or words displayed on the screen of a computer), the required disclosures are of a type, size, and location sufficiently noticeable for an ordinary consumer to read and comprehend them, in print that contrasts with the background on which they appear; (b) in communications disseminated orally or through audible means (e.g., radio or streaming audio), the required disclosures are delivered in a volume and cadence sufficient for an ordinary consumer to hear and comprehend them; (c) in communications disseminated through video means (e.g., television or streaming video), the required disclosures are in writing in a form consistent with subparagraph (a) of this definition and shall appear on the screen for a duration sufficient for an ordinary consumer to read and comprehend them; (d) in communications made through interactive media, such as the Internet, online services, and software, the required disclosures are unavoidable and presented in a form consistent with subparagraph (a) of this definition, in addition to any audio or video presentation of them; and (e) in all instances, the required disclosures are presented in an understandable language and syntax, in the same language as the predominant language that is used in the communication, and with nothing contrary to, inconsistent with, or in mitigation of the disclosures used in any communication of them.

   7. **"Corporate Defendants"** means LeanSpa, LLC, NutraSlim, LLC, and NutraSlim U.K., Ltd. (also d/b/a LeanSpa U.K., Ltd.) and their successors and assigns.

8.	**"LeanSpa Products"** means, collectively, LeanSpa, LeanSpa with HCA, NutraSlim, SlimFuel, LeanSpa Cleanse, LeanSpa QuickDetox, QuickDetox, and any other product that the Corporate Defendants advertised, marketed, promoted, offered for sale, or sold.

9.	**"Covered Product"** means any dietary supplement, food or drug, including, but not limited to, the LeanSpa Products.

10.	**"Individual Defendant"** means Boris Mizhen.

11.	**"Defendants"** means the Individual Defendant and all of the Corporate Defendants, individually, collectively, or in any combination.

12.	**"Device"** means an instrument, apparatus, implement, machine, contrivance, implant, in vitro reagent, or other similar or related article, including any component, part, or accessory, which is – (a) recognized in the official National Formulary, or the United States Pharmacopeia, or any supplement to them; (b) intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease, in man or other animals; or (c) intended to affect the structure or any function of the body of man and other animals; and which does not achieve any of its principal intended purposes through chemical action within or on the body of man or other animals and which is not dependent upon being metabolized for the achievement of any of its principal intended purposes.

13.	**"Dietary Supplement"** means: (a) any product labeled as a dietary supplement or otherwise represented as a dietary supplement; or (b) any pill, tablet,

capsule, powder, softgel, gelcap, liquid, or other similar form containing one or more

ingredients that are a vitamin, mineral, herb, or other botanical, amino acid, probiotic, or

other dietary substance for use by humans to supplement the diet by increasing the

total dietary intake, or a concentrate, metabolite, constituent, extract, or combination of

any ingredient described above that is intended to be ingested, and is not represented

to be used as a conventional Food or as a sole item of a meal or the diet.

14.     **"Drug"** means: (a) articles recognized in the official United States

Pharmacopoeia, official Homoeopathic Pharmacopoeia of the United States, or official

National Formulary, or any supplement to any of them; (b) articles intended for use in

the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other

animals; (c) articles (other than Food) intended to affect the structure or any function of

the body of man or other animals; and

(d) articles intended for use as a component of any article specified in clause (a), (b), or

(c); but does not include Devices or their components, parts, or accessories.

15.     **"Endorsement"** means any advertising message (including verbal

statements, demonstrations, or depictions of the name, signature, likeness, or other

identifying personal characteristics of an individual or the name or seal of an

organization) that consumers are likely to believe reflects the opinions, beliefs, findings,

or experience of a party other than the sponsoring advertiser.

16.     **"Essentially Equivalent Product"** means a product that contains the

identical ingredients, except for inactive ingredients (e.g., binders, colors, fillers,

excipients), in the same form and dosage, and with the same route of administration (e.g., orally, sublingually), as the covered product; *provided that* the Covered Product may contain additional ingredients if reliable scientific evidence generally accepted by experts in the field demonstrates that the amount and combination of additional ingredients is unlikely to impede or inhibit the effectiveness of the ingredients in the Essentially Equivalent Product.

17.     **"Food"** means: (a) articles used for food or drink for man or other animals; (b) chewing gum; and (c) articles used for components of any such article.

18.     **"Negative Option Feature"** means, in an offer or agreement to sell or provide any product, program, or service, a provision under which the consumer's silence or failure to make an affirmative action to reject products or services, or to cancel the agreement, is interpreted by the seller or provider as acceptance of the offer.

19.     **"Person"** means a natural person, an organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

20.     **"Personal Property"** means the Individual Defendant's 100% interest in the following property:

        a.     Rolex Submariner Gold Watch;

        b.     Panerai Ferrari Stainless Steel Watch;

        c.     Panerai Sport Watch;

        d.     Panerai Radiomir 1940 Watch purchased at Tiffany & Co. on or

9

about December 21, 2011;

  e.  The three paintings purchased at Dynasty Fine Arts on or about October 30, 2011 for $35,000; and

  f.  The bronze chess set and bronze statue art piece purchased at Magnificent Obsessions on or about October 30, 2011 for $20,000.

21.  **"Plaintiffs"** mean the Federal Trade Commission ("Commission" or "FTC") and the State of Connecticut ("State").

22.  **"Preauthorized Electronic Fund Transfer,"** as defined by the Electronic Fund Transfer Act, 15 U.S.C. § 1693a(9), means an electronic fund transfer authorized in advance to recur at substantially regular intervals.

23.  **"Receivership Defendants"** means LeanSpa, LLC, NutraSlim, LLC, and NutraSlim U.K., Ltd., and their subsidiaries, affiliates, divisions, successors, and assigns, and includes fictitious names under which they do business.

24.  **"Relief Defendant"** means Angelina Strano.

25.  **"Temporary Receiver"** means the Temporary Receiver appointed in Section X of the Stipulated Preliminary Injunction Order [Dkt. No. 36], entered by the Court on November 22, 2011.  The term "Temporary Receiver" also includes any deputy receivers or agents as named by the Temporary Receiver.

## I.

## BAN ON NEGATIVE OPTIONS

**IT IS ORDERED** that Defendants are permanently restrained and enjoined from engaging in, or assisting others engaged in, the advertising, marketing, promoting, offering for sale, or sale of any product, program, or service with a Negative Option Feature.

## II.

## PROHIBITED BUSINESS ACTIVITIES

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, or sale of any product, service, or program, are hereby permanently restrained and enjoined from:

A.      Misrepresenting, or assisting others in misrepresenting, expressly or by implication, any material fact, including, but not limited to:

1.      That there is no cost for a trial of Defendants' products or that the trial is free or risk-free or that Defendants will not charge consumers anything other than a nominal fee;

2.      That Defendants will provide full refunds to all consumers who request them;

3.      That any website or other publication is an objective news report;

4.      That objective news reporters have performed independent tests demonstrating the effectiveness of any product or service, including, but not limited to, Acai Berry Products or any other Dietary Supplement, Food, Drug, or Device;

5.      That consumers have endorsed Defendants' products;

6.      That comments posted on websites express the views of independent consumers; and

7.      Any other fact material to consumers concerning any product, service, or program, such as: (a) the total costs to purchase, receive, or use the product, service, or program; (b) any material restrictions, limitations, or conditions to purchase, receive, or use the product, service, or program;   (c) any material aspect of the performance, efficacy, nature, or central characteristics of the product, service, or program; and (d) any material aspect of the nature or terms of a refund, cancellation, exchange, or repurchase policy for the product, service, or program.

B.      Failing to disclose, or disclose adequately, material terms, contingencies, limitations, or conditions of any offer of a product, service, or program, including, but not limited to, that:

1.      Consumers who sign up to receive a trial supply of one of Defendants' products are charged for the trial supply of the product if they do not return it to the Defendants within a certain time period;

2.      Consumers who sign up for a trial supply of one of Defendants' products must obtain a return merchandise authorization number from Defendants before returning the products to Defendants; and

3.      Consumers who sign up for a trial supply of one of Defendants' products will incur additional costs in returning the product, including, but not limited to, paying for cancellation fees or return shipping.

C.      Failing to disclose, clearly and prominently:

1.      Any material connection, when one exists, between any user or endorser of any product, service, or program and Defendant or any other person manufacturing, advertising, labeling, promoting, offering for sale, selling or distributing such product, service, or program; and

2.      If applicable, that the content of any website or other publication has not been authored by an objective journalist but is in fact an advertisement placed for compensation.

D.      Charging, or causing to be charged, or assisting others in charging any consumer's credit card, or debiting, causing to be debited, or assisting others in debiting any consumer's bank account without the consumer's express informed consent for such charge or debit;

13

E.      Charging, causing to be charged, or assisting others in charging any consumer's credit card, or debiting, causing to be debited, or assisting others in debiting any consumer's bank account for any post trial offer fee or charge, prior to the expiration date of the trial offer; and

F.      Commencing any trial period before the date a consumer actually receives, or the Defendants reasonably expect, a consumer to receive a trial product.

### III.

### FALSE WEIGHT-LOSS REPRESENTATIONS PROHIBITED

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, or any dietary supplement, food, drug, or device, are permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product name or endorsement, any representation that such product causes rapid and substantial weight loss, including losing as much as twenty-five pounds in four weeks, without reducing caloric intake or increasing physical activity.

14

**IV.**

**PROHIBITED REPRESENTATIONS: WEIGHT-LOSS CLAIMS**

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, are hereby permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product name, endorsement, depiction, or illustration, any representation that:

      A.      Such product causes weight loss; or

      B.      Clinical studies prove that Defendants' products will cause rapid and substantial weight loss; unless the representation is non-misleading and, at the time of making such representation, Defendants possess and rely upon competent and reliable scientific evidence that substantiates that the representation is true.  For purposes of this Section, competent and reliable scientific evidence shall consist of at least two adequate and well-controlled human clinical studies of the Covered Product, or of an Essentially Equivalent Product, conducted by different researchers, independently of each other, that conform to acceptable designs and protocols and whose results, when considered in light of the entire body of relevant and reliable scientific evidence, are sufficient to substantiate that the representation is true.  Defendants shall have the

15

burden of proving that a product satisfies the definition of Essentially Equivalent Product.

**V.**

**PROHIBITED REPRESENTATIONS: OTHER HEALTH-RELATED CLAIMS**

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, are hereby permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product name, endorsement, depiction, or illustration, any representation, other than the representations covered under Section III of this Order, about the health benefits, performance, or efficacy of any Covered Product, unless the representation is non-misleading, and, at the time of making such representation, Defendants possess and rely upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted in the relevant scientific fields, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true. For purposes of this Section, competent and reliable scientific evidence means tests, analyses, research, or studies that have been conducted and evaluated in an objective

manner by qualified persons and are generally accepted in the profession to yield accurate and reliable results.

## VI.

## PROHIBITED REPRESENTATIONS REGARDING TESTS OR STUDIES

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, are hereby permanently restrained and enjoined from misrepresenting, in any manner, expressly or by implication, including through the use of any product name or endorsement, the existence, contents, validity, results, conclusions, or interpretations of any test or study, in connection with any representations covered by Sections IV and V of this Order.

## VII.

## FDA APPROVED CLAIMS

**IT IS FURTHER ORDERED** that nothing in this Order shall prohibit Defendants from making any representation for any product that is specifically permitted in labeling for such product by regulations promulgated by the Food and Drug Administration pursuant to the Nutrition Labeling and Education Act of 1990.

## VIII.

## PROHIBITIONS BASED ON THE ELECTRONIC FUNDS TRANSFER ACT

17

**IT IS FURTHER ORDERED** that Defendants and Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who received actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any good or service are hereby permanently restrained and enjoined from:

A.      Failing to obtain written authorization for Preauthorized Electronic Fund Transfers from a consumer's account before initiating any Preauthorized Electronic Fund Transfer, as required by Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b), as more fully set out in Section 205.10 of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205, Supp. I; and

B.      Failing to provide a copy of a valid written authorization to the consumer for Preauthorized Electronic Fund Transfers from a consumer's account, as required by Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b), as more fully set out in Section 205.10 of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205, Supp. I.

## IX.

## AFFILIATE NETWORK PROVISIONS

**IT IS FURTHER ORDERED** that Defendants and Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive notice of this Order, whether acting directly

18

or indirectly, in connection with the advertising, marketing, offering for sale, sale, or provision of any goods or services through an Affiliate Program, are permanently restrained and enjoined from failing to:

A.      Require each Affiliate and/or Affiliate Network used in any Affiliate Program to provide to Defendants and Defendants' officers, agents, servants, employees, and attorneys and all other persons in active concert or participation with any of them, the following identifying information:

1.      In the case of a natural person, the Affiliate's or Affiliate Network's first and last name, physical address, country, telephone number, email address, and complete bank account information as to where payments are to be made to that Person;

2.      In the case of a business entity that is a direct Affiliate with any Defendant, the Affiliate's name and any and all names under which it does business, state of incorporation, registered agent, and the first and last name, physical address, country, telephone number, and email address for at least one natural person who owns, manages, or controls the Affiliate, and the complete bank account information as to where payments are to be made to the Affiliate;

3.      In the case of a business entity that is an Affiliate Network, the Affiliate Network's name and any and all names under which it does business, state of incorporation, registered agent, and the first and last name, physical address, country, telephone number, and email address for at least one natural person who owns,

19

manages, or controls the Affiliate Network, and the complete bank account information as to where payments are to be made to the Affiliate Network; and

4.      If Defendants only have access to certain Affiliates through an Affiliate Network, then Defendants shall require each Affiliate Network to obtain and maintain from those Affiliates the identifying information set forth in Subsection A.1 and A.2 of this Section prior to the Affiliate's or Affiliate Network's participation in the Defendants' Affiliate Program.

B.      As a condition of doing business with any Affiliate or Affiliate Network or such Affiliate or Affiliate Network's acceptance into Defendants' Affiliate Program: (a) provide each such Affiliate or Affiliate Network a copy of this Order; (b) obtain from each such Affiliate or Affiliate Network a signed and dated statement acknowledging receipt of this Order and expressly agreeing to comply with this Order; and (c) clearly and conspicuously disclose in writing that engaging in acts or practices prohibited by this Order will result in immediate termination of any Affiliate or Affiliate Network and forfeiture of all monies owed to such Affiliate or Affiliate Network; *provided, however*, that if Defendants only have access to certain Affiliates through an Affiliate Network, then Defendants shall require that the Affiliate Network provide the information required by this Subsection to each of those Affiliates and retain proof of the same prior to any such Affiliate being used in Defendants' Affiliate Program; and if Defendants should acquire any entity that has an existing program of selling through affiliates, the entity must complete all steps in this Subsection prior to Defendants' acquisition of the entity.

20

C.      Require that each Affiliate or Affiliate Network, prior to the release of any marketing materials, including, but not limited to, websites, emails, and pop-ups used by any Affiliate or Affiliate Network to advertise, promote, market, offer for sale, or sell any goods or services through Defendants' Affiliate Program, provide Defendants with the following information: (a) copies of all material created by the Affiliate or Affiliate Network displayed or contained within the marketing materials, including text, graphic, video, audio, and photographs; (b) the location of any online marketing materials, as denoted by a unique URL; (c) the URL of any hyperlink contained in the marketing materials; and (d) the range of dates that the marketing materials will run; *provided, however,* that if Defendants only have access to certain Affiliates through an Affiliate Network, then Defendants shall require that the Affiliate Network obtain and maintain the same information set forth above from each of those Affiliates who are part of Defendants' Affiliate Program prior to the release of any such marketing materials, and provide proof to Defendants of having obtained the same.

D.      Prior to the release of any marketing materials submitted to Defendants or Defendants' Affiliate Network pursuant to Section IX.C above, review the marketing material for compliance with this Order.  If, after reviewing such marketing materials, Defendants determine that the materials comply with this Order, then Defendants shall provide to the Affiliate or Affiliate Network who submitted the material a written acknowledgment of approval of such material.  If, however, Defendants determine that such material does not comply with this Order, Defendants shall inform the Affiliate or

Affiliate Network in writing that approval is denied and shall not pay any amounts to the Affiliate or the Affiliate Network for such marketing, including any payments for leads, "click-throughs," or sales resulting therefrom; *provided, however*, that if Defendants only have access to certain Affiliates through an Affiliate Network, then they shall require that the Affiliate Network comply with the procedures set forth in this Subsection as to those Affiliates.

E.      Promptly and completely investigate any complaints that Defendants receive through any source to determine whether any Affiliate or Affiliate Network is engaging in acts or practices prohibited by this Order, either directly or through any Affiliate that is part of Defendants' Affiliate Program.

F.      Upon determining that any Affiliate or Affiliate Network has engaged in, or is engaging in, acts or practices prohibited by this Order, either directly or through any Affiliate that is part of Defendants' Affiliate Program:

1.      Immediately halt the processing of any payments or charges generated by the Affiliate or Affiliate Network;

2.      Fully refund, or cause to be refunded, within five (5) business days, each consumer charged by Defendants whose sale originated from the Affiliate or Affiliate Network on or after the date the Affiliate or Affiliate Network engaged in acts or practices prohibited by this Order; and

3.      Immediately terminate the Affiliate or Affiliate Network; *provided, however*, Defendants shall not be in violation of this subsection if Defendants fail to

22

terminate an Affiliate Network in a case where Defendants only have access to an Affiliate who has engaged in acts or practices prohibited by this Order through an Affiliate Network and the Affiliate Network immediately terminates the Affiliate violating this Order.

**X.**

**MONETARY JUDGMENT AS TO LEANSPA DEFENDANTS**

**IT IS FURTHER ORDERED** that:

A.       Judgment in the amount of thirty-two million seven hundred twenty-five thousand four hundred fifty three dollars ($32,725,453) is entered in favor of Plaintiffs against the Individual Defendant and Corporate Defendants, jointly and severally, as equitable monetary relief; provided however, that subject to Sections X.E – X.I below, this judgment shall be suspended upon the completion of the requirements stated in Sections X.B – X.D.

B.       In partial satisfaction of the monetary judgment set forth above, the following transfers of assets shall occur:

1.       Wells Fargo Advisors, LLC ("WFA") shall liquidate all assets held on account for Fellsmere Farm, LLC, at WFA, including, but not limited to, WFA accounts ending in *1212, *1387, *8873, *9639, and *2535, and then transfer to the Commission the net proceeds of the liquidated accounts for Fellsmere Farm, LLC, at WFA,

including, but not limited to, WFA accounts ending in *1212, *1387,

*8873, *9639, and *2535;

2.     Wells Fargo Bank, N.A. ("Wells Fargo") shall transfer to the

Commission all assets held in Defendant Mizhen and Relief

Defendant Strano's joint account ending in *4115;

3.     RBS Citizens, N.A. ("Citizens Bank") shall transfer to the

Commission all assets held in Defendant Mizhen and Relief

Defendant Strano's joint account ending in *0637;

4.     Defendant Mizhen shall transfer to the Commission fifteen

thousand dollars ($15,000); and

5.     Defendant Mizhen and/or Relief Defendant Strano shall execute, or

cause to be executed, within three (3) days of written request all

documents necessary to effectuate the liquidation, where

appropriate, and the transfer of the assets identified in Subsection

B (1-4) above to the Commission.

C.     In partial satisfaction of the monetary judgment set forth above, the

following steps with respect to the property located at 3124 Boston Post Road, Guilford,

CT (the "Real Property") shall occur:

1.     Within twenty-one (21) days from the date of entry of this Order,

3124 Boston Post Road, LLC, via its registered agent, Defendant

Mizhen, and/or Relief Defendant Strano, shall cause to be

24

transferred by warranty deed, free and clear of all liens and interests, to Defendant LeanSpa under the control of the Temporary Receiver, in a form satisfactory to the Temporary Receiver in his sole discretion, all rights, title, and interests in and to the Real Property, including, but not limited to, all rights, title and interest to (a) all permits, approvals or variances relating to or running with the property and (b) all existing leases and payments relating to the Real Property.  In connection with, but prior to, the transfer of the Real Property, all real estate taxes, sewer, and/or water use charges and municipal liens accruing thereon, shall have been paid by or on behalf of 3124 Boston Post Road, LLC, which shall promptly provide the Temporary Receiver with written paid receipts to the satisfaction of the Temporary Receiver; provided, however, that the Temporary Receiver shall reimburse 3124 Boston Post Road, LLC pro rata for the payment of any portion of said real estate taxes and/or charges that have accrued after the date of transfer of the Real Property to the Temporary Receiver and that have been previously paid by 3124 Boston Post Road, LLC.  At the time of the transfer, 3124 Boston Post Road, LLC, the owner of the Real Property, shall represent, warrant, covenant, and agree to the Temporary Receiver in writing as follows:

25

(a)     No labor, services, or materials have been performed or provided with respect to the Real Property during the ninety (90) days immediately prior to the date of the transfer to LeanSpa, LLC, and that any and all work previously performed on the Real Property has been paid in full;

(b)     The construction of any and all buildings currently on the Real Property, if any, have been duly approved by all authorities having jurisdiction thereto, have been completed in accordance therewith, and have resulted in the issuance of a Certificate of Occupancy thereon;

(c)     There are no conditions or restrictions affecting the Real Property;

(d)     Effective immediately, prior to the transfer of the Real Property to LeanSpa, LLC, (i) there are no owners or interest holders in or to the Real Property other than 3124 Boston Post Road, LLC; (ii) there are no contracts or other agreements in existence affecting the Real Property that will be binding upon LeanSpa, LLC and the Temporary Receiver; and (iii) there are no tenants, occupants, or others with any leasehold or other interest in or rights to possession of the Real Property;

26

(e)     There are no outstanding and unpaid bills, charges, or other unsatisfied impositions affecting the Real Property and, without prejudice to the foregoing, 3124 Boston Post Road, LLC, Boris Mizhen, and Relief Defendant Strano hereby covenant and agree to pay any charges affecting the Real Property and to indemnify and keep indemnified the Temporary Receiver and LeanSpa, LLC against any liability therefore, including reasonable attorney fees;

(f)     To the best of 3124 Boston Post Road, LLC, Boris Mizhen, and Relief Defendant Strano's knowledge, information and belief, the Real Property is in compliance with all applicable environmental laws, zoning requirements and all other applicable laws, ordinances, rules and regulations, as well as all orders of all applicable governmental authorities (collectively, the "laws"), and the terms and conditions of any and all permits and approvals pertaining to the Real Property and all construction thereon has been according to, and in conformity with, all applicable laws;

(g)     3124 Boston Post Road, LLC is a Connecticut limited liability company, duly organized, validly existing and in good standing in its State of formation, and has full power and

27

authority to enter into and perform its obligations under this Order, a warranty deed, bill of sale and all other documents, instruments, and agreements related or contemplated by this Order (collectively, the "Real Property Transfer Documents");

(h)   The entry into and performance by 3124 Boston Post Road, LLC of this Order, the deed, and all other Real Property Transfer Documents does not and will not conflict with or violate any provision of either 3124 Boston Post Road, LLC's organizational documents or any law or agreement by which either 3124 Boston Post Road, LLC or the Real Property is bound;

(i)   3124 Boston Post Road, LLC, Boris Mizhen, Relief Defendant Strano, and their respective agents and affiliated entities have not caused or allowed the generation, treatment, storage, or disposal of "Hazardous Materials" on the Real Property except in accordance with applicable law and has not caused or allowed and has no knowledge of any release, discharge, spillage, emanation, uncontrolled loss or seepage of any Hazardous Material at, on, under, about or within the Real Property.  "Hazardous Material" means: any petroleum product, "hazardous waste" (as defined by

Section 22a-115 of the Connecticut General Statutes),
"hazardous substance" (as defined in the Comprehensive
Environmental Response Compensation and Liability Act, as
amended (42 U.S.C. § 9601(14)), hazardous material (as
defined in the Hazardous Materials Transportation Act, as
amended (49 U.S.C. § 1801 et seq.)), hazardous wastes (as
defined in the Resource Conservation and Recovery Act, as
amended (42 U.S.C. § 6901, et seq.)), hazardous chemical
substances and mixtures (as described in the Toxic
Substances Control Act, as amended (15 U.S.C. § 2601, et
seq.)), radioactive material, or any other substance which
may pose a present or potential hazard to human health or
the environment when improperly disposed of, treated,
stored, or managed.  The Real Property does not constitute
an "establishment" pursuant to the Connecticut Transfer Act,
as amended, and as of the date hereof, no money has been
expended nor has any contract been entered into by the
Connecticut Department of Environmental Protection or the
Federal Environmental Protection Agency for which a lien
against the Real Property could arise;

(j)     3124 Boston Post Road, LLC has secured all necessary permits, licenses and approvals necessary to the operations of the Real Property, and is in compliance with all such permits, licenses, and approvals; and

(k)     There are no proceedings, suits, actions, liens, inquiries, or investigations at law, in equity, or before or by any administrative body or arbitrator pending or, to the knowledge of the LeanSpa Defendants or Relief Defendant Strano, threatened, in which an unfavorable finding, decision or ruling could or might adversely affect the Real Property or the enforceability of any warranty deed or which, in the opinion of the Temporary Receiver, the LeanSpa Defendants, or Relief Defendant Strano, might result in any adverse change in the value of the Real Property.

2.    At all times prior to the transfer of the Real Property set forth herein, 3124Boston Post Road, LLC, via its registered agent, Defendant Mizhen, and/or Relief Defendant Strano, shall maintain in full force and effect, appropriate and sufficient insurance coverage on the Real Property, and such other insurance coverage reasonably requested by the Temporary Receiver, including, but

not limited to, general liability insurance coverage, which must
provide a minimum of $1 Million per incident.

Upon request of the Temporary Receiver, 3124 Boston Post Road,
LLC, via its registered agent, Defendant Mizhen, and/or Relief
Defendant Strano, shall immediately provide full copies of the
insurance policies or such other proof of insurance coverage in
effect.

3.    3124 Boston Post Road, LLC, via its registered agent, Defendant
Mizhen, and/or Relief Defendant Strano, shall execute, or cause to
be executed, all documents necessary to effectuate the transfer of
good and marketable title to an indefeasible estate in fee simple in
and to the Real Property free and clear of all liens and interests to
Defendant LeanSpa under the control of the Temporary Receiver
and shall pay any State of Connecticut, local, and municipal
conveyance taxes, if any, and provide conveyance forms as
requested by the Temporary Receiver in his sole discretion at such
time as directed by the Temporary Receiver.  3124 Boston Post
Road, LLC shall promptly cooperate with, provide, and execute all
Real Property Transfer Documents and other documentation
requested by the Temporary Receiver or contemplated by this
Order;

31

4.     Within twenty-one (21) days from the date of entry of this Order or within 21 days from any request, 3124 Boston Post Road, LLC, via its registered agent, Defendant Mizhen, and/or Relief Defendant Strano, shall produce all documents requested by the Temporary Receiver relating to the Real Property;

5.     The Temporary Receiver shall, within ten (10) months from the date of entry of this Order, make all good faith efforts to sell the Real Property.  The Temporary Receiver shall ensure that the Real Property is appraised and listed for sale at or above the appraised fair market value, and the proposed sale price shall be subject to the approval of Plaintiffs' counsel, which approval shall not be unreasonably withheld.  If the proposed sale price is less than 67 percent of the appraised value, the proposed sale price shall be subject to Court approval.  The Temporary Receiver shall provide 3124 Boston Post Road, LLC, via its registered agent, Defendant Mizhen, and/or Relief Defendant Strano, a complete copy of the sales contract for the Real Property within ninety-six (96) hours of execution; and

6.     In the event that the Real Property has not been sold within ten (10) months from the date of entry of this Order, the Temporary Receiver shall undertake the necessary steps to auction such

property, including, but not limited to, retaining an auction company and directing it to sell all interest in the Real Property at a public auction to occur within twelve (12) months from the date of entry of this Order, unless any such dates are extended by further order of the Court or agreement with the Plaintiffs.  Notwithstanding the foregoing, the Temporary Receiver may commence the necessary steps to auction the Real Property at a date earlier than ten (10) months from the date of entry of this Order if he deems it appropriate in his sole discretion.

7.     Within twenty-one (21) days of the sale or liquidation of the Real Property, the Temporary Receiver shall transfer the proceeds, after payment of any reasonable and customary fees incurred in connection with such sale or liquidation that have been approved in advance by counsel for Plaintiffs, to the Commission or its designated agent by wire transfer in accordance with wiring instructions to be provided by counsel for the FTC.

D.     In partial satisfaction of the monetary judgment set forth above, the Individual Defendant shall cause ownership and possession of the Personal Property to be transferred free and clear of all liens and interests to Defendant LeanSpa under the control of the Temporary Receiver within twenty-one (21) days from the date of entry of this Order.  Within five (5) days of a request from the Temporary Receiver, the

Individual Defendant shall cause to be transferred free and clear of all liens and interests to Defendant LeanSpa under the control of the Temporary Receiver, or such other transferee as the Temporary Receiver shall designate, in a form satisfactory to the Temporary Receiver, title to the Personal Property.  The Individual Defendant shall execute, or cause to be executed, all documents necessary as directed by the Temporary Receiver, in his sole discretion, to effectuate the transfer of ownership, title, and possession of the Personal Property free and clear of all liens and interests to Defendant LeanSpa under the control of the Temporary Receiver.  Within twenty-one (21) days from the date of entry of this Order or any request by the Temporary Receiver, the Individual Defendant shall produce all documents requested by the Temporary Receiver relating to the Personal Property.  The Temporary Receiver shall, within eight (8) months from the date of entry of this Order, sell or liquidate the Personal Property, and transfer the proceeds, after payment of any reasonable and customary fees incurred in connection with such sale or liquidation that have been approved in advance by counsel for Plaintiffs, to the Commission or its designated agent by wire transfer in accordance with wiring instructions to be provided by counsel for the FTC within twenty-one (21) days of such sale or liquidation.  The Temporary Receiver may extend any dates set forth in this paragraph with the consent of the Plaintiffs or further order of the Court.

   E. The asset transfers described in Subsections B, C, and D above must be made within twenty-one (21) days of entry of this Order in accordance with instructions

provided by a representative of the Commission and the Temporary Receiver.  Upon

such asset transfers identified in Subsections B, C, and D above, the remainder of the

judgment against the Individual Defendant and the Corporate Defendants is suspended,

subject to the Subsections below.

      F.    Plaintiffs' agreement to suspend part of the judgment is expressly

premised, in part, on the material representation that 3124 Boston Post Road, LLC is

the sole owner of the Real Property, that title to the Real Property is marketable, and

that the Real Property is not encumbered by any lien, mortgage, deed of trust,

assignment, pledge, security interest, or other interest, other than accrued real estate

taxes that were not yet due for payment at the time of transfer of the Real Property to

the Temporary Receiver.  To the extent that the Real Property is not solely owned by

3124 Boston Post Road, LLC, that title to the Real Property is not marketable, or that

the Real Property is encumbered by any lien, mortgage, deed of trust, assignment,

pledge, security interest, or other interest, other than accrued real estate taxes that

were not yet due for payment at the time of transfer of the Real Property to the

Temporary Receiver, the suspension of the judgment will be lifted and the full judgment

will become immediately due as to the LeanSpa Defendants.

      G.    Plaintiffs' agreement to suspend part of the judgment is further premised

upon the truthfulness, accuracy, and completeness of Defendants' sworn financial

statements and related documents (collectively, "Financial Attestations") submitted to

Plaintiffs, namely: (1) Defendant LeanSpa, LLC's corporate financial statement signed

by Defendant Mizhen as manager on or about January 17, 2012, including the attachments; (2) Defendant NutraSlim, LLC's corporate financial statement, signed by Defendant Mizhen as manager on or about January 17, 2012; (3) Defendant NutraSlim U.K., Ltd.'s (also d/b/a LeanSpa U.K., Ltd.) corporate financial statement, signed by Defendant Mizhen as manager on or about January 17, 2012; (4) Defendant Mizhen's individual financial statement signed on or about January 17, 2012, including the attachments; (5) Defendant Mizhen's revised individual financial statement, signed September 6, 2013, including the attachments; (6) Defendant Mizhen's and Relief Defendant Strano's 2008 U.S. Income Tax Return; (7) Defendant Mizhen's and Relief Defendant Strano's 2009 U.S. Income Tax Return; (8) Defendant Mizhen's and Relief Defendant Strano's 2010 U.S. Income Tax Return; (9) Defendant Mizhen's 2011 U.S. Income Tax Return; (10) Defendant Mizhen's Amended 2011 U.S. Income Tax Return; (11) Defendant Mizhen's 2012 U.S. Income Tax Return; (12) Defendant Mizhen's February 29, 2012 asset deposition and all exhibits thereto; and (13) Relief Defendant Strano's individual financial statement, signed on September 16, 2013, including the attachments, and as amended on November 21, 2013.

      H.    The suspension of the remainder of the judgment will be lifted as to any Defendant if, upon motion by the Commission or the State, the Court finds that Defendant failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission in the financial representations identified above.

36

I.      If the suspension of the judgment is lifted, the judgment becomes immediately due as to that Defendant in the amount specified in Subsection A above (which the parties stipulate only for purposes of this Section represents the consumer injury alleged in the Third Amended Complaint), less any payment previously made pursuant to this Section, plus interest computed from the date of entry of this Order.

## XI.

### MONETARY JUDGMENT AS TO RELIEF DEFENDANT STRANO

**IT IS FURTHER ORDERED** that:

A.      Judgment in the amount of two hundred ninety-seven thousand dollars ($297,000) is entered in favor of Plaintiffs against the Relief Defendant.

B.      Unless the Relief Defendant timely exercised her election in the manner set forth in paragraph 9 of the Findings herein to satisfy the monetary judgment set forth in Section XI(A) above via the transfer set forth in Section XI(C) below, the Relief Defendant is ordered to pay Plaintiffs two hundred ninety-seven thousand dollars ($297,000) within twenty-one (21) days of the date of entry of this Order in satisfaction of the monetary judgment set forth in Section XI(A).  Payment shall be made to the Commission by wire transfer in accordance with directions provided by the Commission, or by certified check or other guaranteed funds payable to and delivered to the Commission.

C.      If the Relief Defendant has timely exercised her election to transfer the Condo Property in the manner set forth in paragraph 9 of the Findings herein to satisfy

37

the monetary judgment set forth in Section XI(A) above, the following steps with respect

to the property located at 420 East Main Street, Building 2, Suite 8, Branford, CT 06405

(the "Condo Property") shall occur:

1.      Within twenty-one (21) days from the date of entry of this Order, JNM

        Capital, LLC, via its member manager, Relief Defendant Strano, shall

        cause to be transferred by warranty deed, free and clear of all liens and

        interests, to Defendant LeanSpa, LLC under the control of the Temporary

        Receiver, in a form satisfactory to the Temporary Receiver in his sole

        discretion, all rights, title, and interests in and to the Condo Property,

        including, but not limited to, all rights, title, and interest to (a) all permits,

        approvals, or variances relating to or running with the property, and (b) all

        existing leases and payments relating to the Condo Property.  In

        connection with, but prior to, the transfer of the Condo Property, all real

        estate taxes, sewer, and/or water use charges and municipal liens

        accruing thereon, shall have been paid by or on behalf of JNM Capital,

        LLC, which shall promptly provide the Temporary Receiver with written

        paid receipts to the satisfaction of the Temporary Receiver; provided,

        however, that the Temporary Receiver shall reimburse JNM Capital, LLC

        pro rata for the payment of any portion of said real estate taxes and/or

        charges that have  accrued after the date of transfer of the Condo

        Property to the Temporary Receiver and that have been previously paid

38

by JNM Capital, LLC.  At the time of the transfer, JNM Capital, LLC, the owner of the Condo Property, shall represent, warrant, covenant, and agree to the Temporary Receiver in writing as follows:

(a)     No labor, services, or materials have been performed or provided with respect to the Condo Property during the ninety (90) days immediately prior to the date of the transfer to LeanSpa, LLC and that any and all work previously performed on the Condo Property has been paid for in full;

(b)     The construction of any and all buildings currently on the Condo Property, if any, have been duly approved by all authorities having jurisdiction thereto, have been completed in accordance therewith, and have resulted in the issuance of a Certificate of Occupancy thereon;

(c)     There are no conditions or restrictions affecting the Condo Property;

(d)     Effective immediately prior to the transfer of the Condo Property to LeanSpa, LLC, (i) there are no owners or interest holders in or to the Condo Property other than JNM Capital, LLC; (ii) there are no contracts or other agreements in existence affecting the Condo Property that will be binding upon LeanSpa, LLC and the Temporary Receiver; and (iii) there are no tenants, occupants, or

others with any leasehold or other interest in or rights to possession of the Condo Property;

(e)     There are no outstanding and unpaid bills, charges, or other unsatisfied impositions affecting the Condo Property and, without prejudice to the foregoing, JNM Capital, LLC and Relief Defendant Strano hereby covenant and agree to pay any charges affecting the Condo Property and to indemnify and keep indemnified the Temporary Receiver and LeanSpa, LLC against any liability therefore, including reasonable attorney fees;

(f)     To the best of JNM Capital, LLC and Relief Defendant Strano's knowledge, information, and belief, the Condo Property is in compliance with all applicable environmental laws, zoning requirements, and all other applicable laws, ordinances, rules, and regulations, as well as all orders of all applicable governmental authorities (collectively, the "laws"), and the terms and conditions of any and all permits and approvals pertaining to the Condo Property and all construction thereon has been according to and in conformity with all applicable laws;

(g)     JNM Capital, LLC is a Connecticut limited liability company, duly organized, validly existing and in good standing in its State of formation, and has full power and authority to enter into and

40

perform its obligations under this Order, a warranty deed, bill of sale, and all other documents, instruments, and agreements related hereto and thereto (collectively, the "Condo Property Transfer Documents");

(h)  The entry into and performance by JNM Capital, LLC of this Order, the deed, and all other Condo Property Transfer Documents does not and will not conflict with or violate any provision of either JNM Capital's organizational documents or any law or agreement by which either JNM Capital, LLC or the Condo Property is bound;

(i)  JNM Capital, LLC, Relief Defendant Strano, and their respective agents and affiliated entities have not caused or allowed the generation, treatment, storage, or disposal of "Hazardous Materials" on the Condo Property except in accordance with applicable law and has not caused or allowed or has no knowledge of any release, discharge, spillage, emanation, uncontrolled loss or seepage of any Hazardous Material at, on, under, about or within the Condo Property.  "Hazardous Material" means: any petroleum product, "hazardous waste" (as defined by Section 22a-115 of the Connecticut General Statutes), "hazardous substance" (as defined in the Comprehensive Environmental Response Compensation and Liability Act, as amended (42 U.S.C. §9601(14)), hazardous

41

material (as defined in the Hazardous Materials Transportation Act, as amended (49 U.S.C. § 1801, et seq.)), hazardous wastes (as defined in the Resource Conservation and Recovery Act, as amended (42 U.S.C. § 6901, et seq.)), hazardous chemical substances and mixtures (as described in the Toxic Substances Control Act, as amended (15 U.S.C. § 2601, et seq.)), radioactive material, or any other substance which may pose a present or potential hazard to human health or the environment when improperly disposed of, treated, stored, or managed.  The Condo Property does not constitute an "establishment" pursuant to the Connecticut Transfer Act, as amended, and as of the date hereof, no money has been expended nor has any contract been entered into by the Connecticut Department of Environmental Protection or the Federal Environmental Protection Agency for which a lien against the Condo Property could arise;

(j)     JNM Capital, LLC has secured all necessary permits, licenses, and approvals necessary to the operations of the Condo Property, and is in compliance with all such permits, licenses, and approvals; and

(k)     The are no proceedings, suits, actions, liens, inquiries, or investigations at law, in equity, or before or by any administrative body or arbitrator pending, or, to the knowledge of the LeanSpa

42

Defendants or Relief Defendant Strano, threatened, in which an unfavorable finding, decision, or ruling could or might adversely affect the Condo Property or the enforceability of any warranty deed or which, in the opinion of the Temporary Receiver, the LeanSpa Defendants, or Relief Defendant Strano, might result in any adverse change in the value of the Condo Property.

2.   JNM Capital, LLC shall deliver to the Temporary Receiver prior to the transfer of the Condo Property and in conformity with Section 47-270 of the Connecticut General Statutes as may exist as the date of entry of this Order (the "Common Interest Ownership Act"), the Declaration of Condominium (other than any surveys and plans), and the Bylaws of the condominium association for the units at 420 East Main Street, Branford, CT (the "Association").  JNM Capital, LLC acknowledges that the Temporary Receiver is also entitled to a resale certificate from the Association containing the following, ("Resale Certificate"): (a) a statement disclosing the effect on a proposed disposition of any right of first refusal or other restraint on the free alienability of the Condo Property; (b) a statement setting forth the amount of the monthly common expense assessment for the Condo Property and any unpaid common expense or special assessment currently due and payable from JNM Capital, LLC; (c) a statement of any other fees payable by JNM Capital, LLC; (d) a

43

statement of the Association's amount of any reserves for capital expenditures; (e) the current operating budget of the Association; (f) a statement of any unsatisfied judgments against the Association and the existence of any pending suits in which the Association is a defendant; (g) a statement of the insurance coverage provided for the benefit of the unit owners; (h) a statement of any restrictions in the Declaration of Condominium affecting the amount that may be received by a unit owner on sale, condemnation, casualty loss to the unit or the common interest community or termination of the common interest community; (i) a statement describing any pending sale or encumbrance of common elements; and (j) a statement disclosing the effect on the Condo Property to be conveyed of any restrictions on the owner's right to use or occupy the unit or to lease the unit to another person.  The above-referenced Declaration of Condominium, Association Bylaws, and Resale Certificate are hereinafter, collectively, the "Condominium Documents."  JNM Capital, LLC agrees to submit a written request to the Association for a Resale Certificate on or before January 15, 2014 and to obtain and tender to the Temporary Receiver the Resale Certificate prior to the transfer of the Condo Property, unless the Temporary Receiver consents in writing to an extension of such time;

44

3.      JNM Capital, LLC shall deliver to the Temporary Receiver prior to or at the time of transfer, a certificate or other evidence of the insurance coverage on the Condo Property as directed by the Temporary Receiver.  At all times prior to the transfer of the Condo Property set forth herein, JNM Capital, LLC, via its member manager, Relief Defendant Strano, shall carry, maintain in full force and effect fire and casualty insurance on the Condo Property and such other insurance coverage reasonably requested by the Temporary Receiver.  It is understood that fire and casualty insurance on the common elements is governed by the Declaration of Condominium as referred to herein.  Upon request of the Temporary Receiver, JNM Capital, LLC, via its member manager, Relief Defendant Strano, shall immediately provide full copies of the insurance policies or such other proof of insurance coverage in effect;

4.      JNM Capital, LLC shall promptly make a written request to the Association to furnish to the Temporary Receiver a written statement setting forth the amount, if any, of unpaid common expense assessments against the Condo Property and shall promptly furnish such statement to the Temporary Receiver promptly upon receipt and shall obtain another such statement that it shall provide to the Temporary Receiver at the time of the transfer of the Condo Property.  Budgeted and non-budgeted common expense assessments, or any installments thereof, which are due and

45

payable as of the transfer shall be paid by JNM Capital, LLC with reasonable proof thereof furnished to the Temporary Receiver;

5.      If the sale of the Condo Property is subject to a right of first refusal which may be exercised by the Association, JNM Capital, LLC agrees to request and obtain promptly, in writing, a waiver of such right from the Association and to deliver the waiver, in recordable form, to the Temporary Receiver prior to January 15, 2014, unless the Temporary Receiver consents in writing to an extension of such time;

6.      JNM Capital, LLC, via its member manager, Relief Defendant Strano, shall execute, or cause to be executed, all documents necessary to effectuate the transfer of good and marketable title to an indefeasible estate in fee simple in and to the Condo Property, free and clear of all liens and interests to Defendant LeanSpa, LLC under the control of the Temporary Receiver and shall pay any State of Connecticut, local, and municipal conveyance taxes, if any, and provide conveyance tax forms as requested by the Temporary Receiver in his sole discretion at such time as directed by the Temporary Receiver.  JNM Capital, LLC shall promptly cooperate with, provide, and execute all Condo Property Transfer Documents and other documents requested by the Temporary Receiver or contemplated by this Order;

7.  Within twenty-one (21) days from the date of entry of this Order or within 21 days from any request, JNM Capital, LLC, via its member manager, Relief Defendant Strano, shall produce all documents requested by the Temporary Receiver relating to the Condo Property, shall provide a written request from all members of JNM Capital, LLC consenting to the transactions contemplated by this Order, and shall cooperate as directed by the Temporary Receiver, including providing any security deposits, keys, and security codes to the Condo Property;

8.  The Temporary Receiver shall, within ten (10) months from the date of entry of this Order, make all good faith efforts to sell the Condo Property. The Temporary Receiver shall ensure that the Condo Property is appraised and listed for sale at or above the appraised fair market value, and the proposed sale price shall be subject to the approval of Plaintiffs' counsel, which approval shall not be unreasonably withheld.  If the proposed sale price is less than 67 percent of the appraised value, the proposed sale price shall be subject to Court approval.  The Temporary Receiver shall provide JNM Capital, LLC, via its member manager, Relief Defendant Strano, a complete copy of the sales contract for the Condo Property within ninety-six (96) hours of execution; and

9.  In the event that the Condo Property has not been sold within ten (10) months from the date of entry of this Order, the Temporary Receiver shall

undertake the necessary steps to auction such property, including, but not limited to, retaining an auction company and directing it to sell all interest in the Condo Property at a public auction to occur within twelve (12) months from the date of entry of this Order, unless any such dates are extended by further order of the Court or agreement with the Plaintiffs. Notwithstanding the foregoing, the Temporary Receiver may commence the necessary steps to auction the Condo Property at a date earlier than ten (10) months from the date of entry of this Order if he deems it appropriate in his sole discretion.

10. Within twenty-one (21) days of the sale or liquidation of the Condo Property, the Temporary Receiver shall transfer the proceeds, after payment of any reasonable and customary fees incurred in connection with such sale or liquidation that have been approved in advance by counsel for Plaintiffs, to the Commission or its designated agent by wire transfer in accordance with wiring instructions to be provided by counsel for the FTC.

11. Notwithstanding anything herein to the contrary, in the event that (a) the Relief Defendant has timely exercised her election to transfer the Condo Property in the manner set forth in paragraph 9 of the Findings herein to satisfy the monetary judgment set forth in Section XI(A) herein and (b) despite the Relief Defendant's and JNM Capital, LLC's diligent, good faith

and best efforts to obtain all the Condominium Documents, right of first refusal, and/or other documents contemplated by Section XI (C)(2), (4), and (5) required by the Temporary Receiver by the date set forth in this Order or as directed by the Temporary Receiver, if the Relief Defendant is not able to transfer the title or all the necessary documents to the Temporary Receiver within twenty-one (21) days from the date of entry of this Order, then Relief Defendant is ordered to pay Plaintiffs two hundred ninety-seven thousand dollars ($297,000) within twenty-one (21) days of notice sent by the Temporary Receiver to the Relief Defendant and Plaintiffs.  Payment shall be made to the Commission by wire transfer in accordance with directions provided by the Commission, or by certified check or other guaranteed funds payable to and delivered to the Commission.

12.   In the event of any dispute, it will be up to the Temporary Receiver to determine whether the Relief Defendant and JNM Capital, LLC have acted diligently, in good faith and used best efforts to comply with Section XI(C) herein and such determination shall be final.

13.   In the event the Relief Defendant satisfies the monetary judgment set forth in Section XI(A) pursuant to Section XI(C)(11) by making a payment of $297,000 to the Commission, the Temporary Receiver is excused from

49

taking any action with regard to the Condo Property, notwithstanding anything herein to the contrary.

## XII.

## ADDITIONAL MONETARY PROVISIONS

**IT IS FURTHER ORDERED** that:

A.     The LeanSpa Defendants and the Relief Defendant relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.  The LeanSpa Defendants and the Relief Defendant further disclaim any right or claim to any assets transferred to and maintained in the Temporary Receiver's accounts for the Receivership Defendants.

B.     The facts alleged in the Third Amended Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission or State, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

C.     The facts alleged in the Third Amended Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D.     The LeanSpa Defendants and the Relief Defendant acknowledge that their Taxpayer Identification Numbers (Social Security Number or Employer

50

Identification Numbers), which have been previously submitted to Plaintiffs, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

E.      All money paid to Plaintiffs pursuant to this Order shall be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.

F.      In the event that direct redress to consumers is wholly or partially impracticable or funds remain after redress is completed, the Plaintiffs may apply funds for any other equitable relief (including consumer information remedies) that they determine to be reasonably related to the Defendants' practices alleged in the Third Amended Complaint.  Plaintiffs shall retain authority and sole discretion over the division among Plaintiffs of any funds not used for equitable relief.  Any funds paid to the Commission not used for equitable relief shall be deposited into the U.S. Treasury as disgorgement.  Any funds paid to the State not used for equitable relief may be used by the State to the full extent authorized by the State's laws, including, but not limited to, as payment for the State's costs of investigating and litigating the instant case. Defendants and the Relief Defendant have no right to challenge any actions Plaintiffs or their representatives may take pursuant to this Subsection.

G.      The Asset Freeze contained in the Stipulated Preliminary Injunction Order as to the LeanSpa Defendants, entered by the Court on November 22, 2011 [Dkt. No.

36], is modified to permit the payment in Section X(A – D) above.  Upon completion of that payment, the asset freeze is dissolved.

## XIII.

## CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants and Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any good or service, are hereby permanently restrained and enjoined from directly or indirectly:

A.      Failing to provide sufficient customer information to enable the Commission or the State to efficiently administer consumer redress.  If a representative of the Commission or the State requests in writing any information related to redress, Defendants must provide it, in the form prescribed by the Commission or the State, within 14 days;

B.      Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Defendant obtained prior to entry of this Order in connection with the sale of purported weight-loss and colon cleanse products; and

52

C.      Failing to destroy such customer information in all forms in their

possession, custody, or control either within 30 days after entry of a stipulated final

order against the last remaining defendant in this matter or after receipt of written

direction to do so from a representative of the Commission.

Provided, however, that customer information need not be disposed of, and may

be disclosed, to the extent requested by a government agency or required by law,

regulation, or court order.

## XIV.

## COOPERATION

**IT IS FURTHER ORDERED** that the LeanSpa Defendants must fully cooperate

with representatives of Plaintiffs in this case and in any investigation related to or

associated with the transactions or occurrences that are the subject of the Third

Amended Complaint.  The LeanSpa Defendants must provide truthful and complete

information, evidence, and testimony.  The Individual Defendants must appear and the

Corporate Defendants must cause Defendants' officers, employees, representatives, or

agents to appear for interviews, discovery, hearings, trials, and any other proceedings

that Plaintiffs may reasonably request upon 5 days written notice, or other reasonable

notice, at such places and times as Plaintiffs' representatives may designate, without

the service of a subpoena.

**XV.**

**RECEIVERSHIP**

**IT IS FURTHER ORDERED** that:

A.      The Receivership imposed by this Court shall continue in the manner set forth in the preliminary injunction order entered in this matter as to the LeanSpa Defendants.  [Dkt. No. 36].

B.      The following real and/or personal property shall be deemed part of Defendant LeanSpa under the control of the Temporary Receiver as of the date of entry of this Final Order:

    1.      The Real Property; and

    2.      The Personal Property.

C.      If the payment required by Section XI(B) above is not made within fourteen (14) days of the date of entry of this Order, the Condo Property also shall be deemed an asset of Defendant LeanSpa under the control of the Temporary Receiver twenty-one (21) days after the date of entry of this Order.

D.      The Temporary Receiver shall take all necessary steps to wind down the affairs of the Receivership Defendants.  Within fourteen (14) days of entry of this Order, the Temporary Receiver shall transfer seven-hundred fifty thousand dollars ($750,000.00) of the LeanSpa Companies' assets currently maintained in the Temporary Receiver's account to the Commission.  Defendant Mizhen shall execute, or cause to be executed, within three (3) days of written request, all documents necessary

to effectuate the transfer of these assets to the Commission.

      E.     The Temporary Receiver shall forthwith take all steps necessary to liquidate the assets of the Receivership Defendants and those assets that are surrendered pursuant to Section X(C), Section X(D), and Section XI(C), if applicable, of this Order and, after such liquidation, shall remit the net proceeds to the Commission or its designated representative as payment toward the monetary judgment entered against the LeanSpa Defendants and the Relief Defendant within twenty-one (21) days of each such sale or liquidation.

      F.     The Temporary Receiver and his representatives shall continue to be entitled to compensation for the performance of their duties pursuant to this Order, from the assets of the Receivership Defendants, at the billing rate previously agreed to by the Temporary Receiver.

      G.     The Temporary Receiver shall file his Final Report within four hundred (400) days after entry of this Order, unless this time is extended by the Court for good cause.  Upon approval of the Temporary Receiver's final report and request for payment, the Receivership shall be terminated and all funds remaining after payment of the Temporary Receiver's final approved payment shall be remitted immediately to the Commission or its designated representative in partial satisfaction of the judgment pursuant to Section X of this Order.  Upon termination of the Receivership, control of the Receivership Defendants shall revert to the Individual Defendant, or to his successors and assigns.

H.      Any and all uncollected judgments obtained for the benefit of the

Receivership Defendants shall be assigned to the Plaintiffs for further collection efforts.

**XVI.**

**ORDER ACKNOWLEDGMENTS**

**IT IS FURTHER ORDERED** that Defendants and the Relief Defendant obtain

acknowledgments of receipt of this Order:

A.      Within 7 days of entry of this Order, each Defendant and the Relief

Defendant must submit to Plaintiffs an acknowledgment of receipt of this Order sworn

under penalty of perjury.

B.      For 20 years after entry of this Order, the Individual Defendant for any

business that he, individually or collectively with any other Defendants, is the majority

owner or controls directly or indirectly, and each Corporate Defendant, must deliver a

copy of this Order to:  (1) all principals, officers, directors, and LLC managers and

members; (2) all employees, agents, and representatives who participate in conduct

related to the subject matter of the Order; and (3) any business entity resulting from any

change in structure as set forth in the Section titled Compliance Reporting.  Delivery

must occur within 7 days of entry of this Order for current personnel.  For all others,

delivery must occur before they assume their responsibilities.  In any other business,

such as one in which the Individual Defendant is an employee without any ownership or

control, the Individual Defendant must deliver a copy of this Order to all principals and

managers of the business before participating in conduct related to the subject matter of

this Order.

C.      From each individual or entity to which Defendant delivered a copy of this Order, Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## XVII.

## COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendants make timely submissions to the Plaintiffs:

A.      One year after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury:

1.      Each Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of Plaintiffs may use to communicate with Defendant; (b) identify all of the Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant in this matter (which the Individual Defendant must describe if he knows or should know due to his own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to Plaintiffs.

2.     Additionally, the Individual Defendant must: (a) identify all telephone numbers and all physical, postal, email, and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which the Individual Defendant has any ownership interest; and (c) describe in detail the Individual Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and ownership.

B.     For 20 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.     Each Defendant must report any change in: (a) any designated point of contact or (b) the structure of any Corporate Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of this entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.     Additionally, the Individual Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and an Internet

58

address of the business entity.

C.     Each Defendant must submit to Plaintiffs notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.     Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.     Any submission to the State required by this Order to be sworn under penalty of perjury must be true and accurate and notarized.

F.     Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEBrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, D.C. 20580.  The subject line must begin: *FTC, et al. v. LeanSpa, LLC, et al.* (X120003).

G.     Unless otherwise directed by an Office of Attorney General representative in writing, all submissions to the State pursuant to this Order must be emailed to attorney.general@ct.gov or sent by overnight courier (not the U.S. Postal Service) to: Attorney General, State of Connecticut, 55 Elm St., Hartford, CT 06106.  The subject

line must begin: *FTC, et al. v. LeanSpa, LLC, et al.* (X120003).

## XVIII.

## RECORDKEEPING

**IT IS FURTHER ORDERED** that Defendants must create certain records for 20 years after entry of the Order, and retain each such record for 5 years.  Specifically, the Corporate Defendants and the Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.      accounting records showing the revenues from all goods or services sold;

B.      personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.      consumer complaints concerning the subject matter of the Order;

D.      all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to Plaintiffs; and

E.       a copy of each unique advertisement or other marketing material.

## XIX.

## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring the Defendants' and the Relief Defendant's compliance with this Order, including the financial representations upon which part of the judgment was suspended, and any failure to

transfer any assets as required by this Order:

A.      Within 14 days of receipt of a written request from a representative of either the Commission or the State, each Defendant and the Relief Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  Plaintiffs are also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.      Upon written request from a representative of either the Commission or the State, any credit reporting agency must furnish consumer reports concerning the Individual Defendant or the Relief Defendant, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

C.      For matters concerning this Order, Plaintiffs are authorized to communicate directly with each Defendant and the Relief Defendant.  Moreover, Defendants must permit representatives of the Plaintiffs to interview any employee or other person affiliated with any Defendant who has agreed to such an interview.  The person interviewed may have counsel present.

D.      Plaintiffs may use all other lawful means, including posing, through their representatives as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of

compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## XX.

## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**SO ORDERED.**

**Dated this 7th day of January, 2014 at New Haven, Connecticut.**


/s/ Janet C. Hall
Janet C. Hall
United States District Judge

62

SO STIPULATED AND AGREED:


FOR PLAINTIFF FEDERAL TRADE COMMISSION:


Date: 12/23/13

Darren H. Lubetzky (phv04227)
Federal Trade Commission
One Bowling Green, Suite 318
New York, NY 10004
Tel: (212) 607-2829
Fax: (212) 607-2822
dlubetzky@ftc.gov


FOR PLAINTIFF STATE OF CONNECTICUT:


Date: 2/23/13

Phillip Rosario (CT 00999)
Office of Attorney General
110 Sherman Street
Hartford, CT 06105
Tel: (860) 808-5400
Fax: (860) 808-5593
Phillip.Rosario@ct.gov

FOR DEFENDANTS LEANSPA, LLC, NUTRASLIM, LLC, AND NUTRASLIM U.K.,
LTD., ALSO D/B/A LEANSPA, U.K., LTD., AND BORIS MIZEN:

Date: _11-26-13_

Boris Mizhen,
Individually and as an officer of
LeanSpa, LLC, NutraSlim, LLC, and
NutraSlim U.K., Ltd., also d/b/a
LeanSpa U.K., Ltd.

Date: _11/27/13_

William I. Rothbard
Law Offices of William I. Rothbard
1217 Yale Street, Suite 104
Santa Monica, CA 90404-1576
Tel: (310) 453-8713
Fax: (310)
bill@rothbardlaw.com
Attorney for Stipulating Defendants,
LeanSpa, LLC, NutraSlim, LLC,
NutraSlim U.K., Ltd., also d/b/a
LeanSpa U.K., Ltd, and
Boris Mizhen

FOR RELIEF DEFENDANT ANGELINA STRANO

Angelina Strano, Relief Defendant

Date: _____ 11-26-13 _____

David N. Wynn
Arent Fox
1675 Broadway 31st Floor
New York, NY 10019
Tel: (212) 484-3900
Fax: (212) 484-3990
Wynn.david@arentfox.com
Attorney for Stipulating Relief Defendant

Date: _____ 11/27/13 _____